Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

ATLAS DATA PRIVACY CORP., AS ASSIGNEE OF INDIVIDUALS WHO ARE COVERED
PERSONS; JANE DOE 1, A LAW ENFORCEMENT OFFICER; JANE DOE 2,
A LAW ENFORCEMENT OFFICER; EDWIN MALDONADO; SCOTT MALONEY;
JUSTYNA MALONEY; PATRICK COLLIGAN;
PETER ANDREYEV; AND WILLIAM SULLIVAN,

PLAINTIFFS-APPELLEES,

*v.*

WE INFORM LLC, ET AL.

DEFENDANTS-APPELLANTS.

On Appeal from the Order and Memorandum of the United States District Court
for the District of New Jersey dated November 26, 2024

## JOINT BRIEF OF APPELLANTS

———————————————————

| | |
|---|---|
| Angelo A. Stio III | Marcel S. Pratt |
| Melissa A. Chuderewicz | Michael Berry |
| Stephanie L. Jonaitis | Anna Kaul |
| **TROUTMAN PEPPER LOCKE LLP** | **BALLARD SPAHR LLP** |
| Suite 400, 301 Carnegie Center | 1735 Market Street, 51st Floor |
| Princeton, NJ 08540 | Philadelphia, PA 19103-7599 |
| (609) 452-0808 | (215) 864-8500 |
| Angelo.Stio@troutman.com | prattm@ballardspahr.com |
| Melissa.Chuderewicz@troutman.com | berrym@ballardspahr.com |
| Stephanie.Jonaitis@troutman.com | kaula@ballardspahr.com |

*Attorneys for Defendants-Appellants*
*RocketReach LLC (No. 25-1582);*
*Deluxe Corp. (No. 25-1559);*
*PropertyRadar Inc.*
*(No. 25-1584); and DM Group Inc.*
*(No. 25-1558)*

*Attorneys for Defendants-Appellants*
*Thomson Reuters Corporation, Thomson*
*Reuters Canada Limited, Thomson Reuters*
*Centre GmbH, and West Publishing Corp.*
*(No. 25-1570)*

*[Additional Counsel on Following Pages]*

*Counsel Continued from Cover Page*:

Robert T. Szyba
**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants
We Inform, LLC (No. 25-1555);
Infomatics, LLC (No. 25-1556); and
The People Searchers, LLC
(No. 25-1557)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI
LLP**
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants
Quantarium Alliance, LLC and
Quantarium Group, LLC (No. 25-1560)*

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant
Yardi Systems, Inc. (No. 25-1561)*

Eric H. Lubin
**LOMURRO, MUNSON, LLC**
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ 07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants
Digital Safety Products, LLC (No.
25-1562); Civil Data Research (No.
25-1563); and Scalable Commerce &
National Data Analytics (No. 25-1564)*

Ryan J. Cooper
Renier Pierantoni
**COOPER, LLC – COUNSELORS AT LAW**
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant*
*Labels & Lists, Inc. (No. 25-1565)*

Jill A. Guldin
**PIERSON FERDINAND LLP**
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(856) 896-409
jill.guldin@pierferd.com

-and –

Jason A. Spak
**FISHERBROYLES LLP**
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant*
*Innovis Data Solutions, Inc.*
*(No. 25-1566)*

John E. MacDonald
**CONSTANGY, BROOKS, SMITH &**
**PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants*
*Accurate Append, Inc. (No. 25-1567);*
*and Restoration of America, Inc. and*
*Voter Reference Foundation, LLC*
*(No. 25-1572)*

Samantha L. Southall
**BUCHANAN INGERSOLL & ROONEY PC**
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants*
*Zillow Inc. and Zillow Group, Inc.*
*(No. 25-1568)*

Frederick W. Alworth
Kevin R. Reich
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant*
*Equimine, Inc. (No. 25-1569)*

Michael P. O'Mullan
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant*
*Melissa Data Corporation*
*(No. 25-1571)*

Richard J.L. Lomuscio
**STINSON LLP**
100 Wall Street, Suite 201
New York, NY 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant*
*i360, LLC (No. 25-1573)*

David E. Sellinger
Aaron Van Nostrand
**GREENBERG TRAURIG LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC, and GoHunt*
*Management Holdings II, LLC*
*(No. 25-1574)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

Jennifer Fiorica Delgado
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant*
*AccuZip, Inc. (No. 25-1575)*

Matthew S. AhKao
**LEWIS BRISBOIS BISGAARD & SMITH,**
**LLP**
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant*
*Synaptix Technology, LLC*
*(No. 25-1576)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC (No. 25-1577)*

J. Timothy McDonald
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky
(admission pending)
127 Public Square, #3900
Cleveland, OH 44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant*
*Fortnoff Financial, LLC (No. 25-1578)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI LLP**
MANSUKHANI LLP
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant*
*Nuwber, Inc. (No. 25-1581)*

H. Mark Stichel
**RKW, LLC**
10075 Red Run Blvd., 4th Floor
Owings Mills, MD 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant*
*E-Merges.com, Inc. (No. 25-1580)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*The Alesco Group, L.L.C. (improperly*
*pled as Alesco AI, LLC, Alesco*
*Marketing Solutions, L.L.C., Stat*
*Resource Group Inc., and Response*
*Solutions Group, LLC) (No. 25-1585)*

Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
**BLANK ROME LLP**
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant*
*Belles Camp Communications, Inc.*
*(No. 25-1583)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Amerilist, Inc. (No. 25-1587)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Searchbug, Inc. (No. 25-1586)*

Kenneth D. Friedman
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant*
*Smarty, LLC d/b/a SmartyStreets, LLC*
*(No. 25-1589)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*US Data Corporation (No. 25-1588)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**RAJ FERBER PLLC**
Kiran Raj
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant
DarkOwl, LLC (No. 25-1591)*

Jared K. Levy
**WOOD, SMITH, HENNING & BERMAN
LLP**
400 Connell Drive, Suite 1100
Berkeley Heights, NJ 07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc.,
College Bound Selection Services,
Deepsync Labs, Homedata, and Student
Research Group (No. 25-1590)*

Ronald L. Davison
**STARR, GERN, DAVISON & RUBIN, P.C.**
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
(973) 403-9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant
Lighthouse List Company, LLC
(No. 25-1593)*

Christopher Nucifora
Timothy M. Ortolani
**KAUFMAN DOLOWICH LLP**
Court Plaza North
25 Main Street, Suite 500
Hackensack, NJ 07601
(201) 708-8207
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy
Dialer, Inc. (No. 25-1592)*

Jared M. Wichnovitz
**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
(732) 765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant Greenlight Venture Corp. (No. 25-1677)*

William Wendell Cheney, III
Andrew W. Sheppard
**FREEMAN MATHIS & GARY, LLP**
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
(856) 406-1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant First Direct, Inc. (No. 25-1676)*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Defendants-Appellants make the following disclosures:

For We Inform, LLC (No. 25-1555):

1.    We Inform, LLC's parent corporation is WEI LLC.

2.    There are no publicly held companies that hold 10% or more of We Inform, LLC's stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Infomatics, LLC (No. 25-1556):

1.    Infomatics, LLC has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Infomatics, LLC's stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For The People Searchers, LLC (No. 25-1557):

1.    The People Searchers, LLC's parent corporation is DMXH, LLC.

2.    There are no publicly held companies that hold 10% or more of The People Searchers, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For DM Group, Inc. (No. 25-1558):

1.      DM Group, Inc. has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of DM Group, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Deluxe Corporation (No. 25-1559):

1.      Deluxe Corporation is a publicly traded company on the New York Stock Exchange under the symbol DLX.

2.      BlackRock, Inc. and Vanguard Group Inc. both own more than 10% of Deluxe's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Quantarium Alliance, LLC (No. 25-1560):

1.      Quantarium Alliance, LLC has no parent corporation.

2.     There are no publicly held companies that hold 10% or more of Quantarium Alliance, LLC's stock.

3.     There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Quantarium Group, LLC (No. 25-1560):

1.     Quantarium Group, LLC has no parent corporation.

2.     There are no publicly held companies that hold 10% or more of Quantarium Group, LLC's stock.

3.     There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Yardi Systems, Inc. (No. 25-1561):

1.     Yardi Systems, Inc. has no parent corporation.

2.     There are no publicly held companies that hold 10% or more of Yardi Systems, Inc.'s stock.

3.     There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Digital Safety Products, LLC (No. 25-1562); Civil Data Research, LLC (No. 25-1563); and Scalable Commerce, LLC & National Data Analytics, LLC (No. 25-1564):

1.    None of these Defendants-Appellants have a parent corporation.

2.    There are no publicly held companies that hold 10% or more of any of these Defendants'-Appellants' stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Labels & Lists, Inc. (No. 25-1565):

1.    Labels & Lists, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Labels & Lists, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Innovis Data Solutions, Inc. (No. 25-1566):

1.    The parent corporation of Innovis Data Solutions, Inc. is CBC Companies, Inc., which holds 100% of Innovis Data Solutions, Inc.'s stock.

2.      CBC Companies, Inc. is privately held, and there are no publicly held

companies that hold 10% or more of Innovis Data Solutions, Inc.'s

stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Accurate Append, Inc. (No. 25-1567):

1.      Accurate Append has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of

Accurate Append, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Zillow, Inc. (No. 25-1568):

1.      Zillow, Inc.'s parent corporation is Zillow Group, Inc.

2.      Zillow Group, Inc. holds 10% or more of Zillow, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Zillow Group, Inc. (No. 25-1568):

1.      Zillow Group, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Zillow Group, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Equimine, Inc. (No. 25-1569):

1.    Equimine, Inc. is a wholly owned subsidiary of Stewart Information Services Corp. ("SISCO"), a publicly held corporation traded on the New York Stock Exchange with the ticker "STC."

2.    BlackRock, Inc. owns more than 10% of SISCO's stock.

3.    SISCO is not a party to, but has a financial interest in the outcome of, this proceeding solely in its capacity as the ultimate parent company of Equimine, Inc.

For Thomson Reuters Corporation, Thomson Reuters Canada Limited, Thomson Reuters Enterprise Centre GmbH, and West Publishing (No. 25-1570):

1.    Thomson Reuters Canada Limited, Thomson Reuters Enterprise Centre GmbH, and West Publishing are wholly owned subsidiaries of Thomson Reuters Corporation, which has no parent corporation.

2.    Thomson Reuters Corporation is a publicly held company.  No other publicly held companies hold 10% or more of Thomson Reuters Corporation's outstanding stock. No other publicly held corporation

directly or indirectly owns 10% or more of Thomson Reuters Canada Limited, Thomson Reuters Enterprise Centre GmbH, and West Publishing.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Melissa Data Corp (No. 25-1571):

1.    Melissa Data Corporation has no parent corporation.

2.    There are no publicly held companies that hold stock in Melissa Data Corporation.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Restoration of America, Inc. (No. 25-1572):

1.    Restoration of America, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Restoration of America Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Voter Reference Foundation LLC (No. 25-1572):

    1.    Voter Reference Foundation LLC is wholly owned by Restoration of America, Inc.

    2.    There are no publicly held companies that hold 10% or more of Voter Reference Foundation LLC's stock.

    3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For i360, LLC (No. 25-1573):

    1.    Koch, Inc. is the parent corporation of i360, LLC.  Koch, Inc. is a privately held corporation.

    2.    There are no publicly held companies that hold 10% or more of i360, LLC's stock.

    3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For GoHunt, LLC (No. 25-1574):

    1.    GoHunt, LLC has no parent corporation.

    2.    There are no publicly held companies that hold 10% or more of GoHunt, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For GoHunt Management Holdings, LLC (No. 25-1574):

1.      GoHunt Management Holdings, LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of GoHunt Management Holdings, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For GoHunt Management Holdings II, LLC (No. 25-1574):

1.      GoHunt Management Holdings II, LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of GoHunt Management Holdings II, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For AccuZip, Inc. (No. 25-1575):

1.      AccuZip, Inc. has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of
        AccuZip, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the
        proceeding before this Court with any financial interest in the
        outcome of this proceeding.

For Synaptix Technology, LLC (No. 25-1576):

1.      Synaptix Technology, LLC is wholly owned by its parent corporation,
        Synaptix Group LLC.

2.      There are no publicly held companies that hold 10% or more of
        Synaptix Technology, LLC's stock.

3.      There is no publicly held corporation that is not a party to the
        proceeding before this Court with any financial interest in the
        outcome of this proceeding.

For Joy Rockwell Enterprises, Inc. (No. 25-1577):

1.      Joy Rockwell Enterprises, Inc. has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of Joy
        Rockwell Enterprises, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the
        proceeding before this Court with any financial interest in the
        outcome of this proceeding.

For Fortnoff Financial, LLC (No. 25-1578):

    1.    Fortnoff Financial, LLC has no parent corporation.

    2.    There are no publicly held companies that hold 10% or more of Fortnoff Financial, LLC's stock.

    3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For eMerges.com, Inc. (No. 25-1580):

    1.    eMerges.com, Inc. has no parent corporation.

    2.    There are no publicly held companies that hold 10% or more of eMerges.com, Inc.'s stock.

    3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Nuwber, Inc. (No. 25-1581):

    1.    Nuwber, Inc. has no parent corporation.

    2.    There are no publicly held companies that hold 10% or more of Nuwber, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For RocketReach LLC (No. 25-1582):

1.      RocketReach LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of

RocketReach LLC's stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Belles Camp Communications, Inc. (No. 25-1583):

1.      Belles Camp Communications, Inc. ("Belles Camp") has no parent

corporation.

2.      There are no publicly held companies that hold 10% or more of Belles

Camp's stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For PropertyRadar, Inc. (No. 25-1584):

1.      PropertyRadar, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of PropertyRadar, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For The Alesco Group, L.L.C. (improperly pled as Alesco AI, LLC, Alesco Marketing Solutions, L.L.C., Stat Resource Group Inc., and Response Solutions Group, LLC) (No. 25-1585):

1.    The Alesco Group, L.L.C. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of The Alesco Group, L.L.C.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Searchbug, Inc. (No. 25-1586):

1.    Searchbug, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Searchbug, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Amerilist, Inc. (No. 25-1587):

1.    Amerilist, Inc. has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Amerilist, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For US Data Corporation (No. 25-1588):

1.    US Data Corporation has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of US Data Corporation's stock.

3.    There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Smarty, LLC (No. 25-1589):

1.    Smarty, LLC, d/b/a SmartyStreets, LLC ("Smarty, LLC"), has no parent corporation.

2.    There are no publicly held companies that hold 10% or more of Smarty, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Compact Information Systems, LLC (No. 25-1590):

1.      Compact Information Systems, LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of Compact Information Systems, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Accudata Integrated Marketing, Inc. (No. 25-1590):

1.      Compact Information Systems, LLC is the parent corporation of Accudata Integrated Marketing, Inc.

2.      There are no publicly held companies that hold 10% or more of Accudata Integrated Marketing, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Alumnifinder (No. 25-1590):

1.    Accudata Integrated Marketing, Inc. is the parent corporation of

Alumnifinder.

2.    There are no publicly held companies that hold 10% or more of

Alumnifinder's stock.

3.    There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For ASL Marketing, Inc. (No. 25-1590):

1.    Compact Information Systems, LLC is the parent corporation of ASL

Marketing, Inc.

2.    There are no publicly held companies that hold 10% or more of ASL

Marketing, Inc.'s stock.

3.    There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For College Bound Selection Service (No. 25-1590):

1.    ASL Marketing, Inc. is the parent corporation of College Bound

Selection Service.

2.      There are no publicly held companies that hold 10% or more of College Bound Selection Service's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Deepsync Labs (No. 25-1590):

1.      Compact Information Systems, LLC is the parent corporation of Deepsync Labs.

2.      There are no publicly held companies that hold 10% or more of Deepsync Lab's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Homedata (No. 25-1590):

1.      Compact Information Systems, LLC is the parent corporation of Homedata.

2.      There are no publicly held companies that hold 10% or more of Homedata's stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Student Research Group (No. 25-1590):

1.      Compact Information Systems, LLC is the parent corporation of

Student Research Group.

2.      There are no publicly held companies that hold 10% or more of

Student Research Group's stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For DarkOwl LLC (No. 25-1591):

1.      DarkOwl LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of

DarkOwl LLC's stock.

3.      There is no publicly held corporation that is not a party to the

proceeding before this Court with any financial interest in the

outcome of this proceeding.

For Spy Dialer, Inc. (No. 25-1592):

1.      Spy Dialer, Inc. has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of Spy Dialer, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

<u>For Lighthouse List Company, LLC. (No. 25-1593):</u>

1.      Lighthouse List Company, LLC has no parent corporation.

2.      There are no publicly held companies that hold 10% or more of Lighthouse List Company, LLC's stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

<u>For First Direct, Inc. (No. 25-1676):</u>

1.      First Direct, Inc. has no parent corporation.

2.      There are no publicly held companies that hold 10% of more of First Direct, Inc.'s stock.

3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

For Greenflight Venture Corp. (No. 25-1677):

    1.      Greenflight Venture Corp. has no parent corporation.

    2.      There are no publicly held companies that hold 10% of more of Greenflight Venture Corp.'s stock.

    3.      There is no publicly held corporation that is not a party to the proceeding before this Court with any financial interest in the outcome of this proceeding.

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

RULE 26.1 CORPORATE DISCLOSURE STATEMENT......................................i

TABLE OF AUTHORITIES ............................................................. xxiii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUE.............................................................2

STATEMENT OF RELATED CASES ....................................................3

STATEMENT OF THE CASE...............................................................4

I.      Preliminary Statement ...............................................................4

II.     The Vital Role and Historical Availability of Home Addresses and Phone Numbers...............................................................................7

III.    New Jersey's Daniel's Law ........................................................9

        A.     The Law's Rigid Restrictions on Disclosures by Private Entities...................................................................................9

        B.     The Law's Permissive Regulation of Disclosures by Public Entities.................................................................................12

IV.    Atlas and This Litigation .........................................................14

V.     The District Court's Ruling ......................................................17

SUMMARY OF THE ARGUMENT ....................................................18

STANDARD OF REVIEW .................................................................20

ARGUMENT .....................................................................................20

I.      Daniel's Law Is a Content-Based Speech Restriction that Cannot Withstand Strict Scrutiny.......................................................20

        A.     Daniel's Law Is Subject to Strict Scrutiny.........................22

        B.     Daniel's Law Fails Strict Scrutiny ....................................25

1.      The Law Is Vastly Overinclusive ..............................................25

2.      The Law Does Not Materially Advance the State's
        Interest Because It Is Underinclusive ......................................32

3.      Less Restrictive Means Are Available......................................36

II.     The District Court Erred by Ruling that Daniel's Law Is a Privacy
        Statute Exempt from Strict Scrutiny and Further Erred in Its
        Watered-Down Application of the *Daily Mail* Test......................................41

        A.      There Is No Privacy Exception to Strict Scrutiny..............................41

        B.      Daniel's Law Does Not Protect Private Information.........................44

        C.      Daniel's Law Is Unconstitutional Under the *Daily Mail* Test ...........48

                1.      The District Court Mischaracterized the *Daily Mail*
                        Test.......................................................................................48

                2.      The Law Is Unconstitutional Under the *Daily Mail*
                        Test.......................................................................................49

III.    Daniel's Law Is Unconstitutional Because It Lacks a *Mens Rea*
        Requirement.......................................................................................52

        A.      Daniel's Law Imposes Strict Liability on Speakers in
                Violation of the First Amendment ......................................53

        B.      The District Court Erred by Writing a *Mens Rea*
                Requirement into the Law ...................................................56

        C.      The District Court's New Standard Fails to Satisfy the First
                Amendment ........................................................................58

CONCLUSION ................................................................................60

CERTIFICATIONS .........................................................................78

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*American-Arab Anti-Discrimination Committee v. City of Dearborn*,
    418 F.3d 600 (6th Cir. 2005) ...............................................................58

*Americans for Prosperity Foundation v. Bonta*,
    594 U.S. 595 (2021)...............................................................................21

*Anspach ex rel. Anspach v. City of Philadelphia Dep't of Public Health*,
    503 F.3d 256 (3d Cir. 2007) .................................................................14

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004)...............................................................................36

*Barr v. American Association of Political Consultants, Inc.*,
    591 U.S. 610 (2020).........................................................................32, 42

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001).........................................................................36, 43

*Bisbee v. John C. Conover Agency, Inc.*,
    452 A.2d 689 (N.J. App. Div. 1982) .....................................................47

*Bolger v. Youngs Drug Products Corp.*,
    463 U.S. 60 (1983).................................................................................24

*Bowley v. City of Uniontown Police Department*,
    404 F.3d 783 (3d Cir. 2005) ...........................................................29, 48

*Brayshaw v. City of Tallahassee*,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010) .........................................*passim*

*Brown v. Entertainment Merchants Association*,
    564 U.S. 786 (2011).....................................................................19, 21, 25

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016) ...........................................................22, 40

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997) ...............................................................14

*Burton v. Tuite*,
  44 N.W. 282 (Mich. 1889)......................................................................7

*Camp Hill Borough Republican Association v. Borough of Camp Hill*,
  101 F.4th 266 (3d Cir. 2024) .................................................21, 25, 35

*Carey v. Wolnitzek*,
  614 F.3d 189 (6th Cir. 2010) ..............................................................27

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
  447 U.S. 557 (1980)............................................................................24

*City of Austin v. Reagan National Advertising of Austin, LLC*,
  596 U.S. 61 (2022)..............................................................................23

*Counterman v. Colorado*,
  600 U.S. 66 (2023).................................................................53, 55, 59

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975)......................................................................28, 50

*Delaware Strong Families v. Attorney General of Delaware*,
  793 F.3d 304 (3d Cir. 2015) ...............................................................20

*Dex Media West, Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) .........................................................8, 24

*Doe v. Schorn*,
  711 F. Supp. 3d 375 (E.D. Pa. 2024)..................................................43

*Florida Star v. B.J.F.*,
  491 U.S. 524 (1989).....................................................................*passim*

*Gatto Design & Development Corp. v. Township of Colts Neck*,
  719 A.2d 707 (N.J. App. Div. 1998) ...................................................58

*Hamling v. United States*,
  418 U.S. 87 (1974)..............................................................................54

*Harris v. Quinn*,
  573 U.S. 616 (2014)............................................................................24

*Hechler v. Casey*,
    333 S.Ed.2d 799 (W. Va. 1985) .......................................................45

*Hess v. Indiana*,
    414 U.S. 105 (1973)........................................................................53

*Holt v. Hobbs*,
    574 U.S. 352 (2015)........................................................................37

*IMDb.com v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ...............................................24, 42, 47

*Landmark Communications, Inc. v. Virginia*,
    435 U.S. 829 (1978)........................................................................37

*McNutt v. New Mexico State Tribune Co.*,
    538 P.2d 804 (N.M. Ct. App. 1975) ...............................................45

*MNC Credit Corp. v. Sickels*,
    497 S.E.2d 331 (Va. 1998) .............................................................30

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)........................................................................21

*Nebraska Press Association v. Stuart*,
    427 U.S. 539 (1976)........................................................................28

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)...................................................................53, 59

*Nunez v. Wolf*,
    117 F.4th 137 (3d Cir. 2024) ......................................................37, 40

*Oklahoma Publishing Co. v. District Court*,
    430 U.S. 308 (1977)........................................................................28

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ..........................................................33

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017) ....................................24, 34, 38

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ................................................................*passim*

*Reno v. ACLU*,
   521 U.S. 844 (1997) ................................................................36, 40

*Rodgers v. Christie*,
   795 F. App'x 878 (3d Cir. 2020) ..........................................53

*Romaine v. Kallinger*,
   537 A.2d 284 (N.J. 1988) ......................................................46, 60

*Ross v. Blake*,
   578 U.S. 632 (2015) ................................................................58

*Rumbauskas v. Cantor*,
   649 A.2d 853 (N.J. 1994) ......................................................47

*Schrader v. District Attorney of York County*,
   74 F.4th 120 (3d Cir. 2023) ..................................................*passim*

*Sheehan v. Gregoire*,
   272 F. Supp. 2d 1135 (W.D. Wash. 2003) ............................*passim*

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*,
   502 U.S. 105 (1991) ................................................................25, 27

*Smith v. California*,
   361 U.S. 147 (1959) ................................................................54

*Smith v. Daily Mail Publishing Co.*,
   443 U.S. 97 (1979) ............................................................17, 35, 40, 48

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................23

*State v. Pomianek*,
   110 A.3d 841 (N.J. 2014) ......................................................56, 57

*Taksir v. Vanguard Group*,
   903 F.3d 95 (3d Cir. 2018) ....................................................20

*Tobin v. Michigan Civil Service Commission*,
  331 N.W.2d 184 (Mich. 1982)............................................................45

*United States v. Alvarez*,
  567 U.S. 709 (2012)..............................................................25, 36

*United States v. Oakland Cannabis Buyers' Cooperative*,
  532 U.S. 483 (2001)..............................................................56, 57

*United States v. Playboy Entertainment Group, Inc.*,
  529 U.S. 803 (2000)..............................................................36, 37

*United States v. Stevens*,
  559 U.S. 460 (2010)....................................................................57

*United States DOJ v. RCFP*,
  489 U.S. 749 (1989)....................................................................47

*Usachenok v. Department of the Treasury*,
  313 A.3d 53 (N.J. 2024) ..............................................................57

*Video Software Dealers Association v. Webster*,
  968 F.2d 684 (8th Cir. 1992) ..............................................55, 58

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016)............................................24

*Western Buse Telephone Co. v. Northwestern Bell Telephone Co.*,
  248 N.W. 220 (Minn. 1933) ........................................................45

*Williams-Yulee v. Florida Bar*,
  575 U.S. 433 (2015)......................................................32, 35, 36

*Yim v. City of Seattle*,
  63 F.4th 783 (9th Cir. 2023) ........................................................32

## Federal Constitutions and Statutes

U.S. Const. amend. I ......................................................*passim*

28 U.S.C. § 1292 ..............................................................................1

28 U.S.C. § 1332 ..............................................................................1

Daniel Anderl Judicial Security and Privacy Act of 2022, Pub. L. No.
117-263, 136 Stat. 2395 (2022) ..............................................37, 38, 39

**State Statutes**

Cal. Gov't Code § 7928.215 ....................................................39

Colo. Rev. Stat. Ann. § 18-9-313...........................................39

Kan. Stat. Ann. § 21-5905 .....................................................39

1800 Mass. Acts ch. 74 ...........................................................8

Md. Code Ann., Cts. & Jud. Proc. § 3-2301 ..........................38

Md. Code Ann., Cts. & Jud. Proc. § 3-2303 ..........................38

N.J.S.A. 40A:14-122.8...........................................................51

N.J.S.A. 47:1B-1 ....................................................................34

N.J.S.A. 47:1B-2 .........................................................12, 13, 34

N.J.S.A. 47:1B-3 ................................................13, 29, 32, 34

N.J.S.A. 52:14-7......................................................................51

N.J.S.A. 56:8-166.1........................................................*passim*

N.J.S.A. 56:8-166.3................................................................44

2020 N.J. Sess. Law Serv. Ch. 125.....................................9, 11

2021 N.J. Sess. Law Serv. Ch. 371.....................................11, 12

2023 N.J. Sess. Law Serv. Ch. 113.....................................12, 30

**Other Authorities**

Ari Ephraim Feldman, *Adams Calls NYPD City Residency
Requirements 'A Smart Idea'*, Spectrum News (Jan. 26, 2022).........................51

Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending,
and the Mortgage Electronic Registration System*, 78 U. Cin. L.
Rev. 1359 (2010) .........................................................................7

Dean Arthur R. Gaudio, *Electronic Real Estate Records: A Model for Action*, 24 W. NEW ENG. L. REV. 271 (2002) ........................................................7

Ellen Gerst, *Chattanooga Police Chief Claims Conflicting Residency in Atlanta, Chattanooga*, Chattanooga Times Free Press (Mar. 11, 2024) ...................................................................................................................51

Joseph P. Harris, REGISTRATION OF VOTERS IN THE UNITED STATES (1929) ........................................................................................................................8

Parliamentary Elections Act of 1695, 7 & 8 Will. III c. 25 ........................................8

Philip E. Hassman, *Public Addresses as Well as Name of Person as Invasion of Privacy*, 84 A.L.R.3d 1159 (1978) ..................................................45

RESTATEMENT (SECOND) OF TORTS § 652B ...............................................................47

RESTATEMENT (SECOND) OF TORTS § 652D ...............................................................46

Ryan J. Foley, *APNewsBreak: Iowa Patrol Lieutenant Faces Inquiry Over Move*, Associated Press (May 7, 2019) ......................................................51

Will Cushman, *Many Police Officers in Wisconsin Live Outside the Cities Where They Serve*, PBS Wisconsin (June 9, 2023)...................................51

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over the cases consolidated in this appeal under 28 U.S.C. § 1332.  JA091.  On November 26, 2024, the district court denied Defendants' motion to dismiss.  JA080.  On December 2, the district court *sua sponte* certified that order for appeal under 28 U.S.C. § 1292(b).  JA131.  On December 12, Defendants filed a petition to appeal, which this Court granted on March 18, 2025.  JA014.

## STATEMENT OF THE ISSUE

Whether N.J.S.A. 56:8-166.1, a section of New Jersey's Daniel's Law,

facially violates the First Amendment.  JA089-122.

## STATEMENT OF RELATED CASES

These cases have not been before this Court previously.  The Court previously considered petitions to appeal in Case Nos. 24-8044, 24-8045, and 24-8048.  Those remanded cases are now before New Jersey state courts.  The Court also considered a petition to appeal in Case No. 24-8046.  That case is not part of this appeal and is currently before the district court.  *Atlas Data Privacy Corp. v. Delvepoint, LLC*, No. 24-cv-4096-HB (D.N.J.).  Defendants are aware of two other related cases now before the district court.  *Atlas Data Privacy Corp. v. PeopleWhiz, Inc.*, No. 25-cv-237-HB (D.N.J); *Atlas Data Privacy Corp. v. Innovative Web Solutions, LLC*, No. 25-cv-1535-HB (D.N.J.).

In addition, based on information and belief, the Plaintiffs in the cases consolidated in this appeal are pursuing more than 100 other cases alleging violations under Daniel's Law in various New Jersey state courts.

# STATEMENT OF THE CASE

## I.    Preliminary Statement

This appeal centers on a state law that restricts fully protected speech based on its content.  The law thus poses a facial affront to the First Amendment.  In upholding the law, the district court strayed from venerable constitutional principles and bedrock precedent.  That ruling should be reversed.

In a well-intentioned effort to protect the safety of judges, law enforcement officials, and their family members, New Jersey enacted Daniel's Law.  The Law grants covered persons the authority to bar private entities and individuals from ever "disclosing" their home addresses and "unpublished" home telephone numbers – in *any* way to *any* person in *any* circumstance, including when the disclosure would pose no ascertainable risk to a covered person's safety.  Notably, this ban applies even if the same information is made public elsewhere – through government websites, from other entities, or by covered persons themselves.  The Law mandates that private entities comply with notices barring disclosure within ten business days, without exception.  If they do not, the Law imposes harsh penalties.

The Law was not always so broad.  Two years ago, it was amended without any justification in the legislative record.  The amendment removed a requirement that the State verify persons' eligibility for the Law's protections before they could

send notices barring private entities' disclosures, leaving those entities with no mechanism to determine whether a person is actually covered by the Law.  At the same time, the State enacted severe consequences for any entity that does not comply with the rigid ten-day deadline:  a new mandatory award for actual damages of at least $1,000 per violation, along with mandatory attorney's fees and possible punitive damages.  Compounding the magnitude of those changes, the amendment allowed covered persons to assign their claims to third parties, who can aggregate claims and prosecute them *en masse*.  Atop all this, the Law now imposes liability without requiring any degree of fault, punishing even disclosures that are inadvertent or accidental.

The result is a chill on speech necessary to a functioning society and a potential windfall for the plaintiff's bar.  The 40 cases consolidated for this appeal were commenced by a corporation that, after lobbying for these legislative changes, now allegedly holds the right to assert claims of over 19,000 individuals.  It sought to harness the newly amended Law's unique combination of speech-restrictive tools to overwhelm each Defendant with thousands of nondisclosure notices.  It then brought hundreds of thousands of claims against Defendants that pose the specter of hundreds of millions of dollars in statutory damages.

When Defendants challenged Daniel's Law on First Amendment grounds, the district court mostly agreed with them.  It rejected Plaintiffs' contention that

the Law does not regulate speech.  It likewise rejected Plaintiffs' argument that the Law concerns commercial speech.  And it recognized that a strict-liability restriction on speech would be unconstitutional.

In a surprising twist, however, the court declined to subject the Law to strict scrutiny and instead upheld it as a rare breed of content-based regulation that can constitutionally punish truthful, protected speech.  Then, to save its constitutionality, the court rewrote the Law to add a *mens rea* requirement, despite the Legislature's amendment removing any culpability standard.  These aberrant holdings break from settled constitutional law.

As a content-based restriction on speech, Daniel's Law must withstand strict scrutiny.  No one challenges the State's interest in protecting the security of covered persons whose safety might be at risk.  Yet, good intentions alone do not suffice.  The Law must be narrowly tailored and use the least restrictive means to achieve that worthy goal.  The Law's unprecedented sweep in banning and punishing *all* disclosures of *any* kind by private entities, while continuing to permit disclosures of the *same* information in public records and by covered persons themselves, is ill-tailored to serve the State's interest.  Less restrictive alternatives abound.  Indeed, they are evident in prior versions of New Jersey's Law and laws enacted around the country addressing the same concern.  Foundational First Amendment precedent instructs the government to take maximum care before

trespassing on the most constitutionally sensitive terrain, yet New Jersey jettisoned these more restrained approaches without explanation.

Because content-based regulations like Daniel's Law do what the First Amendment expressly forbids, strict judicial scrutiny is required to ensure that such a law extends no further than is absolutely essential. Daniel's Law does not come close to satisfying that scrutiny and should be held facially unconstitutional.

## II. The Vital Role and Historical Availability of Home Addresses and Phone Numbers

Home addresses and telephone numbers have been considered public information for centuries. Since before this country's founding, home addresses have been publicly recorded. In the early 1600s, Massachusetts enacted the first recording law. *See* Dean Arthur R. Gaudio, *Electronic Real Estate Records: A Model for Action*, 24 W. NEW ENG. L. REV. 271, 272, 314 n.4 (2002). "By the Revolution, every English colony had adopted statutes requiring that parties to a mortgage record their names and a description of the property in [a] public office designed for that purpose." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359, 1364 (2010); *see, e.g.*, *Burton v. Tuite*, 44 N.W. 282, 285 (Mich. 1889) (recognizing right "to examine the title of my neighbor's property" as well as "any title . . . recorded in the public offices"). Since then, the public availability of title information has been "nearly universal and uninterrupted." Peterson,

*supra*, at 1364.  Names and addresses also are published in voter rolls, a

tradition dating back to an English law passed in 1696.  *See* Parliamentary

Elections Act of 1695, 7 & 8 Will. III c. 25, *available at*

http://bit.ly/3G2bcdn.  The first similar law in the United States was enacted in

Massachusetts in 1800.  *See* 1800 Mass. Acts ch. 74 (requiring voter rolls to be

published), *available at* https://bit.ly/3EfbQUe.  Such laws became widespread to

combat election fraud and facilitate political canvassing by the late 1800s and early

1900s.  Joseph P. Harris, REGISTRATION OF VOTERS IN THE UNITED STATES 65, 89-

92, 169-70, 179 (1929) (describing public distribution and availability).  Just as

addresses have long been a matter of public record, so too have telephone numbers,

with telephone directories becoming "a ubiquitous part of American life, found in

virtually every household and office."  *Dex Media W., Inc. v. City of Seattle*, 696

F.3d 952, 953 (9th Cir. 2012).

Throughout history, this information has served important purposes.  It has

permitted transfers of property, facilitated the exchange of goods and services, and

enabled people to communicate with each other.  Today, as the district court

recognized below, this information continues to serve myriad purposes "necessary"

for "society to function."  JA112.  For instance, it allows financial institutions to

detect fraud, businesses to conduct credit checks, advocacy groups to canvass for

causes, and law enforcement agencies to investigate crimes.  *See infra* at 15-16.

For this reason, New Jersey law has long required this information to be publicly available.  It is against this historical backdrop that this case proceeds.

## III.    New Jersey's Daniel's Law

In July 2020, Judge Esther Salas's son Daniel was murdered at the family's home.  In response to that horrific tragedy, the New Jersey Legislature enacted Daniel's Law to "enhance the safety and security" of judges, law enforcement officers, and other government officials.  2020 N.J. Sess. Law Serv. Ch. 125. Daniel's Law sought to achieve this laudable objective by carving out an exemption to the historically free exchange of addresses and phone numbers. Specifically, the State enacted a mechanism for covered officials and certain family members to restrict disclosure of their contact information.  Although the Law nominally applies to disclosures by both private and government entities, it imposes far greater restrictions on private entities' speech.  Subsequent amendments to the Law have compounded those restrictions.

### A.    The Law's Rigid Restrictions on Disclosures by Private Entities

Daniel's Law allows "any covered person" – defined to include current and former judges, law enforcement officers, and certain other public officials, as well as immediate family members residing in the same household – to "prohibit the disclosure of the[ir] home address or unpublished home telephone number" by any "person, business, or association."  N.J.S.A. 56:8-166.1(a)(2), (d).  The Law

9

provides that, upon receipt of "written notice" that a covered person "is seeking nondisclosure," the recipient "shall not disclose or re-disclose on the Internet or otherwise make available" the covered person's information.  N.J.S.A. 56:8-166.1(a)(1), (2).

The Law broadly defines "disclose" as "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer."  N.J.S.A. 56:8-166.1(d).  The definition also includes making information "available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  *Id.*  The Law's restrictions are not limited to information publicly posted on the Internet; they apply to *any* disclosure for *any* reason whatsoever, without exception.  N.J.S.A. 56:8-166.1(a)(2).

Daniel's Law does not specify how a nondisclosure notice is to be made, other than that it must be "written" and provided by someone "authorized" to do so.  N.J.S.A. 56:8-166.1(a)(2).  The Law does not require, or provide any mechanism for, verification that the person seeking nondisclosure is actually a "covered person."  And it demands compliance "not later than 10 business days following receipt" of a notice, without exception.  N.J.S.A. 56:8-166.1(a)(1).

If the ten-day deadline is not met, "the covered person or the covered person's assignee" can "bring a civil action."  N.J.S.A. 56:8-166.1(b).  The Law

provides that a "court *shall* award" "actual" damages "not less than" "$1,000 for each violation," which it calls "liquidated damages."  N.J.S.A. 56:8-166.1(c) (emphasis added).  The Law imposes these damages on a strict-liability basis.  The Law also provides mandatory awards for attorney's fees and litigation costs.  *Id.*  And, it provides for "punitive damages upon proof of willful or reckless disregard of the law."  *Id.*

The provisions authorizing civil actions reached their current form in several steps.  The original version of Daniel's Law provided two kinds of claims.  One applied where recipients of nondisclosure notices did not comply, similar to the Law's current claim.  That claim allowed covered persons to seek an injunction requiring compliance and recover fees and costs if successful.  2020 N.J. Sess. Law Serv. Ch. 125, § 7.  The other claim allowed recovery of money damages, but only if "a reasonable person would believe that providing that information would expose another to harassment or risk of harm to life or property."  *Id*. § 6.

In 2021, the Legislature changed the Law to remove the fault standard and create a single notification-based claim, which provided a court "may" award $1,000 in "liquidated damages" for violations.  2021 N.J. Sess. Law Serv. Ch. 371, § 8.  The Legislature also added a requirement that a covered person obtain "approval from the [New Jersey] Office of Information Privacy" before submitting

a notice, thereby protecting against abusive requests and enabling recipients to verify a person's eligibility for coverage.  *Id.*

In 2023, the Legislature amended the provisions governing civil actions in three ways, each of which paved the path for the present litigation, filed just over six months later:

- First, the Legislature removed the discretionary element of the damages provision, changing "may" to "shall."

- Second, it eliminated the requirement that a covered person obtain approval from the State before submitting a nondisclosure notice.

- Third, it permitted covered persons to assign their claims for money damages.

2023 N.J. Sess. Law Serv. Ch. 113, § 6.  The Legislature did not explain its rationale for broadening the Law in any of these respects.

## B.     <u>The Law's Permissive Regulation of Disclosures by Public Entities</u>

New Jersey's stringent mandate imposed on private entities stands in stark contrast to the lax treatment of information held by government agencies.  Daniel's Law allows covered persons to seek redaction of their addresses (but not their phone numbers) from specified public records.  N.J.S.A. 47:1B-2.  That process requires requests to be made to the Office of Information Privacy, which has no deadline to review and approve the requests.  *Id.*  If approved, public agencies have

30 days to comply. *Id.* If they do not comply, covered persons have no recourse to require compliance, and there is no civil remedy. *Id.*

The Law also includes many exceptions that allow government agencies to disclose covered persons' information to other agencies, to private actors, and in public records on the Internet, even after requests for redaction are approved. N.J.S.A. 47:1B-3. For example, records held by public agencies "evidencing any lien, judgement, or other encumbrance upon real or other property" are not subject to requests for redaction or nondisclosure. N.J.S.A. 47:1B-3(a)(4)(d). Similarly, a title insurance company, real estate broker, or title search company may obtain from a public agency, unredacted, "a document affecting the title to real property" and then disclose that information in their ordinary course of business – even if they have received a nondisclosure notification from a covered person. N.J.S.A. 47:1B-3(a)(2); N.J.S.A. 56:8-166.1(e).

Notably, Daniel's Law does not require a covered person to provide a nondisclosure request to public agencies before, or after, providing a nondisclosure notice to private entities. Thus, covered persons can pursue civil actions against private entities that receive nondisclosure notices, despite their information remaining publicly available online through governmental sources or their own online postings.

IV.    <u>**Atlas and This Litigation**</u>

Atlas Data Privacy Corporation is a Delaware company that "owns and operates an online platform" designed to facilitate the removal of covered persons' information from the Internet.  JA099.  It was incorporated in April 2021, shortly after the original version of Daniel's Law was passed.  JA795.[1]  As early as spring 2023, Atlas solicited members of New Jersey police unions for its services.  JA798.  At the same time, its lawyers in this litigation lobbied the Legislature for the amendments making Atlas's claims here possible.[2]  Atlas subsequently received money from investors to fund this litigation.  *E.g.*, JA149.

Atlas leveraged the amended legislation to build its business model, as reflected in the Terms of Service governing covered persons' use of the Atlas platform.  JA801-13.  Under the Terms, Atlas "schedule[s] the delivery dates of [customers'] takedown notices" and can "batch[] notices" for "delivery."  *Id.*  The Terms require Atlas's customers to "irrevocably assign[]" to Atlas "all of [their]

---

[1] The Court may take judicial notice of the public records, as well as materials and websites referenced in Plaintiffs' Complaints, cited herein.  *See Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*, 503 F.3d 256, 273 n.11 (3d Cir. 2007); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] Specifically, attorneys from Genova Burns LLC (who are now at PEM Law LLP) were registered lobbyists for Atlas in New Jersey, JA781, and one of the Boies Schiller attorneys representing Atlas touts his "work[] on amendments to Daniel's Law in New Jersey in 2022 and 2023," https://www.bsfllp.com/people/mark-mao.html.

rights to bring a claim (and seek damages . . .) for violations" under Daniel's Law. JA806.  Atlas can unilaterally "trigger" this assignment at its "discretion."  *Id.*  If Atlas decides to bring "civil litigation," the Terms authorize "individual claims . . . [to be] aggregated and prosecuted by Atlas."  *Id.*

Starting around Christmas in 2023, approximately 150 companies were sent thousands of emails within seconds of each other demanding nondisclosure under Daniel's Law – all from addresses with an "Atlasmail" domain, and none containing information demonstrating persons were "covered" under the Law. *E.g.*, JA550-51.  Then, in February 2024, Atlas and several individuals filed approximately 150 nearly identical lawsuits in state court, purportedly based on assignments from over 19,000 covered persons, alleging violations of the Law. *E.g.*, JA541.[3]

The lawsuits consolidated in this appeal name as Defendants an array of entities that provide contact information for a range of uses central to the economy, political process, and public safety.  These uses include credit reporting regulated under the Fair Credit Reporting Act;[4] real estate transactions;[5] business-to-business

---

[3] In some complaints, the alleged number of assignors is less than 19,000.  *See, e.g.*, JA520 (alleging assignment of 14,476 claims).

[4] *See* https://innovis.com, *cited in* JA572.

[5] *See* https://www.zillow.com, *cited in* JA526.

direct-mailing and marketing;[6] threat intelligence services;[7] background information used by law enforcement officials for criminal investigations, courts for use in cases, law firms for service of process, and financial institutions for fraud prevention;[8] address autocomplete functions for business websites using data from the U.S. Postal Service;[9] and dissemination of voter information to political campaigns, government offices, news outlets, and universities,[10] and by advocacy groups seeking to ensure transparent and fair elections.[11]

The complaints allege Defendants violated Daniel's Law by failing to cease disclosing thousands of covered persons' information within ten business days of Atlasmail notifications being sent.  JA552.  For each violation, the complaints seek "liquidated damages," attorney's fees, costs, and punitive damages.  JA553.  In total, the lawsuits consolidated in this appeal involve hundreds of thousands of claims with the potential for hundreds of millions of dollars in liquidated damages alone.

---

[6] *See* https://www.directmail.com, *cited in* JA548.

[7] *See* https://www.darkowl.com, *cited in* JA595.

[8] *See* https://legal.thomsonreuters.com/en/products/clear, *cited in* JA622.

[9] *See* https://www.smarty.com, *cited in* JA646.

[10] *See* https://www.emerges.com, *cited in* JA671.

[11] *See* https://voteref.com/Content/AboutUs, *cited in* JA695.

## V.    <u>The District Court's Ruling</u>

The lawsuits involved in this appeal were removed to federal court. Following the district court's direction for sequencing the litigation, JA718-20, Defendants filed a consolidated motion to dismiss solely on the ground that Daniel's Law is facially unconstitutional.  Defendants argued that the Law facially violates the First Amendment because, *inter alia*, it is (1) a content-based restriction on protected speech that cannot satisfy strict scrutiny, and (2) a strict-liability statute that regulates truthful speech without any culpability standard.

The district court denied the motion.  JA080.  The court agreed with Defendants that Daniel's Law is a content-based restriction on non-commercial speech, but nevertheless held it was not subject to strict scrutiny.  JA104, 108-09. The court concluded the Law is exempt from strict scrutiny because it protects covered persons' "right to privacy," JA106-08, and, in the court's view, "privacy laws" are assessed under a different test set forth in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979).  JA108-09.  The district court held the Law passed this test, reasoning that "the distinctions" Daniel's Law makes between private and government entities "are sound – not arbitrary or discriminatory," and that, although New Jersey could have made different policy choices, "the perfect is not the enemy of the good."  JA109-13.

The district court also recognized that the Law's text does not include a *mens rea* requirement and acknowledged that imposing strict liability would be unconstitutional. JA118. To save the Law, the court read a "negligence standard" into it, holding liability can be imposed "only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired." JA119-20.

The district court *sua sponte* certified its order for immediate appeal, JA131, and this Court granted Defendants' Petition seeking interlocutory review, agreeing to hear this appeal on an expedited basis.

## SUMMARY OF ARGUMENT

The current version of Daniel's Law is facially unconstitutional. The district court correctly held that Daniel's Law – a direct prohibition on what people can say about certain public officials – is a content-based restriction on noncommercial speech. But, the court then took a series of missteps, leading it down various paths foreclosed by longstanding First Amendment jurisprudence.

I.      Daniel's Law is subject to – and fails – strict scrutiny. Like all content-based restrictions on speech, the Law must be "narrowly tailored to further a compelling government interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015). While Defendants do not dispute that the State's interest in enhancing the safety of covered persons is compelling, the Legislature must pursue that goal

through the least restrictive means, curtailing as little speech as possible.  The Law does not do so.

In its current form, Daniel's Law is both "seriously underinclusive" and "seriously overinclusive."  *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011).  The Law paints with far too broad a brush, imposing liability for every conceivable disclosure, regardless of why, how, where, or to whom the information is made available.  It also applies without regard to the information's source, prohibiting even republication of information available in public records.  Meanwhile, the Law allows the government, and covered persons themselves, to continue disclosing the same information publicly, undermining the Law's purpose.  The Legislature could have adopted numerous alternatives that would be both less burdensome on speech and more likely to advance the safety interest, as evidenced by prior versions of the Law and other laws around the country pursuing its identical purpose in a less speech-restrictive manner.

II.     The district court's error in holding that Daniel's Law need not withstand strict scrutiny stemmed from its view that the Law protects against an "invasion of privacy."  JA105-06.  But there is no "privacy" exemption to strict scrutiny.  Even if there were, Daniel's Law would not qualify, as the information it restricts is not actually private and has long been a matter of public record.  In any event, the district court did not apply the *Daily Mail* test correctly.  Instead, it

employed a watered-down version, akin to rational basis review, conducting only a superficial analysis of the Law's underinclusiveness and no analysis of its breadth. Under the correct application of that exacting test, the Law would fail.

III.    Although the district court correctly held that a strict-liability restriction on speech would be unconstitutional, it swept aside the Law's lack of a fault standard and wrote in its own standard. That revision is contrary to precedent from both the United States and New Jersey Supreme Courts, which forbids courts from rewriting unambiguous statutes. Making matters worse, the standard the district court created is fundamentally insufficient to address the Law's constitutional defect.

## STANDARD OF REVIEW

This Court reviews a district court's decision on a motion to dismiss *de novo*. *Taksir v. Vanguard Grp*., 903 F.3d 95, 96 (3d Cir. 2018). Further, the constitutionality of a statute is subject to "plenary review." *Delaware Strong Families v. Att'y Gen. of Delaware*, 793 F.3d 304, 307 (3d Cir. 2015).

## ARGUMENT

## I.    DANIEL'S LAW IS A CONTENT-BASED SPEECH RESTRICTION THAT CANNOT WITHSTAND STRICT SCRUTINY.

Daniel's Law is a content-based restriction on fully protected speech. Such laws are "presumptively unconstitutional" and cannot survive a facial challenge unless they withstand strict scrutiny. *Reed*, 576 U.S. at 163. Under strict scrutiny,

the government bears the burden of establishing that the restriction both "furthers a compelling interest" and "is narrowly tailored to achieve that interest." *Id.* at 171. A law is narrowly tailored only if the government has chosen the "least restrictive means among available, effective alternatives." *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 271 (3d Cir. 2024). Strict scrutiny presents a "daunting burden." *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023). Consequently, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Brown*, 564 U.S. at 799.

This case presents a facial constitutional challenge. Outside the First Amendment context, a litigant "bringing a facial challenge must establish that no set of circumstances exists under which the [law] would be valid," or "show that the law lacks a plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (cleaned up). To "provide[] breathing room for free expression," however, the Supreme Court has substituted a "less demanding" standard for facial First Amendment challenges. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up). To succeed on a First Amendment challenge, a litigant must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Bonta*, 594 U.S. at 615 (cleaned up). Regardless, a law that fails strict scrutiny is, by definition, facially unconstitutional: "Where a statute fails the relevant

constitutional test (such as strict scrutiny . . . ), it can no longer be constitutionally applied to anyone – and thus there is 'no set of circumstances' in which the statute would be valid." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016) (cleaned up).

While Daniel's Law is motivated by good intentions, its current version is not one of the rare laws that can survive strict scrutiny. That is not to say New Jersey is powerless to protect covered persons. It simply must do so through a properly tailored law. Daniel's Law, as amended, is not. Indeed, New Jersey's Law is broader than similar statutes in other states and broader still than analogous laws that have been struck down. *See Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244 (N.D. Fla. 2010) (prohibition on maliciously disseminating law enforcement officers' addresses and phone numbers); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D. Wash. 2003) (prohibition on releasing information relating to law enforcement or court personnel, including their addresses and phone numbers, with intent to harm). The same result should follow here.

## A.    Daniel's Law Is Subject to Strict Scrutiny.

Daniel's Law prevents private entities from disclosing covered persons' home addresses and unpublished phone numbers. It thus is a content-based restriction on speech subject to strict scrutiny.

Plaintiffs argued below that Daniel's Law regulates data, not speech. The district court "quickly dispose[d]" of that argument, correctly ruling that the disclosure of addresses and phone numbers is speech. JA100-01. As the Supreme Court has recognized, "dissemination of information" constitutes speech under the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.*

Here, as the district court also correctly recognized, the Law's speech restriction "clearly regulates particular subject matter" – covered persons' addresses and unpublished phone numbers. JA104. The Supreme Court has repeatedly held that any law "targeted at specific subject matter is content based." *Reed*, 576 U.S. at 169; *see also City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61, 71 (2022) (same); *Sorrell*, 564 U.S. at 564 (law is content based because it "disfavors marketing, that is, speech with a particular content"). Daniel's Law's prohibition on the disclosure of covered persons' addresses and phone numbers is the "paradigmatic example of content-based discrimination" – it "singles out specific subject matter for differential treatment." *Reed*, 576 U.S. at 169.

For this reason, courts across the country uniformly have held that statutes designed to restrict the dissemination of public officials' contact information are

23

content-based restrictions on speech. *See Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017); *Brayshaw*, 709 F. Supp. 2d at 1249-50; *Sheehan*, 272 F. Supp. 2d at 1146; *see also IMDb.com v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (law restricting "dissemination of 'date of birth or age information'").

To be sure, commercial speech presents a limited exception to strict scrutiny. When *solely* commercial speech is at issue – *i.e.*, speech that does "no more than propose a commercial transaction," *Harris v. Quinn*, 573 U.S. 616, 648 (2014) – intermediate scrutiny is appropriate. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564 (1980). But, as the district court properly held, the speech restricted by Daniel's Law "certainly does not propose a commercial transaction." JA103. It makes no difference that certain Defendants might have an "economic motivation" for disclosing covered persons' information, as such motivation is "clearly [] insufficient by itself to turn [the speech] into commercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). Indeed, courts routinely hold that dissemination of addresses and phone numbers, even by for-profit businesses, constitutes non-commercial speech. *See, e.g.*, *Dex Media W.*, 696 F.3d at 962 (phone numbers and community information in telephone directory); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386, 1389 (N.D. Ill. 2016) (attorney profile website containing addresses and phone numbers); *cf. IMDb.com*, 962 F.3d at 1122 (online database containing ages and dates of birth).

24

Accordingly, under well-established precedent, the Law's content-based restrictions on non-commercial speech must face strict scrutiny. The district court erred in declining to apply that stringent test.

## B.    Daniel's Law Fails Strict Scrutiny.

While the safety interest underlying Daniel's Law is compelling, that does not "end the matter." *United States v. Alvarez*, 567 U.S. 709, 725 (2012). As the Supreme Court has instructed, "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive." *Reed*, 576 U.S. at 156. Thus, like all content-based restrictions, Daniel's Law is still "presumptively unconstitutional." *Id.* at 163. The regime enacted by New Jersey cannot stand unless it is narrowly tailored and deploys the least restrictive means to achieve its safety interest. *Id.* The Law must employ "means that are neither seriously underinclusive nor seriously overinclusive." *Brown*, 564 U.S. at 805. Daniel's Law is both over- and underinclusive and not the least restrictive means available to achieve the State's interest.

### 1.    The Law Is Vastly Overinclusive.

To be narrowly tailored, a content-based law must "curtail speech as little as possible." *Camp Hill*, 101 F.4th at 271. Daniel's Law, however, prohibits a wide array of speech that does not implicate covered persons' safety. The Law is therefore impermissibly overinclusive. *See, e.g.*, *Simon & Schuster, Inc. v.*

*Members of N.Y.S. Crime Victims Bd.*, 502 U.S. 105, 122 (1991) (finding law "significantly overinclusive" where it "reach[ed] a wide range of literature that does not enable a criminal to profit from his crime while a victim remains uncompensated").

***The Law's sweeping definition of "disclose."*** Daniel's Law defines "disclose" to encompass nearly every use of home addresses and phone numbers, regardless of why, how, where, or to whom the information is made available, or whether the information is even private. *See supra* at 10. This expansive definition extends indiscriminately far beyond disclosures likely to implicate safety concerns. In fact, the Law prohibits disclosures with no apparent nexus to that interest, but that are necessary for modern society to function. For example, the Law prohibits:

- "*disseminating*" voter addresses to political campaigns or advocacy organizations;

- "*providing*" addresses to law firms to facilitate service of process;

- "*giving*" addresses to financial institutions to prevent bank fraud;

- "*making*" addresses "*available*" to law enforcement agencies in "*searchable databases*" to investigate and prosecute crimes;

- "*selling*," or even "*offering*," addresses to businesses for use in marketing campaigns;

- "*transferring*" a customer's address to a vendor for shipping products; and

- "*delivering*" addresses to businesses in connection with credit checks.

N.J.S.A. 56:8-166.1(a), (d).  The Law goes beyond this all-encompassing definition to prohibit *every* way an entity might "otherwise make available" the information, including in searchable databases "regardless of whether a search is actually performed."  *Id.*

The Law's across-the-board prohibitions bar such "disclosures" without regard for whether they are subject to significant limitations – *e.g.*, information that is *only* disclosed to verified and credentialed entities, *only* disclosed if recipients access the information for lawful and legitimate purposes, and *only* disclosed pursuant to a contract forbidding further dissemination and unauthorized uses.  It is difficult to understand – and the Legislature has not attempted to explain – how prohibiting these types of disclosures would meaningfully and directly advance the safety of public officials.  *See Simon & Schuster*, 502 U.S. at 120-21 (holding law overinclusive where prohibitions implicated "little if any [state] interest"); *see also Carey v. Wolnitzek*, 614 F.3d 189, 205 (6th Cir. 2010) (finding narrow-tailoring problem where statute's definition of "solicitation" encompassed "methods of solicitation" that "present[ed] little or no risk" to state's purported interest).

***The Law's sanctions for publishing matters of public record.***  Daniel's

Law restricts private entities from publishing information the government itself has

made, and continues to make, publicly available.  That restriction reflects the

Law's overinclusiveness and, by itself, flouts bedrock First Amendment principles.

Time and again, the Supreme Court has held that the government is

constitutionally foreclosed from imposing liability for publishing information it

makes available in public records.  *See, e.g.*, *Fla. Star*, 491 U.S. at 527, 541

(identity of rape victim disclosed in police report); *Oklahoma Publ'g Co. v. Dist.

Ct.*, 430 U.S. 308, 308 (1977) (identity of juvenile defendant disclosed in court

hearing); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 472 (1975) (identity of crime

victim disclosed in court records); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539,

568 (1976) (incriminating evidence disclosed during preliminary hearing).  On this

point, the precedent could not be clearer.  In *Cox Broadcasting*, the Supreme Court

emphasized that "the First and Fourteenth Amendments command nothing less

than that the States may not impose sanctions on the publication of truthful

information contained in official court records open to public inspection."  420

U.S. at 495.  And in *Florida Star*, the Court stressed that this constraint applies to

*all* records the government makes publicly available.  *See* 491 U.S. at 539 ("Had

[the newspaper] merely reproduced the news release prepared and released by the

[government], imposing civil damages would surely violate the First Amendment.").

Yet, Daniel's Law does precisely that – it subjects private entities to civil damages for reproducing information released by the government. N.J.S.A. 47:1B-3 (listing government records exempt from redaction); *supra* at 10-13; *infra* at 32-34. By punishing these constitutionally protected disclosures, Daniel's Law is plainly overinclusive. For where "the government has failed to police itself in disseminating information," the imposition of liability "for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity." *Fla. Star*, 491 U.S. at 538; *see also Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 788 (3d Cir. 2005) ("[N]ot releasing [confidential] information to the media in the first place will more narrowly serve the interest of preserving confidentiality than will punishing the publication of the information once inappropriately released.").

**The Law's lack of any verification mechanism.** The Law's tailoring problems are exacerbated by the lack of any process for a private entity to verify whether a person demanding nondisclosure is actually "covered." Absent such a process, the Law contains no means to ensure its protections – and the concomitant restrictions on private entities' speech – are reserved for those individuals the Law was intended to protect. In these cases, for example, the nondisclosure notices sent

to Defendants contained no information demonstrating persons were covered.  *See, e.g.*, JA551.

In contrast, the process for requesting nondisclosure from government agencies includes a verification requirement and makes compliance contingent on a person receiving approval from the State.  *Supra* at 12-13.  By inexplicably removing this requirement for demands to private entities, the Legislature unnecessarily extended the Law's sweep and invited abusive notices from people who are not protected by the statute.

*The Law's unusual assignment provision and its award of "liquidated damages."*  The potential for stifling protected speech is compounded by the other two amendments passed in 2023:  allowing "assignment" of claims and providing that courts "shall award actual damages" of at least "$1,000 for each violation," regardless of whether an entity acted with any degree of fault.  2023 N.J. Sess. Law Serv. Ch. 113, § 6.

These new provisions incentivize profit-seeking companies to aggregate nondisclosure notices, send them in a manner that makes prompt compliance impractical or impossible, and pursue claims *en masse* for technical non-compliance as a money-making venture – even when the alleged violations are purely technical and far removed from the State's claimed interest.  *Cf. MNC Credit Corp. v. Sickels*, 497 S.E.2d 331, 333 (Va. 1998) (expressing concern about

"merchandizing" assigned malpractice claims and encouraging "unjustified lawsuits"). Because a company can aggregate claims on behalf of individuals who have not been verified as covered persons, private entities have no choice but to self-censor upon receiving any notice. Otherwise, they face the incalculable risk of lawsuits seeking substantial money damages on a strict-liability basis. Daniel's Law thus sweeps in far more speech than necessary to achieve the State's interest and encourages conduct divorced from any compelling interest. *See Schrader*, 74 F.4th at 128 (prohibiting enforcement of law where prosecutor "offered little more than assertion and conjecture to support [his] claim that without criminal sanctions the objectives of [the law] would be seriously undermined").

*The Law's vague prohibition on disclosure of "unpublished" telephone numbers.* Although Daniel's Law restricts disclosure of "unpublished home telephone numbers," it does not define that term or provide any direction as to what qualifies as a "home" number or what makes a number "unpublished." The result is that *all* personal telephone numbers could be considered "unpublished" – even though they are often widely available. The overinclusiveness of this provision is highlighted by the myriad cases Plaintiffs filed, which together allege that approximately 150 different entities disclosed covered persons' telephone numbers – numbers that obviously were widely published, but nonetheless give rise to statutory violations according to Plaintiffs.

### 2.    The Law Does Not Materially Advance the State's Interest Because It Is Underinclusive.

A law is underinclusive when it "plac[es] strict limits on" some activities while allowing other activities that "create the same problem." *Reed*, 576 U.S. at 172. The Supreme Court has explained that a speech restriction's underinclusiveness shows "that a law does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). Daniel's Law does not "meaningfully advance the government's stated interests" because it is riddled with "exceptions that 'undermine and counteract' those goals." *Yim v. City of Seattle*, 63 F.4th 783, 795 (9th Cir. 2023); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 621 (2020) (restriction failed strict scrutiny where government did "not sufficiently justif[y] the differentiation between government-debt collection speech," which was allowed, "and other important categories of robocall speech," which were prohibited).

*First*, although the Law indiscriminately restricts disclosures by private entities, it *requires* large categories of government records containing the same information to be disclosed to the public. For example, "records evidencing any lien, judgment, or other encumbrance upon real or other property" are *not* subject to redaction – even if covered persons ask the government to withhold their information. N.J.S.A. 47:1B-3(a)(4)(d); JA111 (recognizing the Law "does not block access to home addresses which appear on property records or on voter

records"). While the district court brushed this exception aside, saying "this type of information is generally more difficult to extract from public records than information found on the Internet," JA111, there is no such legislative finding in the record. Nor does the Law mandate that the information be removed from government websites – which are *more* accessible than private databases that require payment or a subscription.[12] In fact, the names and addresses of at least four of the individual Plaintiffs can easily be found in state property records posted online and searchable by name for free. *See* JA836-50. Thus, a nefarious actor relying on the "Internet as the source of intelligence," JA113, would be able to find the same information even if the subject of his search submitted nondisclosure notices to private entities.

This is paradigmatic underinclusiveness. The Supreme Court has long recognized that prohibiting "dissemination of information which is already publicly available is relatively unlikely to advance" the government's interest. *Fla. Star*, 491 U.S. at 535. Indeed, when the government itself disseminates information, restricting private entities' dissemination of the same information "can hardly be said to be a narrowly tailored means." *Schrader*, 74 F.4th at 127; *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286-87 (4th Cir. 2010). Having

---

[12] *See, e.g.*, Property Record, County of Essex, N.J., https://press.essexregister.com/prodpress/clerk/ClerkHome.aspx?op=basic (last visited Apr. 9, 2025) (publicly searchable database with addresses).

"inject[ed] personal identifying information into the public domain," New Jersey "cannot credibly take the contradictory position" that dissemination "offends a compelling state interest." *Sheehan*, 272 F. Supp. 2d at 1147.

***Second***, although Daniel's Law permits covered persons to request redaction of certain public records, *see* N.J.S.A. 47:1B-1-3, nothing in the Law requires a person to take advantage of that process before (or even after) sending a nondisclosure notice to a private entity. Thus, a private entity may be held liable for disclosing information that a covered person allows to remain readily accessible in public records. That too is evidence of underinclusiveness. *See Fla. Star*, 491 U.S. at 534; *see also Publius*, 237 F. Supp. 3d at 1020-21 (ruling statute underinclusive because it proscribed dissemination of official's home address and phone number "regardless of the extent to which it is available or disseminated elsewhere"); *Brayshaw*, 709 F. Supp. 2d at 1250 (similar); *Sheehan*, 272 F. Supp. 2d at 1147 (similar).

***Third***, although Daniel's Law restricts every disclosure by a private entity that receives a nondisclosure notice, the Law allows the same information to be disclosed with impunity by covered persons themselves. The result is that civil lawsuits for liquidated damages can, and will, be prosecuted even when covered persons choose to self-publish their contact information online, as several of the named Plaintiffs have done. JA851-70. This also is "hopelessly underinclusive."

*Camp Hill*, 101 F.4th at 271; *see Reed*, 576 U.S. at 172 ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town while at the same time allowing unlimited numbers of other types of signs that create the same problem.").

In upholding Daniel's Law, the district court dismissed these gaping holes in the Law's coverage as "distinctions" that are "sound – not arbitrary or discriminatory." JA112. But, longstanding precedent requires that speech restrictions be more than just non-arbitrary or non-discriminatory – they must be narrowly tailored to serve a compelling interest. *Reed*, 576 U.S. at 171-72. The district court also concluded that the "perfect is not the enemy of the good," relying on language in *Williams-Yulee* that the government "need not address all aspects of a problem in one fell swoop." JA114 (quoting *Williams-Yulee*, 575 U.S. at 449). This misreads *Williams-Yulee* and would result in the abandonment of the underinclusiveness inquiry. In reality, the Supreme Court's instruction there merely means New Jersey need not address *all* aspects of officials' safety in "one fell swoop." It does not grant the State license to enact speech restrictions that are so "riddled with exceptions" that they continue to allow the *exact same speech* that poses the *exact same risks*. *Williams-Yulee*, 575 U.S. at 449; *see also Daily Mail*, 443 U.S. at 104-05 (striking down statute that only prohibited "newspapers" from

identifying juvenile defendants because the law did "not accomplish its stated purpose" since juveniles could be identified by "electronic media").

Because Daniel's Law allows countless indistinguishable disclosures – by the government, other private entities, and even covered persons pursuing civil claims – the Law does "not advance its stated purpose" and is impermissibly underinclusive. *Williams-Yulee*, 575 U.S. at 449.

### 3.    Less Restrictive Means Are Available.

The lack of tailoring in the Law's current version is particularly "unacceptable" because the Legislature ignored "less restrictive alternatives [that] would be at least as effective" in advancing officials' safety. *Reno v. ACLU*, 521 U.S. 844, 874 (1997). That is anathema to the First Amendment: "If a less restrictive alternative would serve the Government's purpose, the legislature *must* use that alternative." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) (emphasis added). The State must show that "proposed less restrictive alternatives are less effective," *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004), a burden that cannot be met with surface-level explanations, *see Alvarez*, 567 U.S. at 729; *Playboy*, 529 U.S. at 817-24. This requirement is particularly salient here, as it is "quite remarkable" to punish speech "by a law-abiding possessor of information" to "deter conduct by a non-law-abiding-third party." *Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001).

Numerous less restrictive alternatives would similarly serve the State's interest in covered persons' safety. While it is not Defendants' job to rewrite the statute, *see Playboy*, 529 U.S. at 816, at least five prominent alternatives from similar laws around the country – and prior versions of New Jersey's Law – stand out. *See Holt v. Hobbs*, 574 U.S. 352, 369-70 (2015) (where other jurisdictions have divergent practices, the government must, "at a minimum, offer persuasive reasons why it believes that it must take a different course"); *Nunez v. Wolf*, 117 F.4th 137, 154-55 (3d Cir. 2024) (same); *accord Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841 (1978) (contrasting law with those in other jurisdictions).

*First*, the definition of "disclose" could be narrowed. As it stands, "disclose" encompasses 20 different verbs and may even cover purely internal business activities. N.J.S.A. 56:8-166.1(d) (prohibition on making information available "within a searchable list" "regardless of whether a search of such list . . . is actually performed"). Instead, New Jersey could enact a more targeted prohibition that does not bar disclosures that bear little risk of harm. *E.g.*, Daniel Anderl Judicial Security and Privacy Act of 2022 ("Federal Daniel's Law"), Pub. L. No. 117-263, §§ 5933, 5934, 136 Stat. 2395, 3460-65 (2022) (narrowly defining "data broker" and allowing various disclosures barred under New Jersey's Law);

*see also* Md. Code Ann., Cts. & Jud. Proc. § 3-2301(f) (prohibiting certain

publications made "available to the general public").

**Second**, the Law could exempt information the government or covered

persons themselves make public. *E.g.*, Federal Daniel's Law § 5934(d), 136 Stat.

at 3464-65; Md. Code Ann., Cts. & Jud. Proc. § 3-2301(d)(2).

**Third**, the Law could include a verification requirement to ensure

individuals qualify as covered persons before they submit nondisclosure notices, as

in the prior version of the Law. *See supra* at 12-13; *see, e.g.*, *Publius*, 237 F. Supp.

3d at 1019 (holding statute not narrowly tailored because, among other things, it

did not require "a third-party review whether the official's request is well-

founded"). Or, it could require nondisclosure notices to provide sufficient

information to allow an entity to verify that the individual is "covered." *E.g.*, Md.

Code Ann., Cts. & Jud. Proc. § 3-2303.

**Fourth**, Daniel's Law could require covered persons to bring individual

lawsuits, instead of allowing corporate assignees to aggregate claims. The unique

assignment provision, not found in any other state's laws, enables profit-seeking

ventures to simultaneously bring thousands of claims against a single defendant,

overwhelming that defendant's capacity to assess whether the claims are brought

by covered persons or if their information was actually disclosed. If the Law did

not allow mass assignment, Plaintiffs with claims based on a reasonable risk of

harm from disclosure would still be incentivized to vindicate their concerns about safety.  But corporate assignees would not be able to bundle claims to restrict additional speech without achieving the same interest, burdening far less speech.

*Fifth*, the Law could allow a narrower range of remedies than the current statute's floor of at least $1,000 in liquidated "actual" damages, which applies regardless of the scope of any injury or the defendant's *mens rea* (or lack thereof).  N.J.S.A. 56:8-166.1(c)(1); *see Schrader*, 74 F.4th at 127 (emphasizing availability of alternate remedies).  For example, the Law could remove the liquidated damages provision, tying an award to a plaintiff's actual harm.  Or, as an earlier version of Daniel's Law did, the Law could provide only injunctive relief (plus fees and costs).  *See supra* at 11.  Finally, even if the damages floor remained, the Law could cabin relief to those situations where an entity has reason to know of a risk from disclosure.  *See, e.g.*, Colo. Rev. Stat. Ann. § 18-9-313 (dissemination must "pose[] an imminent and serious threat to the protected person's safety"); Kan. Stat. Ann. § 21-5905(a)(7) (same); Cal. Gov't Code § 7928.215(c) (requiring nondisclosure demand to "include a statement describing a threat or fear for the safety" of requesting official); *see also* Federal Daniel's Law § 5934(f), 136 Stat. at 3466 (authorizing damages only if entity "knowingly" violates an order granting injunctive or declarative relief under the statute).

These comparably effective, but vastly less restrictive, alternatives demonstrate that the uniquely chilling and punitive provisions of New Jersey's Daniel's Law are not "necessary" to further the State's interest. *See Daily Mail*, 443 U.S. at 105.[13]

Despite the outlier nature of Daniel's Law, New Jersey has not "explain[ed]" why other jurisdictions "with the same compelling interest[]" chose to go another way. *Nunez*, 117 F.4th at 155. Nor has New Jersey explained why, in a series of amendments with no supporting legislative history, it has made the Law broader and harsher, while abandoning less speech-restrictive alternatives. *See Bruni*, 824 F.3d at 369-70 (government must show "substantially less-restrictive alternatives were tried and failed" or "the alternatives were closely examined and ruled out for good reason").

Absent any "meaningful" explanation as to why "alternative measures that burden substantially less speech would fail to achieve the government's interests," *id.* at 369, Daniel's Law fails strict scrutiny, *see, e.g.*, *Reno*, 521 U.S. at 879 (given arguments citing "possible alternatives" and "absence of any detailed findings by the Congress," Court was "persuaded that the [statute] is not narrowly tailored if

---

[13] Defendants do not concede that these alternatives – individually or collectively – would be sufficient to render the Law constitutional. Rather, they highlight the Legislature's failure to consider available less restrictive means.

that requirement has any meaning at all").  Consequently, the Law is facially

unconstitutional.

## II.    THE DISTRICT COURT ERRED BY RULING THAT DANIEL'S LAW IS A PRIVACY STATUTE EXEMPT FROM STRICT SCRUTINY AND FURTHER ERRED IN ITS WATERED-DOWN APPLICATION OF THE *DAILY MAIL* TEST.

Despite holding that Daniel's Law is a content-based restriction, the district

court ruled that (1) strict scrutiny does not apply to content-based laws that protect

against "invasions of privacy," saying such laws are instead subject only to the test

set forth in *Daily Mail* and its progeny, JA106-09; (2) Daniel's Law is a privacy

law that protects "personal information," JA105; and (3) Daniel's Law is

constitutional under its formulation of the *Daily Mail* test, JA109-15.  Each of

those rulings was erroneous.

### A.    There Is No Privacy Exception to Strict Scrutiny.

Supreme Court precedent is crystal clear:  "content-based restrictions on

speech . . . can stand only if they survive strict scrutiny."  *Reed*, 576 U.S. at 171.

There is no privacy exception to this fundamental rule.  To determine whether

strict scrutiny applies, courts assess whether a law regulates specific content – not

*why* it regulates that content.  *See id.* at 164-65 ("On its face, the Sign Code is a

content-based regulation of speech.  We thus have no need to consider the

government's justifications or purposes for enacting the Code to determine

whether it is subject to strict scrutiny.").  Content-based laws are thus subject to

strict scrutiny, even when they implicate privacy interests. *See, e.g.*, *Barr*, 591 U.S. at 615 (applying strict scrutiny to content-based law designed to protect "consumers from [the] nuisance and privacy invasion" caused by robocalls).

For example, in *IMDb.com Inc. v. Becerra*, the Ninth Circuit applied strict scrutiny to a content-based restriction on disclosing people's ages and dates of birth. 962 F.3d at 1125-27. The court observed that although "the First Amendment and an individual's right to privacy present competing concerns," *id.* at 1124, only very limited categories of speech, like true threats and obscenity, evade "the normal prohibition on content-based restrictions," *id.* at 1121, 1124 (quoting *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 767 (2018)). Because "privacy" is not one of those categories, the court firmly rejected the notion "that content-based restrictions on public speech touching on private issues escape strict scrutiny." *Id.* at 1123.

The district court eschewed this precedent and split from the Ninth Circuit based on its misreading of *Florida Star* and *Daily Mail* as establishing a separate test for speech restrictions involving privacy interests. *See* JA107-08. Nothing in those cases exempts any category of content-based laws from strict scrutiny. Indeed, this Court already addressed the relationship between the content-based restriction test and the *Daily Mail* test in *Schrader*, 74 F.4th at 123-24. There, the Court explained that when a "restriction on speech is content-based," strict scrutiny

42

applies. *Id.* at 126. Meanwhile, when a law "punishes publishing lawfully

obtained, truthful information of public concern," the *Daily Mail* test applies. *Id.*

Unlike strict scrutiny, this separate "strand of First Amendment law" applies to both

content-based and "content-neutral state laws." *Id.* at 127-28; *see Bartnicki*, 532

U.S. at 525-35 (applying *Daily Mail* test to "content-neutral" wiretap law).

Because the law at issue in *Schrader*, which protected privacy interests by

prohibiting dissemination of child abuse information, was content-based *and*

restricted truthful speech on a matter of public concern, the Court opted to apply

both tests and held that, as applied, the law was unconstitutional under both. 74

F.4th at 126-28.

Schrader shows that, if anything, a law must survive *both* tests to be

constitutionally applied. Indeed, other courts have taken similar approaches in

constitutional challenges to laws restricting disclosure of public officials' addresses

and phone numbers. *See, e.g.*, *Sheehan*, 272 F. Supp. 2d at 1144-48 (concluding

civil statute was unconstitutional under both tests); *Brayshaw*, 709 F. Supp. 2d at

1249-50 (same as to criminal statute). But where, as here, a *content-based*

restriction on truthful speech cannot survive strict scrutiny, *see supra* at 25-41, it is

unnecessary to consider whether the law can satisfy the *Daily Mail* test. *See, e.g.*,

*Doe v. Schorn*, 711 F. Supp. 3d 375, 404-07 & n.15 (E.D. Pa. 2024) (finding it

unnecessary to reach whether statutory prohibition on disseminating educator

discipline information designed to "protect the privacy" of teachers and students

could survive *Daily Mail* test because prohibition could not survive strict scrutiny).

By failing to apply strict scrutiny, the district court relieved Plaintiffs of their

burden to overcome the presumption of unconstitutionality attached to the content-

based restriction imposed by Daniel's Law, required Defendants to show the

speech at issue is a matter of public concern, and avoided any analysis of whether

the Law, as currently drafted, is overinclusive.  That was error.

### B.     Daniel's Law Does Not Protect Private Information.

Even if there were a privacy exception to strict scrutiny, that exception

would not apply because Daniel's Law is not a statute that seeks to remedy

invasions of privacy.  This is clear from the Law's text, which states that its

purpose is "enhanc[ing] safety and security of certain public officials," N.J.S.A.

56:8-166.3 – not shielding their privacy.  Unlike the confidential, personal

information that other laws protect because it is private – like information in

medical, financial, and educational records – people's contact information is

public.  In fact, Daniel's Law itself does not ensure privacy at all.  It explicitly

allows, and in some instances *mandates*, the information in question to remain

publicly available – through the government and other sources.  *See supra* at 13.

The district court acknowledged this point, recognizing that covered persons'

addresses and phone numbers appear in "property records," "voter registration lists," and other public records.  JA111.

The availability of those records continues a long historical tradition of public access to this information.  *See supra* at 7-8; *see also, e.g.*, *W. Buse Tel. Co. v. Nw. Bell Tel. Co.*, 248 N.W. 220, 229 (Minn. 1933) (describing directories that included "names and addresses of all subscribers in the local exchange").  The information regulated by Daniel's Law has long been considered a "public fact," disclosure of which "cannot be viewed as an invasion of privacy."  *McNutt v. N.M. State Trib. Co.*, 538 P.2d 804, 808 (N.M. Ct. App. 1975); *see also Hechler v. Casey*, 333 S.Ed.2d 799, 812 (W. Va. 1985) (similar).

Despite this history and the continued public availability of covered persons' addresses and phone numbers, the district court characterized Daniel's Law as "involving the right to privacy" based on its view that the Law is analogous to privacy torts and laws governing disclosure of public records.  JA108.  None is analogous.  Each shows why Daniel's Law is not a "privacy law."

First, the "common-law right of privacy" does *not* extend to the release of home "addresses of public employees" – or anyone else.  *Tobin v. Mich. Civil Serv. Comm'n*, 331 N.W.2d 184, 191 (Mich. 1982); *see* Philip E. Hassman, *Public Addresses as Well as Name of Person as Invasion of Privacy*, 84 A.L.R.3d 1159 § 1 (1978) (concluding that, "under the Restatement, the mere publication of a

person's address, no matter what the circumstances, could not constitute an invasion of his privacy," and collecting cases).  Daniel's Law is therefore fundamentally different from the publication-of-private-facts tort cited by the district court.  JA106.  That tort concerns publication of matters that are "actually private."  *Romaine v. Kallinger*, 537 A.2d 284, 292 (N.J. 1988).  By definition, it exempts publication of matters of public record.  *See id.* at 292-93; *see also* RESTATEMENT (SECOND) OF TORTS § 652D cmt. b (1977) ("there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record").

Next, the district court's characterization finds no support in cases addressing what counts as private under the Freedom of Information Act ("FOIA").  *See* JA105-06, JA111-12 (citing *Paul P. v. Farmer*, 227 F.3d 98, 101 (3d Cir. 2000), and *U.S. DOJ v. RCFP*, 489 U.S. 749, 764 (1989)).  Those cases considered a person's privacy interest only in connection with FOIA requests from private actors seeking information in the government's possession, not whether the government can restrict private actors from publishing information they already possess.  The latter question is very different and goes to the heart of the First Amendment's command that the government "shall make no law" abridging freedom of speech.  U.S. Const. amend. I.

Indeed, the Ninth Circuit considered – and rejected – this very same comparison.  As that court explained, "FOIA cases typically ask whether, as a

matter of statutory interpretation, the government must *affirmatively disclose* personally identifying information." *IMDb.com*, 962 F.3d at 1124 (emphasis added). Those cases do not address "prohibitions constrained by the First Amendment." *Id.* Whether a state can prohibit publication of information is a "different question entirely." *Id.* The distinction recognized by the Ninth Circuit echoes what the Supreme Court said in one of the cases relied upon by the district court: "The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *RCFP*, 489 U.S. at 763 n.13.

Finally, Daniel's Law is also unlike the other privacy torts cited by Plaintiffs below. The intrusion-upon-seclusion tort prevents a person from intruding into someone's "physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs." *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994). It has nothing to do with disclosing information. *See* RESTATEMENT (SECOND) OF TORTS § 652B cmt. a (intrusion "does not depend upon any publicity given to the person whose interest is invaded or his affairs"). And, the misappropriation tort protects the economic value in a person's "name or likeness"; it does not prevent merely publishing facts about that person. *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 693 (N.J. App. Div. 1982).

47

### C.    **Daniel's Law Is Unconstitutional Under the *Daily Mail* Test.**

Even if the district court were correct that Daniel's Law is a "privacy law" and that such laws need be evaluated only under the *Daily Mail* test, it erred in its application of that test.

### 1.    **The District Court Mischaracterized the *Daily Mail* Test.**

As an initial matter, the basic premise of the district court's analysis, *i.e.*, that the *Daily Mail* test is a *less* speech-protective framework than strict scrutiny, is incorrect.  *Daily Mail* explicitly stated that "state action to punish the publication of truthful information seldom can satisfy constitutional standards."  443 U.S. at 102.  The Supreme Court thus emphasized that, to survive constitutional scrutiny, a "sanction for publishing lawfully obtained, truthful information" on a matter of public concern must serve "the highest form of state interest to sustain its validity." *Id.* at 101-02.  This is the same level of scrutiny required for prior restraints, which "have been accorded the *most* exacting scrutiny."  *Id.* (emphasis added).  Applying this doctrine in *Florida Star*, the Supreme Court instructed that the government could punish publication of lawfully obtained truthful information only if the punishment is "narrowly tailored to a state interest of the highest order."  491 U.S. at 541.  This Court has explained the test the same way.  *See Schrader*, 74 F.4th at 128; *Bowley*, 404 F.3d at 786.

Yet, the district court applied a substantially different – and far more lenient – version of the *Daily Mail* test.  The court appeared to focus its analysis on whether Daniel's Law serves "significant interests'" and "is not underinclusive," without insisting that the Law be "narrowly tailored" to serve an "interest of the highest order."[14]  JA111-14.  In undertaking that limited analysis, the court further watered down the test by holding only that the distinctions drawn by the Legislature were "good" and "rational," and "not arbitrary or discriminatory."  JA112-15.

### 2.    The Law Is Unconstitutional Under the *Daily Mail* Test.

Under a proper application of the *Daily Mail* test, Daniel's Law is unconstitutional.  It is uncontested that the information restricted by Daniel's Law is both truthful and lawfully obtained.  JA090, JA108.  That information also is of public significance.

To the extent the government makes covered persons' addresses and phone numbers available in public records, they *necessarily* are matters of public significance.  When the government places information "in the public domain," as the Supreme Court has held, "the State must be presumed to have concluded that

---

[14] While the Court in *Florida Star* referenced an underinclusiveness problem with the Florida law, *see* 491 U.S. at 540, it separately emphasized the need for narrow tailoring, *see id.* at 538, 541.

the public interest was thereby being served." *Fla. Star*, 491 U.S. at 535; *see also*

*Cox Broad.*, 420 U.S. at 495 ("Public records by their very nature are of interest to

those concerned with the administration of government.").

Historically, people's addresses and phone numbers have been publicly

available, including in records made available by the government. *See supra* at

7-8. And for good reason: that information serves important public interests.

Among many other things, it facilitates commerce, political organizing, and public

safety. *See supra* at 15-16 (explaining uses of contact information and services

provided by Defendants). In fact, the Library of Congress publishes a research

guide that catalogues its collection of city and telephone directories with address

and phone number information, recognizing that these directories are "a terrific

resource for house history, business history, and local history in general."

https://guides.loc.gov/united-states-city-telephone-directories.

Here, the district court made this very point, recognizing that "in some

instances, the availability of home addresses and even phone numbers is *necessary*

for the government and society to function." JA112 (emphasis added). Yet, the

district court discounted the significance of the public interest in address and phone

number information for public officials, saying such information is only

"newsworthy" sometimes and "is not information that is necessary or pertinent for

public oversight." JA109-10. This cramped perspective ignores that addresses and

phone numbers serve the same important interests whether they relate to public officials or other members of the public.

This information also *is* necessary for public oversight.  For example, New Jersey requires that police officers and members of the judiciary be residents of the State.  *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7(a).  For these officials – all of whom are covered by Daniel's Law – their address is fundamental to their qualification to serve and therefore is of public significance.[15]  In addition, as courts have noted in striking down laws similar to Daniel's Law under the *Daily Mail* test, public-official address information facilitates accountability in other ways, including "through aiding in achieving service of process" and "researching criminal history of officers."  *Brayshaw*, 709 F. Supp. 2d at 1249; *see also Sheehan*, 272 F. Supp. 2d at 1139 n.2, 1145 ("personal identifying information" related to "police accountability" is a "matter of public significance").

---

[15] In fact, news publications routinely rely on address information to report on matters of public interest involving law enforcement.  *See, e.g.*, Ellen Gerst, *Chattanooga Police Chief Claims Conflicting Residency in Atlanta, Chattanooga*, Chattanooga Times Free Press (Mar. 11, 2024), https://bit.ly/42xuAqd; Will Cushman, *Many Police Officers in Wisconsin Live Outside the Cities Where They Serve*, PBS Wisconsin (June 9, 2023), https://bit.ly/42izhnm; Ari Ephraim Feldman, *Adams Calls NYPD City Residency Requirements 'A Smart Idea'*, Spectrum News (Jan. 26, 2022), https://bit.ly/4ibCZFl; Ryan J. Foley, *APNewsBreak: Iowa Patrol Lieutenant Faces Inquiry Over Move*, Associated Press (May 7, 2019), https://bit.ly/4ieCwSX.  As these examples show, addresses of law enforcement officials are a matter of significant concern to the public.

The district court further erred in its application of the *Daily Mail* test by only examining whether the Law is "underinclusive," effectively jettisoning the full narrow tailoring requirement and failing to consider the Law's vast overinclusiveness. JA111-15. As explained above, the Law is not narrowly tailored. *See supra* at 25-41. Even in its evaluation of underinclusiveness, the district court neglected to apply the exacting scrutiny required, instead simply concluding that the Law's distinctions between banning private disclosures and allowing government disclosures "are sound." JA112. This permissive regime cannot pass muster because, even assuming the interests targeted by the State are "of the highest order," the Law "leaves appreciable damage to that supposedly vital interest unprohibited." *Fla. Star*, 491 U.S. at 541-42 (Scalia, J., concurring in part and concurring in judgment). That alone undermines any notion that the Law is narrowly tailored.

## III. DANIEL'S LAW IS UNCONSTITUTIONAL BECAUSE IT LACKS A *MENS REA* REQUIREMENT.

On its face, Daniel's Law is a strict-liability statute: It allows recovery of damages without fault. *See* N.J.S.A. 56:8-166.1(b) (anyone "that violates . . . this section shall be liable"). That violates the First Amendment and stands as an independent ground for declaring the Law unconstitutional.

## A.    Daniel's Law Imposes Strict Liability on Speakers in Violation of the First Amendment.

As the district court correctly recognized, the First Amendment does not permit speakers to be sanctioned without some degree of fault.  JA116, JA118-19. Under Supreme Court jurisprudence, liability can be imposed for speech only upon "a showing of a culpable mental state." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023); *see New York Times Co. v. Sullivan*, 376 U.S. 254, 278-79 (1964) (recognizing that state-of-mind requirements are "essential" to protect First Amendment freedoms); *accord Rodgers v. Christie*, 795 F. App'x 878, 880 (3d Cir. 2020) (unpublished) ("extending strict liability to the distribution of ideas would raise serious First Amendment concerns").  This is because "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries," resulting in "self-censorship." *Counterman*, 600 U.S. at 75.  To "prevent that outcome," and provide "breathing space" for people seeking to exercise their freedom of speech, the Supreme Court has required some level of *mens rea* – whether intent, knowledge, recklessness, or negligence – for speech to give rise to liability.  *Id.* at 75, 79 (for "true threat," defendant must "consciously disregard[] a substantial and unjustifiable risk that the conduct will cause harm to another"); *see, e.g.*, *Sullivan*, 376 U.S. at 279-80 (for defamation, defendant must make false statement about public officials "with knowledge that it was false or with reckless disregard of whether it was false or not"); *Hess v. Indiana*, 414 U.S. 105, 109

(1973) (for incitement, speech must be "intended" to produce "imminent

disorder"); *Hamling v. United States*, 418 U.S. 87, 122-23 (1974) (for obscenity,

defendant must have awareness of "the character and nature" of materials

distributed); *Smith v. California*, 361 U.S. 147, 152 (1959) (striking down

obscenity ordinance imposing strict liability on booksellers who "had not the

slightest notice of the character of the books they sold").

Where the speech in question is true, as it is in this case, the speaker's state

of mind is especially important. *Florida Star* is instructive. The statute at issue in

that case, which prohibited publication of names of victims of sexual offenses,

contained no *mens rea* requirement. 491 U.S. at 528. After a newspaper published

a victim's name, she filed suit, alleging the newspaper "negligently violated" the

statute, and the trial judge held that the violation, standing alone, was negligence

*per se*. *Id.* at 528-29.

The Supreme Court reversed, holding that strict liability could not be used to

sanction the newspaper's report of truthful information. *Id.* at 529. The Court

ruled that imposing liability would be unconstitutional because neither the statute's

text nor the trial court's "negligence *per se*" standard contained a "scienter

requirement of any kind." *Id.* at 539. As the Court explained, under the

"negligence *per se*" standard, "liability follows automatically from publication,"

without regard to how the defendant obtained or used the victim's identity, leading

to "the perverse result that truthful publications" would be "less protected by the First Amendment than even the least protected defamatory falsehoods." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)).

Daniel's Law suffers from this same constitutional infirmity. Without a textual *mens rea* requirement, the Law will lead to "self-censorship," with would-be speakers "steering wide of the unlawful zone" for fear of liability. *Counterman*, 600 U.S. at 75 (cleaned up); *see, e.g.*, *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690-91 (8th Cir. 1992) (holding that strict-liability prohibition on violent video sales to minors "would make video dealers more reluctant to exercise their freedom of speech and ultimately restrict the public's access to constitutionally protected videos"). Faced with strict liability and mandatory civil penalties, private entities will feel compelled to remove information in response to every nondisclosure notice – regardless of whether they believe there is a threat to a covered person's safety, should know there is a reasonable risk to a covered person, or have any reason to know the notification is even valid. This, in turn, will limit the public's access to information "that the statute does not purport to regulate and that the First Amendment fully protects." *Id.* Daniel's Law is unconstitutional to the extent it imposes strict liability. JA116, JA118-19.

### B. The District Court Erred by Writing a *Mens Rea* Requirement into the Law.

The district court sought to save the Law by predicting the New Jersey Supreme Court would interpret it to "conform to the Constitution" by writing in the missing standard. JA117-120. That prediction runs counter to precedent from both the United States and New Jersey Supreme Courts.

The New Jersey Supreme Court has instructed that the "doctrine of constitutional avoidance comes into play when a statute is susceptible to two reasonable interpretations, one constitutional and one not." *State v. Pomianek*, 110 A.3d 841, 855 (N.J. 2014). This instruction mirrors the United States Supreme Court's admonition that "the canon of constitutional avoidance has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001). Daniel's Law is unambiguous. It includes no fault standard in its "actual damages" provision. In contrast, its punitive damages provision requires "willful or reckless" disregard. N.J.S.A. 56:8-166.1(c)(1), (2).

In *Pomianek*, the New Jersey Supreme Court dealt with this identical situation. It considered a statute that contained a *mens rea* requirement in two subsections, but not in another subsection. The court held that the subsection that was silent on *mens rea* could not be rewritten to contain such a requirement. As the Court explained, "[t]he Legislature pointedly decided not to include" a *mens*

*rea* element in that subsection, which was "evident by the presence of *mens rea* elements" in the two other subsections. *Pomianek*, 110 A.3d at 855. The court thus held that the lower court "erred by rewriting the statute to impose a *mens rea* element," characterizing that decision as "a judicial transplant" rather than "minor judicial surgery to save a statutory provision." *Id.*; *see also Oakland Cannabis Buyers' Coop.*, 532 U.S. at 493 (declining to recognize exception to liability that would "override a legislative determination manifest in a statute").

The same principle applies when statutes implicate free speech rights. For example, in *Usachenok v. Department of the Treasury*, the New Jersey Supreme Court declined to "rewrite" a "regulation to render it constitutional," explaining that adding the "substantial language" advocated by the State's Attorney General to a regulation that was silent on the issue "would extend beyond the limits of judicial surgery." 313 A.3d 53, 63 (N.J. 2024); *see also United States v. Stevens*, 559 U.S. 460, 481 (2010) (refusing to impose limiting construction because it would invade "the legislative domain"). Here, the district court undertook just the kind of "judicial transplant" *Pomianek* and *Usachenok* forbid.

The district court's error in rewriting Daniel's Law is particularly egregious because there is no doubt the Legislature intended the Law to impose strict liability. Originally, the Law permitted damages only if "a reasonable person would believe that providing . . . information would expose another to harassment

57

or risk of harm to life or property." *See supra* at 11.  But the Legislature repealed that language and amended the Law to provide that a court "shall award" actual damages with no fault required.  *See supra* at 11-12.  It is well settled that courts must "presume" the Legislature intended this amendment "to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641-42 (2015); *see also Gatto Design & Dev. Corp. v. Twp. of Colts Neck*, 719 A.2d 707, 709 (N.J. App. Div. 1998) ("[A]n amendment to a statute ordinarily implies a purposeful alteration in substance.").

Finally, the district court's decision to write into Daniel's Law an otherwise absent *mens rea* requirement runs counter to federal appellate court decisions taking the opposite approach.  *See Video Software Dealers Ass'n*, 968 F.2d at 691 (declaring statute imposing strict liability for renting or selling violent videos to minors facially unconstitutional); *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 613 (6th Cir. 2005) (declaring ordinance imposing strict liability for participating in a march without a permit facially unconstitutional). Like those laws, Daniel's Law contains no *mens rea* requirement and should have been invalidated on this basis alone.

## C.    The District Court's New Standard Fails to Satisfy the First Amendment.

Even if a *mens rea* requirement could properly be grafted onto Daniel's Law, the standard created by the district court fails constitutional scrutiny.  The

Supreme Court has repeatedly held that for speech to be actionable under the First Amendment, the *mens rea* must be tailored to the harm the speech restriction seeks to prevent.  For example, the tort of defamation remedies reputational harm caused by a material falsehood.  Thus, when a public official brings a claim for defamation, the Supreme Court requires a showing that the defendant either knew of, or recklessly disregarded, the statement's falsity.  *Sullivan*, 376 U.S. at 280. Likewise, laws punishing true threats address speech that places a person in fear that the speaker plans to "commit an act of unlawful violence."  *Counterman*, 600 U.S. at 74.  Accordingly, the Supreme Court requires a showing that the defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."  *Id.* at 69; *see also id.* at 76-77 (discussing same principle with respect to obscenity and incitement).

Here, in derogation of this precedent, the district court adopted a standard detached from any harm the speech restrictions imposed by Daniel's Law seek to prevent.  Rather, the district court construed the Law to impose liability "only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired."  JA120.  It purported to borrow this standard from the "unreasonable publication of private facts" tort, JA119-20, but that tort's unreasonableness standard considers whether "the matters revealed were actually private" and

59

whether "dissemination of such facts would be offensive to a reasonable person" – the same harms the tort aims to remedy. *Romaine*, 537 A.2d at 292. The district court's test, however, is not tied to the harm Daniel's Law seeks to prevent: the safety risk posed to the covered person. Nor is it tied to an alleged loss of privacy. The standard is not even tied to a defendant's state of mind. Rather, the standard exclusively concerns a defendant's *ability* to comply with a nondisclosure notice within the mandatory ten-day period. JA119 (offering fire, hurricane, and computer failure as exculpatory examples).

While that standard is necessary, it is not sufficient under Supreme Court precedent. A culpability standard must account for a person's ability to comply with a speech prohibition, but that conduct-based standard is not, standing alone, sufficient to provide the breathing space required to guard speech protected by the First Amendment. To pass constitutional muster, a speech restriction imposing liability must include a robust "scienter requirement." *Fla. Star*, 491 U.S. at 539.

The district court's new standard – improperly written into the Law in the first place – is patently insufficient under Supreme Court doctrine. It too violates the First Amendment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court hold Daniel's Law facially unconstitutional and reverse the district court's order.

Dated: April 14, 2025

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*RocketReach LLC (No. 25-1582)*

**BALLARD SPAHR LLP**

*/s/ Michael Berry*
Marcel S. Pratt
Michael Berry
Anna Kaul
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 864-8500
prattm@ballardspahr.com
berrym@ballardspahr.com
kaula@ballardspahr.com
*Attorneys for Defendants-Appellants*
*Thomson Reuters Corporation, Thomson*
*Reuters Canada Limited, Thomson Reuters*
*Enterprise Centre GmbH, and West Publishing*
*Corporation (No. 25-1570)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*Deluxe Corp. (No. 25-1559)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*PropertyRadar Inc. (No. 25-1584)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*DM Group Inc. (No. 25-1558)*

**SEYFARTH SHAW LLP**

*/s/ Robert T. Szyba*

Robert T. Szyba
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants*
*We Inform, LLC (No. 25-1555);*
*Infomatics, LLC (No. 25-1556); and*
*The People Searchers, LLC (No. 25-1557)*

**GORDON REES SCULLY MANSUKHANI LLP**

*/s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants Quantarium Alliance, LLC and Quantarium Group, LLC (No. 25-1560)*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Derek L. Shaffer*
Derek L. Shaffer
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant Yardi Systems, Inc. (No. 25-1561)*

**LOMURRO, MUNSON, LLC**

*/s/ Eric H. Lubin*
Eric H. Lubin
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ 07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants*
*Digital Safety Products, LLC (No. 25-1562);*
*Civil Data Research (No. 25-1563); and*
*Scalable Commerce & National Data*
*Analytics (No. 25-1564)*

**COOPER, LLC – COUNSELORS AT LAW**

*/s/ Ryan J. Cooper*
Ryan J. Cooper
Renier Pierantoni
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant*
*Labels & Lists, Inc. (No. 25-1565)*

**PIERSON FERDINAND LLP**

*/s/ Jill A. Guldin*
Jill A. Guldin
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(856) 896-409
jill.guldin@pierferd.com

-and –

**FISHERBROYLES LLP**

Jason A. Spak
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant*
*Innovis Data Solutions, Inc. (No. 25-1566)*

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*/s/ John E. MacDonald*
John E. MacDonald
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants*
*Accurate Append, Inc. (No. 25-1567); and*
*Restoration of America, Inc. and Voter*
*Reference Foundation, LLC (No. 25-1572)*

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Samantha L. Southall*
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants Zillow Inc.*
*and Zillow Group, Inc. (No. 25-1568)*

**GIBBONS P.C.**

*/s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant*
*Equimine, Inc. (No. 25-1569)*

**RIKER DANZIG LLP**

*/s/ Michael P. O'Mullan*
Michael P. O'Mullan
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant*
*Melissa Data Corporation (No. 25-1571)*

**STINSON LLP**

*/s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
100 Wall Street, Suite 201
New York, NY 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant*
*i360, LLC (No. 25-1573)*

**GREENBERG TRAURIG, LLP**

*/s/ David E. Sellinger*
David E. Sellinger
Aaron Van Nostrand
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC, and GoHunt Management*
*Holdings II, LLC (No. 25-1574)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**LOWENSTEIN SANDLER LLP**

*/s/ Jennifer Fiorica Delgado*
Jennifer Fiorica Delgado
One Lowenstein Drive
Roseland, NJ 07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant*
*AccuZip, Inc. (No. 25-1575)*

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Matthew S. AhKao*
Matthew S. AhKao
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant*
*Synaptix Technology, LLC (No. 25-1576)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC (No. 25-1577)*
**THOMPSON HINE LLP**

*/s/ J. Timothy McDonald*
J. Timothy McDonald
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia  30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky (application for
admission pending)
127 Public Square, #3900
Cleveland, OH  44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant*
*Fortnoff Financial, LLC (No. 25-1578)*

**RKW, LLC**

*/s/ H. Mark Stichel*
H. Mark Stichel
10075 Red Run Blvd., 4th Floor
Owings Mills, MD 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant*
*E-Merges.com, Inc. (No. 25-1580)*

**GORDON REES SCULLY**
**MANSUKHANI LLP**

*/s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant*
*Nuwber, Inc. (No. 25-1581)*

**BLANK ROME LLP**

*/s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant*
*Belles Camp Communications, Inc.*
*(No. 25-1583)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*The Alesco Group, L.L.C. (improperly pled*
*as Alesco AI, LLC, Alesco Marketing*
*Solutions, L.L.C., Stat Resource Group Inc.,*
*and Response Solutions Group, LLC)*
*(No. 25-1585)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Searchbug, Inc. (No. 25-1586)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Amerilist, Inc. (No. 25-1587)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*US Data Corporation (No. 25-1588)*

**MANATT, PHELPS & PHILLIPS, LLP**

*/s/ Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, NY 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant*
*Smarty, LLC d/b/a SmartyStreets, LLC*
*(No. 25-1589)*

**WOOD, SMITH, HENNING & BERMAN LLP**

*/s/ Jared K. Levy*
Jared K. Levy
400 Connell Drive, Suite 1100
Berkeley Heights, NJ 07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants*
*Compact Information Systems, LLC,*
*Accudata Integrated Marketing, Inc.,*
*Alumnifinder, ASL Marketing, Inc., College*
*Bound Selection Services, Deepsync Labs,*
*Homedata, and Student Research Group*
*(No. 25-1590)*

**GREENSPOON MARDER**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**RAJ FERBER PLLC**

Kiran Raj
1629 K Street NW, Suite 300
Washington, DC  20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant*

*DarkOwl, LLC (No. 25-1591)*

**KAUFMAN DOLOWICH LLP**

*/s/ Christopher Nucifora*
Christopher Nucifora
Timothy M. Ortolani
Court Plaza North
25 Main Street, Suite 500
Hackensack, NJ 07601
(201) 708-8207
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy Dialer, Inc. (No. 25-1592)*

**STARR, GERN, DAVISON & RUBIN, P.C.**

*/s/ Ronald L. Davison*
Ronald L. Davison
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
(973) 403-9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant Lighthouse List Company, LLC (No. 25-1593)*

**FREEMAN MATHIS & GARY, LLP**

*/s/ William Wendell Cheney, III*
William Wendell Cheney, III
Andrew W. Sheppard
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
(856) 406-1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant*
*First Direct, Inc. (No. 25-1676)*

**LAW OFFICES OF JARED M.
WICHNOVITZ, P.C.**

*/s/ Jared M. Wichnovitz*
Jared M. Wichnovitz
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
(732) 765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant*
*Greenlight Venture Corp. (No. 25-1677)*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, and Local Appellate Rule 31.1, I hereby certify that:

1.      The foregoing Joint Brief of Appellants complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because, according to the word count of the word-processing system used to prepare the brief, the brief contains 12,987 words, excluding the corporate disclosure statement, table of contents, table of authorities, and certificates of counsel;

2.      The foregoing Joint Brief of Appellants complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font;

3.      The text of the electronic brief and the text of the paper copies filed with the Clerk are identical; and

4       The PDF file of this brief has undergone a virus check using Windows Defender Advanced Threat Protection Antivirus, Version 1.427.113.0 (last updated April 7, 2025), and no virus was detected.

This 14th day of April, 2025.

_____ */s/ Angelo A. Stio III* _____
Angelo A. Stio III

# CERTIFICATION OF BAR ADMISSION

Pursuant to L.A.R. 46.1, I hereby certify that at least one of the attorneys

whose names appear on this brief is a member of the bar of this Court.


*/s/ Angelo A. Stio III*
Angelo A. Stio III

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2025, I caused a true and correct copy of this Joint Brief of Appellants and Volumes 1 through 3 of the accompanying Joint Appendix to be served via ECF and Volume 4 of the Joint Appendix, which is being filed **under seal**, to be served electronic mail upon the following:

Kathleen B. Einhorn, Esq.
Jessica A. Merejo, Esq.
Rajiv D. Parikh, Esq.
PEM Law
1 Boland Drive
Suite 101
West Orange, NJ 07052
rparikh@pemlaw.com
keinhorn@pemlaw.com
jmerejo@pemlaw.com

Mark C. Mao, Esq.
Boies Schiller Flexner
44 Montgomery Street
41st Floor
San Francisco, CA 94104
mmao@bsfllp.com

Eric M. Palmer, Esq.
Boies Schiller Flexner
401 E Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301
epalmer@bsfllp.com

Kashif T. Chand, Esq.
Office of Attorney General of New Jersey
124 Halsey Street
5th Floor
Newark, NJ 07102
Kashif.chand@law.njoag.gov

Liza B. Fleming, Esq.
Michael L. Zuckerman, Esq.
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625
Liza.Fleming@njoag.gov
Michael.Zuckerman@njoag.gov

*Counsel for Intervenor Attorney General of New Jersey*

Samantha D. Parrish, Esq.
Boies Schiller Flexner
2029 Century Park East
Suite 1520
Los Angeles, CA 90067
sparrish@bsfllp.com

Adam R. Shaw, Esq.
Boies Schiller Flexner
30 S Pearl Street
12th Floor
Albany, NY 12207
ashaw@bsfllp.com

*Counsel for Plaintiffs-Appellees*

                                      */s/ Angelo A. Stio III*
                                       Angelo A. Stio III

Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

ATLAS DATA PRIVACY CORP., AS ASSIGNEE OF INDIVIDUALS WHO ARE COVERED
PERSONS; JANE DOE 1, A LAW ENFORCEMENT OFFICER; JANE DOE 2,
A LAW ENFORCEMENT OFFICER; EDWIN MALDONADO; SCOTT MALONEY;
JUSTYNA MALONEY; PATRICK COLLIGAN;
PETER ANDREYEV; AND WILLIAM SULLIVAN,

PLAINTIFFS-APPELLEES,

*v.*

WE INFORM LLC, ET AL.

DEFENDANTS-APPELLANTS.

On Appeal from the Order and Memorandum of the United States District Court
for the District of New Jersey dated November 26, 2024

## JOINT APPENDIX
## Volume 1 of 4
## (JA001 through JA142)

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
**TROUTMAN PEPPER LOCKE LLP**
Suite 400, 301 Carnegie Center
Princeton, NJ 08540
(609) 452-0808
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com
*Attorneys for Defendants-Appellants*
*RocketReach LLC (No. 25-1582);*
*Deluxe Corp. (No. 25-1559); Proper-*
*tyRadar Inc.(No. 25-1584); and DM*
*Group Inc. (No. 25-1558)*

Marcel S. Pratt
Michael Berry
Anna Kaul
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 864-8500
prattm@ballardspahr.com
berrym@ballardspahr.com
kaula@ballardspahr.com
*Attorneys for Defendants-Appellants*
*Thomson Reuters Corporation,*
*Thomson Reuters Canada Limited, Thom-*
*son Reuters Enterprise Centre GmbH, and*
*West Publishing Corp. (No. 25-1570)*

[*Additional Counsel on Following Pages*]

*Counsel Continued from Cover Page*:

Robert T. Szyba
**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants
We Inform, LLC (No. 25-1555);
Infomatics, LLC (No. 25-1556); and
The People Searchers, LLC
(No. 25-1557)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI
LLP**
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants
Quantarium Alliance, LLC and
Quantarium Group, LLC (No. 25-1560)*

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant
Yardi Systems, Inc. (No. 25-1561)*

Eric H. Lubin
**LOMURRO, MUNSON, LLC**
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ 07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants
Digital Safety Products, LLC (No.
25-1562); Civil Data Research (No.
25-1563); and Scalable Commerce &
National Data Analytics (No. 25-1564)*

Ryan J. Cooper
Renier Pierantoni
**COOPER, LLC – COUNSELORS AT LAW**
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant*
*Labels & Lists, Inc. (No. 25-1565)*

Jill A. Guldin
**PIERSON FERDINAND LLP**
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(856) 896-409
jill.guldin@pierferd.com

-and –

Jason A. Spak
**FISHERBROYLES LLP**
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant*
*Innovis Data Solutions, Inc.*
*(No. 25-1566)*

John E. MacDonald
**CONSTANGY, BROOKS, SMITH &**
**PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants*
*Accurate Append, Inc. (No. 25-1567);*
*and Restoration of America, Inc. and*
*Voter Reference Foundation, LLC*
*(No. 25-1572)*

Samantha L. Southall
**BUCHANAN INGERSOLL & ROONEY PC**
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants*
*Zillow Inc. and Zillow Group, Inc.*
*(No. 25-1568)*

Frederick W. Alworth
Kevin R. Reich
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant
Equimine, Inc. (No. 25-1569)*

Michael P. O'Mullan
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant
Melissa Data Corporation
(No. 25-1571)*

Richard J.L. Lomuscio
**STINSON LLP**
100 Wall Street, Suite 201
New York, NY 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant
i360, LLC (No. 25-1573)*

David E. Sellinger
Aaron Van Nostrand
**GREENBERG TRAURIG LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants
GoHunt, LLC, GoHunt Management
Holdings, LLC, and GoHunt
Management Holdings II, LLC
(No. 25-1574)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

Jennifer Fiorica Delgado
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant*
*AccuZip, Inc. (No. 25-1575)*

Matthew S. AhKao
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant*
*Synaptix Technology, LLC*
*(No. 25-1576)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC (No. 25-1577)*

J. Timothy McDonald
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky
(admission pending)
127 Public Square, #3900
Cleveland, OH 44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant*
*Fortnoff Financial, LLC (No. 25-1578)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI LLP**
MANSUKHANI LLP
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant
Nuwber, Inc. (No. 25-1581)*

H. Mark Stichel
**RKW, LLC**
10075 Red Run Blvd., 4th Floor
Owings Mills, MD 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant
E-Merges.com, Inc. (No. 25-1580)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant
The Alesco Group, L.L.C. (improperly
pled as Alesco AI, LLC, Alesco
Marketing Solutions, L.L.C., Stat
Resource Group Inc., and Response
Solutions Group, LLC) (No. 25-1585)*

Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
**BLANK ROME LLP**
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant
Belles Camp Communications, Inc.
(No. 25-1583)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant
Amerilist, Inc. (No. 25-1587)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant
Searchbug, Inc. (No. 25-1586)*

Kenneth D. Friedman
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant
Smarty, LLC d/b/a SmartyStreets, LLC
(No. 25-1589)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant
US Data Corporation (No. 25-1588)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**RAJ FERBER PLLC**
Kiran Raj
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant
DarkOwl, LLC (No. 25-1591)*

Jared K. Levy
**WOOD, SMITH, HENNING & BERMAN LLP**
400 Connell Drive, Suite 1100
Berkeley Heights, NJ 07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc.,
College Bound Selection Services,
Deepsync Labs, Homedata, and Student
Research Group (No. 25-1590)*

Ronald L. Davison
**STARR, GERN, DAVISON & RUBIN, P.C.**
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
(973) 403-9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant
Lighthouse List Company, LLC
(No. 25-1593)*

Christopher Nucifora
Timothy M. Ortolani
**KAUFMAN DOLOWICH LLP**
Court Plaza North
25 Main Street, Suite 500
Hackensack, NJ 07601
(201) 708-8207
cnucifora@kaufmandolowich.com tortolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy
Dialer, Inc. (No. 25-1592)*

Jared M. Wichnovitz
**LAW OFFICES OF JARED M.
WICHNOVITZ, P.C.**
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
(732) 765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant
Greenlight Venture Corp.
(No. 25-1677)*

William Wendell Cheney, III
Andrew W. Sheppard
**FREEMAN MATHIS & GARY, LLP**
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
(856) 406-1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant
First Direct, Inc. (No. 25-1676)*

# TABLE OF CONTENTS
## (JOINT APPENDIX)

**Page**

### Volume 1 of 4:
### (JA001 to JA142)

Joint Petition for Leave to File Appeal Under 28 U.S.C. §1292(b),
dated December 12, 2024.................................................................................JA001

Order denying Defendants' Consolidated Motion to Dismiss,
dated November 26, 2024 .............................................................................JA073

Memorandum denying Consolidated Motion to Dismiss,
dated on November 26, 2024 .........................................................................JA082

Order pursuant to 28 U.S.C. §1292(b), dated December 2, 2024 ...................JA124

Order of USCA granting Petition for Leave to Appeal,
dated March 18, 2025 (Atlas Data Privacy Corporation v.
*We Inform, LLC* No. 24-0437-HB ("*We Inform*")(ECF 44)...........................JA138

### Volume 2 of 4:
### (JA143 to JA481)

District Court Docket Entries for *Atlas Data Privacy Corp. et al. v.
We Inform, LLC, et al.*, No. 24-cv-04037-HB ..................................................JA143

District Court Docket Entries for *Atlas Data Privacy Corp. et al. v.
Infomatics, LLC, et al.*, No. 24-cv-04041-HB ..................................................JA152

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
The People Searchers, LLC, et al.*, No. 24-cv-04045-HB ...............................JA159

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
DM Group, Inc., et al.*, No. 24-cv-04075-HB  .................................................JA167

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
Deluxe Corporation, et al.*, No. 24-cv-04080-HB ...........................................JA177

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Quantarium Alliance, LLC, et al.*, No. 24-cv-04098-HB ................................ JA188

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Yardi Systems, Inc., et al.*,  No. 24-cv-04103-HB  ........................... JA196

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Digital Safety Products, LLC, et al.*, No. 24-cv-04141-HB  ........................... JA204

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Civil Data Research*, No. 24-cv-04143-HB ...................................... JA212

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Scalable Commerce, LLC*, No. 24-cv-04160-HB ........................... JA220

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Labels & Lists, Inc.*, No. 24-cv-04174-HB ...................................... JA228

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Innovis Data Solutions Inc.*, No. 24-cv-04176-HB ......................... JA238

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Accurate Append, Inc.*, No. 24-cv-04178-HB  ................................ JA248

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Zillow, Inc., et al.*, No. 24-cv-04256-HB  ....................................... JA256

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Equimine, Inc., et al.*, No. 24-cv-04261-HB .................................... JA266

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Thomson Reuters Corp., et al.*, No. 24-cv-04269-HB ...................................... JA274

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Melissa Data Corp., et al.*, No. 24-cv-04292-HB  ........................... JA286

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Restoration of America, et al.*, No. 24-cv-04324-HB ...................................... JA295

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. i360, LLC, et al.*, No. 24-cv-04345-HB ......................................................... JA304

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. GoHunt, LLC, et al.*, No. 24-cv-04380-HB .................................................... JA313

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Accuzip, Inc., et al.*, No. 24-cv-04383-HB ...................................................... JA321

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Synaptix Technology, LLC,et al.*, No. 24-cv-04385-HB ................................. JA329

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Joy Rockwell Enterprises, Inc., et al.*, No. 24-cv-04389-HB ......................... JA338

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Fortnoff Financial, LLC, et al.*, No. 24-cv-04390-HB ................................... JA346

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. MyHeritage, Ltd., et al.*, No. 24-cv-04392-HB................................................. JA355

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. E-Merges.com, Inc.*, No. 24-cv-04434-HB ...................................................... JA365

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Nuwber, Inc., et al.*, No. 24-cv-04609-HB ....................................................... JA373

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. RocketReach LLC, et al.*, No. 24-cv-04664-HB ............................................. JA382

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Belles Camp Communications, Inc., et al.*, No. 24-cv-04949-HB ................... JA392

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. PropertyRadar, Inc., et al.*, No. 24-cv-05600-HB ........................................... JA401

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. The Alesco Group, L.L.C., et al.*, No. 24-cv-05656-HB .................................. JA409

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Searchbug, Inc., et al.*, No. 24-cv-05658-HB ................................................. JA417

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Amerilist, Inc., et al.*, No. 24-cv-05775-HB ................................................. JA424

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. US Data Corporation, et al.*, No. 24-cv-07324-HB ......................................... JA431

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Smarty, LLC, et al.*, No. 24-cv-08075-HB ......................................................... JA437

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Compact Information Systems, LLC, et al.*, No. 24-cv-08451-HB .................. JA445

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Darkowl, LLC, et al.*, No. 1:24-cv-10600 ......................................................... JA454

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Spy Dialer, Inc., et al.*, No. 1:24-cv-11023-HB ............................................... JA461

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Lighthouse List Company, LLC, et al.*, No. 24-cv-11443-HB ......................... JA467

District Court Docket Entries for *Atlas Data Privacy Corp., et al. v. First Direct Inc., et al.*, No. 25-cv-01480-HB ................................................. JA472

District Court Docket Entries for *Atlas Data Privacy Corp., et al. v. Greenflight Venture Corp., et al.*, No. 25-cv-01517-HB ................................. JA477

**Volume 3 of 4:**
**(JA482 to JA820)**

Complaint, dated February 23, 2024 (*We Inform*, ECF 1-1)............................JA482

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. Zillow, Inc.*, No. 24-cv-04256-HB (ECF 1-1)) .................................................JA510

Complaint, dated February 13, 2024, filed in *Atlas Data Privacy Corp. v. DM Group Inc.*, No. 24-cv 04075-HB (ECF 1-1) ............................................JA534

Complaint, dated February 13, 2024, filed in *Atlas Data Privacy Corp. v. Innovis Data Solutions Inc.*, No. 24-cv-04176-HB (ECF 1-1).........................JA556

Complaint, dated October 16, 2024, filed in *Atlas Data Privacy Corp. v. Dark Owl, LLC*, No. 24-cv-10600-HB (ECF 1-1)............................................JA580

Complaint, dated February 15, 2024, filed in *Atlas Data Privacy Corp. v. Thomson Reuters Corp.*, No. 24-cv-04269-HB (ECF 1-2)...............................JA605

Complaint, dated February 9, 2024, filed in *Atlas Data Privacy Corp. v. Smarty, LLC*, No. 24-cv-08075-HB (ECF 1-2) .................................................JA630

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. E-Merges.com Inc.*, No. 24-cv-04434-HB (ECF 1-1) ......................................JA655

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. Restoration of America, et al.*, No. 24-cv-04324-HB (ECF 1-1) .....................JA679

Order setting deadlines for the filing of certain motions and briefs, and staying action until further order of the Court, dated May 8, 2024 (*We Inform*, ECF 15)........................................................................................JA704

Order setting facial challenge schedule and vacating Court's orders of May 8, 2024 and June 3, 2024, dated July 10, 2024 (*We Inform*, ECF 22)........................................................................................JA721

Order vacating Court's Order of July 10, 2024; setting schedule for facial challenge; and staying actions pending further order of the Court, dated August 15, 2024 (*We Inform*, ECF 24)............................................................JA738

Declaration of Serrin Turner in Support of Defendants' Consolidated
Motion to Dismiss, dated June 10, 2024, filed in *Atlas Data Privacy Corp. v.
Lightbox Parent, L.P.*, No. 24-cv-04105-HB ("*Lightbox*")
(ECF 27-1) ....................................................................................... JA755

Exhibit 1 – Complaint in *Atlas Data Privacy Corporation v.
Blackbaud Inc.*, Case No. 24-cv-3993-HB (*Lightbox*, ECF 27-2) ................... JA756

* * *

Exhibit 10 – Genova Burns LLC's 2023 "Annual Report of
Governmental Affairs Agent" filed with the New Jersey
Elections Law Enforcement Commission on February 14, 2024
(*Lightbox*, ECF 27-11) ............................................................. JA780

Exhibit 11 – Atlas Data Privacy Corporation's Filing
Certificate with the State of New Jersey Department of Treasury,
filed on January 12, 2024 (*Lightbox*, ECF 27-12) ................................. JA792

* * *

Exhibit 13 – Article from New Jersey Cops Magazine entitled
"The Right to Privacy and to Attend the Mini Convention"
(*Lightbox*, ECF 27-14) .............................................................. JA796

Exhibit 14 – Exemplar of Atlas Daniel's Law Service Terms
(*Lightbox*, ECF 27-15) ............................................................. JA800

Exhibit 15 – Spreadsheet reflecting the timestamps of a sample
of 100 emails sent by Atlas Mail to Defendant CoStar Realty
Information, Inc. (*Lightbox*, ECF 27-16) .......................................... JA815

Certificate of Service Pursuant to Federal Rule of Appellate
Procedure 25(d) .................................................................. JA819

**Volume 4 of 4**
**Filed Under Seal**
**(JA821 to JA870)**

Declaration of Serrin Turner in Support of Defendants' Consolidated
Motion to Dismiss, dated June 10, 2024 (*Lightbox*, ECF 28) .......................... JA821

Exhibit 2 –mortgage records (*Lightbox*, ECF 28-1) ............................. JA836

Exhibit 3 – mortgage records (*Lightbox*, ECF 28-2) ............................. JA838

Exhibit 4 –mortgage records (*Lightbox*, ECF 28-3) .............................. JA849

Exhibit 5 –LinkedIn page (*Lightbox*, ECF 28-4) ................................. JA851

Exhibit 6 - public realtor profile (*Lightbox*, ECF 28-5) ........................ JA857

Exhibit 7 – Press release dated January 22, 2025
(*Lightbox*, ECF 28-6)............................................................. JA860

Exhibit 8 – Retirement announcement (*Lightbox*, ECF 28-7) .............. JA863

Exhibit 9 – Wells Fargo business profile (*Lightbox*, ECF 28-8) ........... JA865

**CASE NO. _____**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> WE INFORM, LLC., et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4037 |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> INFOMATICS, LLC, et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4041 |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> THE PEOPLE SEARCHERS, LLC, et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4045 |

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

DM GROUP. INC., et al.,

       Defendants-Petitioners.

Civil Action No. 24-4075

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

DELUXE CORPORATION, et al.,

       Defendants-Petitioners.

Civil Action No. 24-4080

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

QUANTARIUM ALLIANCE, LLC, et al.,

       Defendants-Petitioners.

Civil Action No. 24-4098

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-4103 |
| v. | |
| YARDI SYSTEMS, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-4141 |
| v. | |
| DIGITAL SAFETY PRODUCTS, LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-4143 |
| v. | |
| CIVIL DATA RESEARCH | |
| Defendants-Petitioners. | |

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

SCALABLE COMMERCE, LLC, et al.,

      Defendants-Petitioners.

Civil Action No. 24-4160

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

LABELS & LISTS, INC.

      Defendants-Petitioners.

Civil Action No. 24-4174

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

INNOVIS DATA SOLUTIONS INC., et al.,

      Defendants-Petitioners.

Civil Action No. 24-4176

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

ACCURATE APPEND, INC., et al.

       Defendants-Petitioners.

Civil Action No. 24-4178

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

ZILLOW, INC., et al.,

       Defendants-Petitioners.

Civil Action No. 24-4256

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

EQUIMINE, INC., et al.,

       Defendants-Petitioners.

Civil Action No. 24-4261

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

MELISSA DATA CORP., et al.,

      Defendants-Petitioners.

Civil Action No. 24-4292

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

RESTORATION OF AMERICA, et al.,

      Defendants-Petitioners.

Civil Action No. 24-4324

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

i360, LLC, et al.,

      Defendants-Petitioners.

Civil Action No. 24-4345

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

GOHUNT, LLC, et al.,

      Defendants-Petitioners.

Civil Action No. 24-4380

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

ACCUZIP, INC., et al.,

      Defendants-Petitioners.

Civil Action No. 24-4383

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

SYNAPTIX TECHNOLOGY, LLC, et al.,

      Defendants-Petitioners.

Civil Action No. 24-4385

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> JOY ROCKWELL ENTERPRISES, INC., et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4389 |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> FORTNOFF FINANCIAL, LLC, et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4390 |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> MYHERITAGE, LTD., et al., <br><br> Defendants-Petitioners. | Civil Action No. 24-4392 |

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

E-MERGES.COM, INC.

       Defendants-Petitioners.

Civil Action No. 24-4434

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

NUWBER, INC., et al.,

       Defendants-Petitioners.

Civil Action No. 24-4609

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

ROCKETREACH LLC, et al.,

       Defendants-Petitioners.

Civil Action No. 24-4664

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-4949 |
| v. | |
| BELLES CAMP COMMUNICATIONS, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-5600 |
| v. | |
| PROPERTYRADAR, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civ. Action No. 24-5656 |
| v. | |
| THE ALESCO GROUP, L.L.C. | |
| Defendants-Petitioners. | |

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

SEARCHBUG, INC.

       Defendants-Petitioners.

Civ. Action No. 24-5658

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

AMERILIST, INC., et al.,

       Defendants-Petitioners.

Civ. Action No. 24-5775

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

US DATA CORPORATION, et al.,

       Defendants-Petitioners.

Civ. Action No. 24-7324

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

SMARTY, LLC, et al.,

       Defendants-Petitioners.

Civ. Action No. 24-8075

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

COMPACT INFORMATION SYSTEMS,
LLC, et al.,

       Defendants-Petitioners.

Civ. Action No. 24-8451

ATLAS DATA PRIVACY CORPORATION,
et al.,

       Plaintiffs-Respondents,

v.

DARKOWL, LLC, et al.,

       Defendants-Petitioners.

Civ. Action No. 24-10600

ATLAS DATA PRIVACY CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

THOMSON REUTERS CORPORATION, et al.,

       Defendants-Petitioners.

Civ. Action No. 24-04269

On Appeal from the United States District Court
For the District Court of New Jersey, Camden Division
The Honorable Harvey Bartle III

District Court Nos. 1:24-cv-04037(HB); 1:24-cv-04041(HB); 1:24-cv-04045(HB);
1:24-cv-04075(HB); 1:24-cv-04080(HB); 1:24-cv-04098(HB);
1:24-cv-04103(HB); 1:24-cv-04141(HB); 1:24-cv-04143(HB);
1:24-cv-04160(HB); 1:24-cv-04174(HB);
1:24-cv-04176(HB); 1:24-cv-04178(HB); 1:24-cv-04256(HB);
1:24-cv-04261(HB); 1:24-cv-04292(HB); 1:24-cv-04324(HB);
1:24-cv-04345(HB); 1:24-cv-04380(HB); 1:24-cv-04383(HB);
1:24-cv-04385(HB); 1:24-cv-04389(HB); 1:24-cv-04390(HB);
1:24-cv-04392(HB); 1:24-cv-04434(HB); 1:24-cv-04609(HB);
1:24-cv-04664(HB); 1:24-cv-04949(HB); 1:24-cv-05600(HB);
1:24-cv-05656(HB); 1:24-cv-05658(HB); 1:24-cv-05775(HB);
1:24-cv-07324(HB); 1:24-cv-08075(HB); 1:24-cv-08451(HB);
1:24-cv-10600(HB); and 1:24-04269 (HB)

## JOINT PETITION FOR LEAVE TO FILE APPEAL
## UNDER 28 U.S.C. § 1292(b)

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L.  Jonaitis
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227

*Attorneys for Petitioners-Defendants*
*RocketReach LLC (1:24-cv-04664),*
*Deluxe Corp. (1:24-cv-04080),*
*PropertyRadar Inc. (1:24-cv-05600),*
*and DM Group Inc. (1:24-cv-04075)*

Marcel S. Pratt
Michael Berry
BALLARD SPAHR LLP
1735 Market Street, Fl. 51
Philadelphia, PA  19103-7599

*Attorneys for Petitioners-Defendants*
*Thomson Reuters Entities (1:24-cv-04269)*

Robert T. Szyba
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY  10018

*Attorneys for Petitioners-Defendants
We Inform, LLC (1:24-cv-04037),
Infomatics, LLC (1:24-cv-04041), and
The People Searchers, LLC (1:24-cv-
04045)*

Clair E. Wischusen
MANSUKHANI LLP
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ  070369

*Attorneys for Petitioners-Defendants
Quantarium Alliance, LLC and
Quantarium Group, LLC (1:24-cv-04098)*

Derek L. Shaffer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington D.C., 20005

-and-

Anthony J. Staltari
51 Madison Avenue, 22nd Floor
New York, New York 10010

-and-

Viola Trebicka (application for
admission forthcoming)
John Wall Baumann (application for
admission forthcoming)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

-and-

Owen B. Smitherman (application for
admission forthcoming)
300 West 6th St, Suite 2010
Austin, TX 78701

*Attorneys for Petitioners-Defendants
Yardi Systems, Inc. (1:24-cv-04103)*

Eric H. Lubin
LOMURRO, MUNSON, LLC
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ  07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Petitioner-Defendants
Digital Safety Products, LLC (1:24-cv-
04141), Civil Data Research (3:24-cv-
04143), and Scalable Commerce &
National Data Analytics (2:24-cv-04160)*

Misha Isaak
James Kilcup
Alexandria Giza
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR  97205
(503) 294-9460
misha.isaak@stoel.com
james.kilcup@stoel.com
alexandra.giza@stoel.com

-and –

Ryan J. Cooper
COOPER, LLC – COUNSELORS AT
LAW
108 N. Union Ave., Suite 4
Cranford, NJ  07016
ryan@cooperllc.com

*Attorneys for Petitioners-Defendants
Labels & Lists, Inc. (1:24-cv-04174)*

Jill A. Guldin
PIERSON FERDINAND LLP
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA  19103

-and –

Jason A. Spak (admission pending)
FISHERBROYLES LLP
6360 Broad Street #5262
Pittsburgh, PA  15206

*Attorneys for Petitioners-Defendants
Innovis (1:24-cv-24-04176)*

John E. MacDonald
Constancy, Brooks, Smith & Prophete,
LLP
3120 Princeton Pike, Suite 301
Lawrenceville, NJ  08648

*Attorneys for Petitioners-Defendants
Accurate Append, Inc. (1:24-cv-
04178), and Restoration of America,
Inc. (1:24-cv-04324)*

Samantha L. Southall
BUCHANAN INGERSOLL & ROONEY
PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

*Attorneys for Petitioners-Defendants
Zillow Inc. and Zillow Group, Inc.
(1:24-cv-04256)*

Frederick W. Alworth
Kevin R. Reich
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102-5310

*Attorneys for Petitioners-Defendants
Equimine, Inc. (1:24-cv-04261)*

Richard J.L. Lomuscio (*3rd Cir. App.
Pending)*
STINSON LLP
100 Wall Street, Suite 201
New York, New York 10005

*Attorneys for Petitioners-Defendants
i360, LLC (1:24-cv-04345)*

Jennifer Fiorica Delgado
Markiana J. Julceus
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ  07068

*Attorneys for Petitioners-Defendants
Accuzip, Inc. (1:24-cv-04383)*

Michael P. O'Mullan
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962

*Attorneys for Petitioner-Defendant Melissa
Data Corporation (1:24-cv-04292)*

David E. Sellinger
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
Aaron.VanNosrand@gtlaw.com

*Attorneys for Petitioners-Defendants
GoHunt, LLC (1:24-cv-04380)*

Thomas C. Regan
Matthew S. AhKao
LEWIS BRISBOIS BISGAARD &
SMITH, LLP
One Riverfront Plaza, Suite 800
Newark, NJ  07102

*Attorneys for Petitioners-Defendants
Synaptix Technology, LLC (1:24-cv-04385)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

*Attorneys for Petitioners-Defendants
Joy Rockwell Enterprises, Inc. d/b/a
PostcardMania PCM LLC ( 1:24-cv-
04389)*

Alan Charles Raul
Jacquelyn Fradette
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005

-and –

Tyler J. Domino
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

-and –

Nicholas K. Lagemann
MCELROY, DEUTSCH,
MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962

*Attorneys for Petitioners-Defendants
MyHeritage, Ltd. (1:24-cv-04392)*

J. Timothy McDonald
THOMPSON HINE LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia  30326

*Attorneys for Petitioners-Defendant
Fortnoff Financial, LLC (1:24-cv-04390)*

H. Mark Stichel
RKW, LLC
10075 Red Run Blvd., 4th Floor
Owings Mills, MD  21117

*Attorneys for Petitioner-Defendant
E-Merges.com, Inc. (1:24-cv-04434)*

Clair E. Wischusen
GORDON REES SCULLY
MANSUKHANI LLP
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 07039

*Attorneys for Petitioner-Defendant
Nuwber, Inc. (1:24-cv-04609)*

Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
BLANK ROME LLP
300 Carnegie Center, Suite 220
Princeton, NJ 08540

*Attorneys for Petitioner-Defendant Belles
Camp Communications, Inc. (1:24-cv-
04949)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

*Attorneys for Petitioner-Defendant
The Alesco Group, L.L.C. (1:24-cv-
05656)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

*Attorneys for Petitioner-Defendant
Searchbug, Inc. (1:24-cv-05658)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

*Attorneys for Petitioner-Defendant
Amerilist, Inc. (1:24-cv-05775)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

*Attorneys for Petitioner-Defendant
US Data Corporation (1:24-cv-07324)*

Kenneth D. Friedman
MANATT, PHELPS & PHILLIPS,
LLP
7 Times Square
New York, NY  10036

-and -

Kareem A. Salem (admission pending)
Brandon Reilly (admission pending)
662 Encinitas Blvd., Suite 216
Encinitas, CA  92024

*Attorneys for Petitioner-Defendant
Smarty, LLC (1:24-cv-08075)*

Kelly M. Purcaro
Kory Ann Ferro
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102

-and

Kiran Raj (admission pending)
Ryan Scott Farber (admission pending)
RAJ FERBER PLLC
1629 K Street NW, Suite 300
Washington, DC  20006

*Attorneys for Petitioner-Defendant
Darkowl, LLC (1:24-cv-10600)*

Jared K. Levy
Jacqueline Murphy
Christopher J. Seusing
Sean V. Patel
WOOD, SMITH, HENNING & BERMAN
LLP
400 Connell Drive, Suite 1100
Berkeley Heights, NJ  07922

*Attorneys for Petitioner-Defendant
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc., College
Bound Selection Services, Deepsync Labs,
Homedata, and Student Research Group
(1:24-cv-08451)*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................ iii

SUMMARY OF PETITION ..................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................2

I.     New Jersey's Daniel's Law ..................................................................2

II.    The Lawsuits And Petitioners' Motion To Dismiss...............................5

III.   The District Court's Order Denying The Motion To Dismiss .......................6

QUESTION PRESENTED .................................................................8

ARGUMENT .................................................................................8

I.     Whether Daniel's Law Facially Abridges The First Amendment
       Presents A Controlling Question Of Law...........................................9

II.    There Are Substantial Grounds For Difference Of Opinion .........................9

       A.     There are substantial grounds for difference of opinion
              about the correct level of constitutional scrutiny ...............................10

       B.     There are substantial grounds for disagreement with the
              district court's constitutional analysis of the Law's lack of
              any mens rea requirement ..................................................18

III.   An Immediate Appeal Would Materially Advance The Ultimate
       Termination Of These Cases .........................................................22

CONCLUSION .............................................................................23

CERTIFICATIONS .......................................................................40

Addendum 1 – List of Petitioners ........................................................ A-1

Exhibit A – Order Denying Motion to Dismiss (Nov. 26, 2024)

Exhibit B – Memorandum Opinion (Nov. 26, 2024)

Exhibit C – Order Pursuant to 28 U.S.C. § 1292(b) (Dec. 2, 2024)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American-Arab Anti-Discrimination Committee v. City of Dearborn*,
    418 F.3d 600 (6th Cir. 2005) ................................................................20

*APCC Services, Inc. v. Sprint Communications Co.*,
    297 F. Supp. 2d 90 (D.D.C. 2003)......................................................23

*Brayshaw v. City of Tallahassee, Florida*,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010) ........................................13, 17

*Bush v. Adams*,
    629 F. Supp. 2d 468 (E.D. Pa. 2009)....................................................9

*Camp Hill Borough Republican Association v. Borough of Camp Hill*,
    101 F.4th 266 (3d Cir. 2024) .............................................................11

*In re Cement Antitrust Litigation (MDL No. 296)*,
    673 F.2d 1020 (9th Cir. 1981) ...........................................................22

*In re Chocolate Confectionary Antitrust Litigation*,
    607 F. Supp. 2d 701 (M.D. Pa. 2009)................................................22

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) .............................................................10

*Counterman v. Colorado*,
    600 U.S. 66 (2023)................................................................18, 21, 22

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975)......................................................................15, 17

*Dahlstrom v. Sun-Times Media, LLC*,
    39 F. Supp. 3d 998 (N.D. Ill. 2014) ...................................................10

*Doe v. Schorn*,
    711 F. Supp. 3d 375 (E.D. Pa. 2024)..................................................12

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989)................................................................6, 11, 16

iii

JA024

*Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*,
   664 F.2d 377 (3d Cir. 1981) ..................................................8

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ......................................12, 14

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) ..............................................8, 9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave
   Achille Lauro in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ..................................................23

*Knipe v. SmithKline Beecham*,
   583 F. Supp. 2d 553 (E.D. Pa. 2008) ..................................9

*In re Miedzianowski*,
   735 F.3d 383 (6th Cir. 2013) ..............................................10

*Mohawk Industries, Inc. v. Carpenter*,
   558 U.S. 100 (2009) ..............................................................8

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................18, 21

*Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*,
   830 F. Supp. 1549 (D.N.J. 1993) ........................................22

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017) ................................17

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................10, 11

*Romaine v. Kallinger*,
   537 A.2d 284 (N.J. 1988) ..........................................14, 15, 21

*Ross v. Blake*,
   578 U.S. 632 (2015) ..............................................................20

*Schrader v. District Attorney of York County*,
   74 F.4th 120 (3d Cir. 2023) ..........................................11, 12, 16

iv

*Sheehan v. Gregoire*,
    272 F. Supp. 2d 1135 (W.D. Wash. 2003) ...................................................13, 17

*Simon v. United States*,
    341 F.3d 193 (3d Cir. 2003) ................................................................................8

*Smith v. Daily Mail Publishing Co.*,
    443 U.S. 97 (1979)......................................................................................6, 16

*State v. Pomianek*,
    110 A.3d 841 (N.J. 2014) .................................................................................19

*Video Software Dealers Association v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ............................................................................20

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................*passim*

N.J.S.A. 47:1B-2 ...................................................................................................4

N.J.S.A. 47:1B-3 ...................................................................................................5

N.J.S.A. 56:8-166.1 (2021) ...........................................................................2, 4, 20

N.J.S.A. 56:8-166.1 ...................................................................................... *passim*

N.J.S.A. 56:8-166.3............................................................................................2

**Other Authorities**

U.S. Const. amend. I ...................................................................................*passim*

Restatement (Second) of Torts § 652D...........................................................15

v

## SUMMARY OF PETITION

This Petition presents a First Amendment question of first impression and deep significance: whether a New Jersey statute known as Daniel's Law is facially unconstitutional. That Law grants certain public officials the authority to bar private entities from disclosing their home addresses and unpublished phone numbers, or face liquidated damages and attorney's fees. It imposes that liability without any requirement that a defendant act with a culpable mental state.

The 37 cases covered by this Petition were commenced by a corporate assignee allegedly holding the right to assert claims of over 19,600 individuals. That corporation harnessed the Law's unique combination of speech-restrictive tools to bring hundreds of thousands of claims against Petitioners with the potential for hundreds of millions of dollars in liquidated damages.

Petitioners moved to dismiss on the ground that the Law facially violates the First Amendment. The district court agreed the Law is a content-based restriction on non-commercial speech with no built-in *mens rea* guardrails. Nevertheless, it denied Petitioners' motion, creating a blanket privacy exception to strict scrutiny that no other court has adopted and rewriting the statute to add a negligence requirement, the absence of which the court acknowledged would have invalidated the Law. Recognizing the novel and far-reaching issues at stake, the district court *sua sponte* certified its order for immediate appeal under 28 U.S.C. § 1292(b).

The threshold constitutional questions presented by the district court's order control the outcomes of dozens of cases involving hundreds of thousands of alleged violations, each subject to complex and costly discovery. Reversal of that order would end them. Even if the district court's order were not reversed, any ruling from this Court would provide essential guidance on issues critical to future litigation in these and other cases involving Daniel's Law, as well as similar laws being enacted around the country. Accordingly, Petitioners respectfully request the Court permit an immediate appeal from the district court's certified order.[1]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.  New Jersey's Daniel's Law

This case involves the constitutionality of New Jersey's Daniel's Law. N.J.S.A. 56:8-166.1. Enacted in response to the tragic murder of Judge Esther Salas's son Daniel, the Law seeks "to "enhance the safety and security" of judges, law enforcement officers, and other government officials. N.J.S.A. 56:8-166.3.

Since its enactment, Daniel's Law has been amended several times. *E.g.*, N.J.S.A. 56:8-166.1 (2021); N.J.S.A. 56:8-166.1 (2023). In its current form, the Law seeks to achieve its laudable objective by providing a mechanism for "any covered person" – defined to include judges, law enforcement officers, and certain other public officials, as well as immediate family members residing in the same

---

[1] Petitioners are listed in Addendum 1.

2

household – to "prohibit the disclosure of the[ir] home address or unpublished home telephone number." N.J.S.A. 56:8-166.1(a)(2), (d). The Law provides that upon receipt of "written notice" that a covered person "is seeking nondisclosure," a "person, business, or association shall not disclose or re-disclose on the Internet or otherwise make available" the covered person's information. N.J.S.A. 56:8-166.1(a)(1), (2).

The Law broadly defines "disclose" as "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer." N.J.S.A. 56:8-166.1(d). The definition also includes making information "available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." *Id.* Its restrictions are not limited to disclosures over the Internet; it bars *any* communication that "otherwise make[s] available" covered information. N.J.S.A. 56:8-166.1(a)(2). Although both the Plaintiffs and the New Jersey Attorney General have disavowed the Law's reach, this sweeping definition, on its face, applies to every conceivable transmission or transaction of covered information, even internal corporate communications.

Daniel's Law does not specify how a non-disclosure notice is to be made, other than that it be "written." N.J.S.A. 56:8-166.1(a)(2). Nor does it require, or provide any mechanism for, verification that the person seeking non-disclosure is a

"covered person." The Law only requires the notice to state that the person providing notice is "authorized" to do so. *Id.* And it demands compliance by the recipient "not later than 10 business days following receipt" of a notice, with no exceptions. N.J.S.A. 56:8-166.1(a)(1).

If the deadline is not met, "the covered person or the covered person's assignee" can "bring a civil action." N.J.S.A. 56:8-166.1(b). The Law provides that a "court shall award" "actual" damages "not less than" "$1,000 for each violation," which it calls "liquidated damages." N.J.S.A. 56:8-166.1(c). It also provides awards for attorney's fees and litigation costs, as well as "punitive damages upon proof of willful or reckless disregard of the law." *Id.*

Originally, the Law imposed damages only if "a reasonable person would believe that providing . . . information would expose another to harassment or risk of harm to life or property." N.J.S.A. 56:8-166.1(a) (2021). The New Jersey Legislature later amended the Law to remove that *mens rea* requirement.

New Jersey also allows covered persons to seek redaction of their addresses and phone numbers from some public records. N.J.S.A. 47:1B-2. That process requires requests to be made to the state's Office of Information Privacy, which has no deadline to review and approve the requests. *Id.* Upon approval, public agencies have 30 days to comply. *Id.* If they do not comply, there is no civil remedy. *Id.* The law also includes an array of exceptions that, even after approved

for redaction, allow government agencies to disclose covered persons' information – to other agencies, private actors, and in public records on the Internet.  N.J.S.A. 47:1B-3.

## II.    The Lawsuits And Petitioners' Motion To Dismiss

Beginning in February 2024, Atlas Data Privacy Corporation and several individuals filed approximately 150 nearly identical lawsuits in New Jersey state courts alleging violations of the newly amended Daniel's Law.  In each lawsuit, Atlas purports to be an assignee asserting claims of more than 19,000 covered persons.  Many of the lawsuits, including those involved in this Petition, were removed to federal court.

Following the district court's direction for how to sequence their constitutional arguments, Petitioners moved to dismiss solely on the ground that Daniel's Law is facially unconstitutional.  *See* Consolidated Motion to Dismiss, *Atlas Data Privacy Corp. v. Lightbox Parent L.P.* ("*Lightbox*"), No. 1:24-cv-04105-HB (D.N.J.) (ECF 20, 27-33).[2]  Petitioners argued that the Law violates the First Amendment because, *inter alia*, it is (1) a content-based restriction on speech that cannot satisfy strict scrutiny, and (2) a strict liability statute that regulates truthful

_____

[2] Following the procedure directed by the district court instructions, each Petitioner joined the consolidated motion filed in *Lightbox*.  *E.g.*, Ltr. Joining in Mot. to Dismiss, *Atlas Data Privacy Corp. v. Searchbug, Inc.* ("*Searchbug*"), No. 1:24-cv-5658-HB (D.N.J.) (ECF 13).

speech with no culpability standard.

Plaintiffs and the New Jersey Attorney General opposed the motion arguing, *inter alia*, Daniel's Law (1) regulates "data," not speech; and (2) is content neutral, regulates commercial speech, and/or is a privacy statute that satisfies a lower level of scrutiny. *See id.* ECF 48, 49.[3]

**III.    The District Court's Order Denying The Motion To Dismiss**

The district court denied the motion to dismiss. Order, *Searchbug* (ECF 26) (attached as Exhibit A). The court concluded that Daniel's Law is a content-based restriction on non-commercial speech, but nevertheless held it was not subject to strict scrutiny. *See* Memorandum Opinion ("Mem.") at 23, 27-28, *Searchbug* (ECF 25) (attached as Exhibit B). The court held the Law was exempt from strict scrutiny because it protects covered persons' "right to privacy," not just their safety. *Id.* at 25-27. The district court ruled "privacy laws" are assessed under a different test set forth in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). Mem. at 27-28. According to the district court, that test considers: (1) whether the information at issue "is lawfully obtained and is of public significance"; (2) whether "the law in question serves 'a need to further a state interest of the highest order'"; and (3) "whether the statute serves 'the

---

[3] Subsequently, the district court remanded more than 30 cases in which defendants had joined the consolidated motion to dismiss. That remand order is the subject of pending petitions for review. *See* Nos. 24-8044, 24-8045 (3d Cir.).

significant interests' the state purports to advance and is not underinclusive." *Id.* at 27-28.  The district court held Daniel's Law passed this test, reasoning that "the distinctions made in Daniel's Law are sound – not arbitrary or discriminatory," and that, although the Legislature could have made different policy choices, "the perfect is not the enemy of the good." *Id.* at 28-32.

The district court recognized that the Law's text does not include a *mens rea* requirement and observed that if the Law imposed strict liability, it would be unconstitutional.  *Id.* at 37.  To save the Law, the court read a "negligence" standard into it.  *Id.* at 38-39.  The court held liability can be imposed "only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired." *Id.* at 39.

On December 2, the district court *sua sponte* certified its order for immediate appeal.  Order, *Searchbug* (ECF 27) (attached as Exhibit C).

Petitioners now seek this Court's permission to pursue an immediate appeal of the threshold constitutional issues presented by the district court's decision.  To be clear, Petitioners do not question the noble purpose that inspired Daniel's Law.  Rather, they seek only to challenge whether the amended version of the Law's provisions imposing civil liability on private entities is facially unconstitutional.

## QUESTION PRESENTED

Whether Daniel's Law facially violates the First Amendment.

## ARGUMENT

As the district court correctly recognized, the First Amendment questions encompassed by its order merit interlocutory appeal. Under § 1292(b), immediate appeal is warranted when (1) an interlocutory order presents "a controlling question of law" that (2) involves "substantial ground[s] for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). Section 1292(b) enables the "early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation," *Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981), and avoid "possibly wasted trial time and litigation expense," *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974) (en banc). As the Supreme Court has observed, the "preconditions for § 1292(b) review . . . are most likely to be satisfied" when a case "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). That is the case here. Indeed, the district court *sua sponte* held that all three requirements of § 1292 are satisfied.

## I.    Whether Daniel's Law Facially Abridges The First Amendment Presents A Controlling Question Of Law.

A controlling question of law is, "at the very least," one "which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. It also includes legal questions that are "serious to the conduct of the litigation, either practically or legally." *Id.*

The question presented here is purely legal, requires no factual record, and is controlling. If Daniel's Law is facially unconstitutional, the district court committed "reversible error," and these 37 cases would be dismissed. Even if the cases continue after interlocutory review, the Court's guidance on the constitutional issues addressed by the district court, including its newly created "negligence" standard, will be essential. Without immediate review, these cases will proceed under standards that, if erroneous, will result in substantial time and resources being expended on litigation that would be moot. Resolution of those issues now would materially impact the litigation, both practically and legally.

## II.    There Are Substantial Grounds For Difference Of Opinion.

Substantial grounds for difference of opinion exist when an "order involves 'one or more difficult and pivotal questions of law not settled by controlling authority,'" *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (citation omitted), or "when there is genuine doubt or conflicting precedent as to the correct legal standard," *Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D.

Pa. 2009).  Courts also find substantial grounds when "novel and difficult questions of first impression are presented."  *E.g.*, *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quotation omitted); *accord In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

This Petition presents a question of first impression.  Before now, no federal court has decided the facial constitutionality of Daniel's Law.  Indeed, as the district court observed, the Supreme Court "has never ruled on a case like the ones now before this court."  Mem. at 31.  The question in this Petition carries profound importance:  whether Daniel's Law unconstitutionally restricts protected speech, including through severe penalties.  *See, e.g.*, *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) ("Because First Amendment litigation chills speech, prompt resolution of this case [through a § 1292(b) appeal] would provide the added benefit of minimizing any such chilling effect.").  And, the district court itself recognized substantial ground for disagreement by *sua sponte* certifying its order for immediate appeal.

## A.    There are substantial grounds for difference of opinion about the correct level of constitutional scrutiny.

The Supreme Court has long instructed that content-based restrictions on speech are "presumptively unconstitutional."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  That presumption only can be overcome by satisfying "strict scrutiny," which requires that a law's restrictions be "narrowly tailored to serve

compelling state interests." *Id.* In other words, to survive strict scrutiny, a law must "curtail speech as little as possible." *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 271 (3d Cir. 2024).

The district court ruled that, although Daniel's Law is a content-based restriction on speech, (1) strict scrutiny does not apply to content-based "privacy laws"; (2) Daniel's Law is a privacy law subject only to the test set forth in *Florida Star* and *Daily Mail*; and (3) Daniel's Law is constitutional under its formulation of that test. There is substantial ground for difference of opinion on each issue.

***First***, this Court recently considered – but left undecided – the level of First Amendment scrutiny required for content-based privacy regulations. In *Schrader v. District Attorney of York County*, 74 F.4th 120 (3d Cir. 2023), the plaintiff sought to enjoin the government from prosecuting her for disclosing information protected under Pennsylvania's Child Protective Services Law. *Id.* at 123-24. The plaintiff argued the law was "unconstitutional both on its face and as applied to her." *Id.* at 124. In considering those arguments, the Court acknowledged that "picking the right level of scrutiny is tricky," as "two lines of precedent apply": (1) when a "restriction on speech is content-based" – as this Court held that law to be – courts "apply strict scrutiny"; and (2) when the government seeks to sanction "publishing lawfully obtained, truthful information," courts apply the *Daily Mail* test. *Id.* at 126. The Court, ruling only on the plaintiff's as-applied challenge, held

that any prosecution of her would violate the First Amendment under either test. *Id.* It thus declined "to reconcile these two lines of precedent." *Id.*

Courts around the country have applied strict scrutiny to content-based speech restrictions that implicate privacy concerns. For example, in *IMDb.com Inc. v. Becerra*, the Ninth Circuit applied strict scrutiny to a content-based restriction on disclosing people's ages and dates of birth. 962 F.3d 1111, 1125-27 (9th Cir. 2020). The court observed that "the First Amendment and an individual's right to privacy present competing concerns," *id.* at 1124, but explained that only very limited categories of speech, like true threats and obscenity, evade "the normal prohibition on content-based restrictions," *id.* at 1121, 1124 (quoting *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 767 (2018)). The court recognized that "privacy" was not one of those categories: "neither this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny." *Id.* at 1123. Likewise, earlier this year, a court in the Eastern District of Pennsylvania applied strict scrutiny in an as-applied challenge to a law that "protect[s] the privacy" of teachers and students. *Doe v. Schorn*, 711 F. Supp. 3d 375, 405-06 (E.D. Pa. 2024).

Here, in contrast to those cases, the district court held that strict scrutiny could *not* apply. Yet, other district courts that have considered the facial constitutionality of laws restricting disclosure of law enforcement officers'

12

addresses and phone numbers have applied both strict scrutiny and the *Daily Mail* test. *See Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1144-48 (W.D. Wash. 2003) (invalidating civil statute prohibiting disclosure of law enforcement officers' addresses and phone numbers); *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1249-50 (N.D. Fla. 2010) (invalidating similar criminal statute).

By declining to apply strict scrutiny and applying only the *Daily Mail* test, the district court relieved the Plaintiffs of their burden to overcome the presumption of unconstitutionality attached to the Law's content-based restriction, required the Petitioners to show the speech at issue is a matter of public concern, and avoided any analysis of whether Daniel's Law, as currently drafted, is overinclusive. Thus, the district court did not closely scrutinize either the Law's sweeping definition of "disclose," which on its face prohibits everything from "disseminating" voters' addresses to advocacy groups to a company "making available" addresses in an internal "database," N.J.S.A. 56:8-166.1(d), or the Law's new assignment provision, which incentivizes the monetization of thousands of claims, regardless of whether the alleged disclosures pose any reasonable threat to an individual covered person's safety or privacy.

**Second**, the district court selected which test to apply based on its characterization of Daniel's Law as "involving the right to privacy." Mem. at 27. That characterization was based on the district court's view that Daniel's Law

is analogous to the law governing access to public records and privacy torts. *Id.* at

24-25, 30-31. Whether the court properly considered Daniel's Law a "privacy

law" has significant constitutional implications for these cases, and there is

substantial ground for disagreement with the district court's analogy, even within

the very cases on which it relied.

For instance, the Freedom of Information Act cases cited by the district court

considered a person's privacy interest only in connection with requests from

private actors seeking information in the government's possession, not whether the

government can restrict private actors from publishing information they already

possess. *See* Mem. at 24-25, 30-31 (citing *Paul P. v. Farmer*, 227 F.3d 98, 101 (3d

Cir. 2000), and *U.S. DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S.

749, 764 (1989)). That is a very different question – a question at the heart of the

First Amendment's command that the government "shall make no law" abridging

freedom of speech. *See, e.g.*, *IMDb.com*, 962 F.3d at 1124 (FOIA case law

addressing whether "government must affirmatively disclose personally identifying

information" poses "different question entirely").

The tort law relied upon by the district court also shows substantial grounds

for disagreement. The district court cited a New Jersey Supreme Court case

holding that a plaintiff only has a claim for publication of private facts if the

information at issue is "actually private." *Romaine v. Kallinger*, 537 A.2d 284,

292 (N.J. 1988) (cited at Mem. at 25). Plaintiffs have not alleged that here. *See* Compl., *Searchbug* (ECF 1-1). To the contrary, the district court recognized that covered persons' addresses and phone numbers appear in "property records," "voter registration lists," and other public records, Mem. at 30, some of which are readily available online, and have even been made publicly available by individual plaintiffs on social media and in press releases.[4]

In stark contrast to Daniel's Law, the New Jersey case cited by the district court and hornbook tort law make plain that "there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record." RESTATEMENT (SECOND) OF TORTS § 652D cmt. b; *Romaine*, 537 A.2d at 292-93. Indeed, the availability of covered persons' information in public records raises significant constitutional issues about the propriety of imposing liability on people for disclosing that information, as reflected in another Supreme Court case upon which the district court relied. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (cited at Mem. at 26) ("the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection").

---

[4] *E.g.*, Property Record, County of Essex, N.J., https://press.essexregister.com/prodpress/clerk/ClerkHome.aspx?op=basic (last visited Dec. 11, 2024) (publicly searchable database with addresses); *Lightbox*, ECF 27-3 through 27-10.

***Third***, there is substantial ground for disagreement with the district court's application of the *Daily Mail* test.  The Supreme Court emphasized in *Daily Mail* that, to survive constitutional scrutiny, a "sanction for publishing lawfully obtained, truthful information" on a matter of public concern must serve "the *highest form* of state interest to sustain its validity."  443 U.S. at 101-02 (emphasis added).  The Court made clear that this level of scrutiny is the same as that required for prior restraints, which "have been accorded the *most* exacting scrutiny."  *Id.* at 102 (emphasis added).  Likewise, in *Florida Star*, the Supreme Court held that the government could only punish the publication of lawfully obtained truthful information if the punishment is "*narrowly tailored* to a state interest of the *highest order*."  491 U.S. at 541 (emphasis added).  This Court explained the test the same way in *Schrader*.  74 F.4th at 128.

The district court, however, considered only whether Daniel's Law serves "significant interests'" and "is not underinclusive" – not whether it was "narrowly tailored" to serve an "interest of the highest order."  *Compare, e.g.*, Mem. at 30-33 (concluding "[t]he perfect is not the enemy of the good"), *with Florida Star*, 491 U.S. at 534 (when "sensitive information is in the government's custody," it "almost always" has narrower means to prevent dissemination, including classifying or redacting it, and enacting "a damages remedy against the government" for disclosures).

Further, although the district court held that addresses and phone numbers of public officials are generally "not matters of public significance," Mem. at 28, other courts disagree, *see Brayshaw*, 709 F. Supp. 2d at 1249; *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1014 (E.D. Cal. 2017); *Sheehan*, 272 F. Supp. 2d at 1145. Moreover, Supreme Court precedent indicates that when the government provides information to the public, as it does here, that information is presumed to be in the public interest. *Cox Broad.*, 420 U.S. at 495 ("By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served."). And, just like the government's disclosure of covered information permitted under the Law, the many types of disclosures by private entities prohibited by the Law are "necessary for . . . society to function," Mem. at 31, whether those disclosures are "giv[ing]" customers' addresses to vendors or "provid[ing]" litigants' addresses for service of process. N.J.S.A. 56:8-166.1(d).

In sum, there is substantial ground for disagreement with each of the determinations made by the district court involving the applicable level of constitutional scrutiny.

**B.     There are substantial grounds for disagreement with the district court's constitutional analysis of the Law's lack of any *mens rea* requirement.**

Under long-standing Supreme Court jurisprudence, a speaker cannot be sanctioned without requiring some degree of fault.  *E.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 278-79 (1964) (state-of-mind requirements are "essential" to protect First Amendment freedoms).  That jurisprudence is based on the recognition that "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries."  *Counterman v. Colorado*, 600 U.S. 66, 75 (2023).  To prevent this chilling effect, the Supreme Court has repeatedly held that liability can be imposed for speech *only* upon "a showing of a culpable mental state."  *Id.*

The district court acknowledged that the text of Daniel's Law does not include a *mens rea* requirement and recognized the Law would be unconstitutional if it imposed strict liability.  Mem. at 35.  To save the statute, the court construed it to contain a "negligence" requirement:  the recipient of a written notice can only be liable if it "unreasonably disclosed or made available" information "after the statutory deadline had expired."  *Id.* at 39.  There are substantial grounds for disagreement with this approach – particularly given that the judiciary's role is to interpret state statutes, not rewrite them.

***First***, it is questionable whether the district court correctly "predict[ed]" that the New Jersey Supreme Court would interpret Daniel's Law to "conform to the Constitution" by writing a *mens rea* standard into it. *Id.* at 36. Rather, the New Jersey Supreme Court likely would not construe the Law in this manner and instead would invalidate it. In *State v. Pomianek*, that court instructed that constitutional "avoidance comes into play when a statute is susceptible to two reasonable interpretations, one constitutional and one not." 110 A.3d 841, 855 (N.J. 2014). The New Jersey Supreme Court then held it could not interpret a section of a statute that was silent on *mens rea* to contain such a requirement: "The Legislature pointedly decided not to include such an element in" the subsection of the statute at issue, which was "evident by the presence of *mens rea* elements" in two other subsections. *Id.* The court thus held the lower court "erred by rewriting the statute to impose a *mens rea* element," characterizing that decision as "a judicial transplant" rather than "minor judicial surgery to save a statutory provision." *Id.*

The decision below undertook just the kind of "judicial transplant" *Pomianek* forbade. As in that case, Daniel's Law requires "willful or reckless disregard" to assess punitive damages, but the subsection imposing liability does not include any *mens rea* requirement. N.J.S.A. 56:8-166.1(c)(1), (2). The legislative history shows the New Jersey Legislature intended for Daniel's Law to

impose liability without a *mens rea* requirement.  Originally, damages could be imposed only if "a reasonable person would believe that providing . . . information would expose another to harassment or risk of harm to life or property."  N.J.S.A. 56:8-166.1(a) (2021).  But the Legislature later removed that language.  It is well-settled that courts must "presume" the Legislature "intend[ed]" this amendment "to have real and substantial effect."  *Ross v. Blake*, 578 U.S. 632, 633 (2015).

The ruling below also stands in contrast to federal appellate court decisions not reading *mens rea* requirements into laws restricting speech to save them from facial invalidation.  *See Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690-91 (8th Cir. 1992) (declaring unconstitutional statute imposing strict liability for renting or selling violent videos to minors); *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 613 (6th Cir. 2005) (holding statute facially unconstitutional where it imposed strict liability for participating in a march without a permit).

**Second**, even if the district court properly concluded that a *mens rea* standard could be read into Daniel's Law, there is substantial ground for disagreement about the standard it created.  The district court adopted a "negligence" standard, which it said was based on the standard required for "the unreasonable publication of private facts."  Mem. at 38-39 (quoting *Romaine*, 537 A.2d at 291-92).  The public disclosure tort's "unreasonableness" standard,

however, considers whether "the matters revealed were actually private" and whether "dissemination of such facts would be offensive to a reasonable person." *Romaine*, 537 A.2d at 292. The district court's "unreasonableness" test diverges from that fault standard, as it is not tied to the harm Daniel's Law seeks to remedy, whether that harm is the security risk posed to the covered person or the loss of privacy in the person's address or phone number. Instead, the district court's test is tied to the defendant's ability to take down information within the ten-day period. Mem. at 38 (offering fire, hurricane, and computer failure as exculpatory examples).

This difference raises constitutional concerns. The Supreme Court has repeatedly held that for speech to be actionable under the First Amendment, the *mens rea* must be tailored to the harm the speech restriction seeks to prevent. For example, the tort of defamation remedies reputational harm caused by a material falsehood. Thus, when a public official brings a claim for defamation, the Supreme Court requires a showing that the defendant either knew of, or recklessly disregarded, a statement's falsity. *Sullivan*, 376 U.S. at 280. Likewise, laws punishing true threats remedy speech placing a person in fear that the speaker plans to "commit an act of unlawful violence." *Counterman*, 600 U.S. at 74. Accordingly, the Supreme Court requires a showing that the defendant "consciously disregarded a substantial risk that his communications would be

viewed as threatening violence." *Id.* at 69. Here, in derogation of this precedent, the district court adopted a standard that is not tethered to any harm the speech restrictions imposed by Daniel's Law seek to prevent.

### III.    An Immediate Appeal Would Materially Advance The Ultimate Termination Of These Cases.

An appeal materially advances the termination of litigation when it would "eliminate the need for a trial," "foreclos[e] complex issues," or "enable the parties to complete discovery more quickly or at less expense." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707 (M.D. Pa. 2009). This third criterion is "closely tied" to the first; both are satisfied when an interlocutory appeal speeds disposition of a case. *Pub. Interest Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1557 (D.N.J. 1993) (citation omitted).

If the Court reverses, these cases will come to an end. In that situation, delaying appellate review until after final judgment would squander private and judicial resources on sprawling, complex litigation that will have been unnecessary. *Cf. In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (Section 1292(b) intended to avoid "protracted and expensive litigation").

Even if the Court rules against Petitioners' facial challenge after permitting interlocutory appeal, that decision would provide guidance that would sharpen,

streamline, and expedite resolution of Petitioners' as-applied challenges and other disputed issues that will shape the course of the litigation.

An immediate appeal might also aid the resolution of the more than 100 similar cases pending in New Jersey state courts. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal"); *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 100 (D.D.C. 2003) ("Resolution of this question would also assist many other courts in resolving similar disputes."). By deciding the merits of this appeal, the Court would provide persuasive guidance and thereby aid the disposition of this larger universe of cases and future cases likely to follow.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request the Court grant their Petition and permit interlocutory appeal.

Dated: December 12, 2024

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
angelo.stio@troutman.com
melissa.chuderewicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioners-Defendants
RocketReach LLC (1:24-cv-04664), Deluxe
Corp. (1:24-cv-04080), PropertyRadar Inc.
(1:24-cv-05600), and DM Group Inc. (1:24-
cv-04075)*

**BALLARD SPAHR LLP**

*s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry
1735 Market Street, Fl. 51
Philadelphia, PA  19103-7599
(215) 864-8500
prattm@ballardspahr.com
berrym@ballardspahr.com

*Attorneys for Petitioners-Defendants
Thomson Reuters Entities (1:24-cv-04269)*

**SEYFARTH SHAW LLP**

<u>*s/ Robert T. Szyba*</u>
Robert T. Szyba
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Petitioners-Defendants*
*We Inform, LLC (1:24-cv-04037),*
*Infomatics, LLC (1:24-cv-04041), and The*
*People Searchers, LLC (1:24-cv-04045)*

**MANSUKHANI LLP**

<u>*s/ Clair E. Wischusen*</u>
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Petitioners-Defendants*
*Quantarium Alliance, LLC and Quantarium*
*Group, LLC (1:24-cv-04098)*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**

<u>*/s/ Derek L. Shaffer*</u>
Derek L. Shaffer
1300 I Street NW, Suite 900
Washington D.C., 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

25

Anthony J. Staltari
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
anthonystaltari@quinnemanuel.com

-and-

Viola Trebicka (application for admission
forthcoming)
John Wall Baumann (application for
admission forthcoming)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
jackbaumann@quinnemanuel.com

-and-

Owen B. Smitherman (application for
admission forthcoming)
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Petitioner-Defendant
Yardi Systems, Inc. (1:24-cv-04103)*

**LOMURRO, MUNSON, LLC**

*s/ Eric H. Lubin*
Eric H. Lubin
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ  07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Petitioner-Defendants
Digital Safety Products, LLC (1:24-cv-
04141), Civil Data Research (3:24-cv-
04143), and Scalable Commerce & National
Data Analytics (2:24-cv-04160)*

**STOEL RIVES LLP**

*s/ Misha Isaak*
Misha Isaak
James Kilcup
Alexandria Giza
760 SW Ninth Ave., Suite 3000
Portland, OR  97205
(503) 294-9460
misha.isaak@stoel.com
james.kilcup@stoel.com
alexandria.giza@stoel.com

-and –

**COOPER, LLC–COUNSELORS AT
LAW**
Ryan J. Cooper
108 N. Union Ave., Suite 4
Cranford, NJ  07016
ryan@cooperllc.com

*Attorneys for Petitioners-Defendants
Labels & Lists, Inc. (1:24-cv-04174)*

27

**PIERSON FERDINAND LLP**

*s/ Jill A. Guldin*
Jill A. Guldin
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA 19103
(856) 896-4096
jill.guldin@pierferd.com

-and –

**FISHERBROYLES LLP**

Jason A. Spak (admission pending)
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Petitioners-Defendants*
*Innovis (1:24-cv-24-04176)*

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ John E. MacDonald*
John E. MacDonald
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Petitioners-Defendants*
*Accurate Append, Inc. (1:24-cv-04178), and*
*Restoration of America, Inc. (1:24-cv-04324)*

**BUCHANAN INGERSOLL & ROONEY PC**

*s/ Samantha L. Southall*
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3880
samantha.southall@bipc.com

*Attorneys for Petitioners-Defendants Zillow Inc. and Zillow Group, Inc. (1:24-cv-04256)*

**GIBBONS P.C.**

*s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Petitioners-Defendants Equimine, Inc. (1:24-cv-04261)*

**RIKER DANZIG LLP**

*s/ Michael P. O'Mullan*
Michael P. O'Mullan
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962
(973) 451-8477
momullan@riker.com

*Attorneys for Petitioner-Defendant*
*Melissa Data Corporation (1:24-cv-04292)*

**STINSON LLP**

*s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio (*3rd Cir. App.*
*Pending)*
100 Wall Street, Suite 201
New York, New York 10005
646-883-7471
richard.lomuscio@stinson.com

*Attorneys for Petitioners-Defendants*
*i360, LLC (1:24-cv-04345)*

**GREENBERG TRAURIG, LLP**

*s/ David E. Sellinger*
David E. Sellinger
Aaron Van Nostrand
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
Aaron.VanNosrand@gtlaw.com

*Attorneys for Petitioners-Defendants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC and GoHunt Management*
*Holdings II, LLC (1:24-cv-04380)*

**LOWENSTEIN SANDLER LLP**

*s/ Jennifer Fiorica Delgado*
Jennifer Fiorica Delgado
Markiana J. Julceus
One Lowenstein Drive
Roseland, NJ  07068
(646) 414-6962
jdelgado@lowenstein.com
mjulceus@lowenstein.com

*Attorneys for Petitioners-Defendants*
*Accuzip, Inc. (1:24-cv-04383)*

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*s/ Thomas C. Regan*
Thomas C. Regan
Matthew S. AhKao
One Riverfront Plaza, Suite 800
Newark, NJ  07102
(973) 577-6260
Thomas.Regan@lewisbrisbois.com
Matthew.AhKao@lewisbrisbois.com


*Attorneys for Petitioners-Defendants*
*Synaptix Technology, LLC (1:24-cv-04385)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com


*Attorneys for Petitioners-Defendants*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC ( 1:24-cv-04389)*

**THOMPSON HINE LLP**

_s/ J. Timothy McDonald_
J. Timothy McDonald
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia  30326
(404) 541-2906
Tim.McDonald@thompsonhine.com

_Attorneys for Petitioners-Defendant_
_Fortnoff Financial, LLC (1:24-cv-04390)_

**SIDLEY AUSTIN LLP**

_s/ Alan Charles Raul_
Alan Charles Raul
Jacquelyn Fradette
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

-and –

Tyler J. Domino
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
tdomino@sidley.com

-and –

**MCELROY, DEUTSCH, MULVANEY,**
**& CARPENTER, LLP**

Nicholas K. Lagemann
1300 Mount Kemble Avenue
Morristown, NJ 07962

33

(973) 425-8210
NLagemann@mdmc-law.com

*Attorneys for Petitioners-Defendants*
*MyHeritage, Ltd. (1:24-cv-04392)*

**RKW, LLC**

*s/ H. Mark Stichel*
H. Mark Stichel
10075 Red Run Blvd., 4th Floor
Owings Mills, MD  21117
(443) 379-8987
RKWlawgroup.com

*Attorneys for Petitioner-Defendant*
*E-Merges.com, Inc. (1:24-cv-04434)*

**GORDON REES SCULLY**
**MANSUKHANI LLP**

*s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Petitioner-Defendant Nuwber,*
*Inc. (1:24-cv-04609)*

34

**BLANK ROME LLP**

*s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-7700
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Petitioner-Defendant Belles Camp Communications, Inc. (1:24-cv-04949)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Petitioner-Defendant The Alesco Group, L.L.C. (1:24-cv-05656)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Petitioner-Defendant*
*Searchbug, Inc. (1:24-cv-05658)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Petitioner-Defendant*
*Amerilist, Inc. (1:24-cv-05775)*

36

**GREENSPOON MARDER**

_s/ Kelly M. Purcaro_
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

_Attorneys for Petitioner-Defendant_
_US Data Corporation (1:24-cv-07324)_

**MANATT, PHELPS & PHILLIPS, LLP**

_s/ Kenneth D. Friedman_
Kenneth D. Friedman
7 Times Square
New York, NY  10036
(212) 790-4500
kfriedman@manatt.com

-and -

Kareem A. Salem (admission pending)
Brandon Reilly (admission pending)
662 Encinitas Blvd., Suite 216
Encinitas, CA  92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

_Attorneys for Petitioner-Defendant_
_Smarty, LLC (1:24-cv-08075)_

**WOOD, SMITH, HENNING & BERMAN LLP**

*s/ Jared K. Levy*
Jared K. Levy
Jacqueline Murphy
Christopher J. Seusing
Sean V. Patel
400 Connell Drive, Suite 1100
Berkeley Heights, NJ  07922
(973) 265-9901
jlevy@wshblaw.com
jmurphy@wshblaw.com
cseusing@wshblaw.com
spatel@wshblaw.com

*Attorneys for Petitioner-Defendant
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc., College
Bound Selection Services, Deepsync Labs,
Homedata, and Student Research Group
(1:24-cv-08451)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and

**RAJ FERBER PLLC**

Kiran Raj (admission pending)
Ryan Scott Farber (admission pending)
1629 K Street NW, Suite 300
Washington, DC  20006
(202) 827-9785
kiran@rajferber.com
scott@raiferber.com

*Attorneys for Petitioner-Defendant*
*Darkowl, LLC (1:24-cv-10600)*

## CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because this petition contains 5,186 words, excluding the part of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(a)(7)(B)(iii).

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.     I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar of this.

4.     I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and that electronic versions of the brief filed on ECF were virus checked using Windows Defender Advanced Threat Protection Antivirus, Version 1.421.690.0 (last update 12/8/2024 at 11:12 PM EST) and no virus was detected.

Dated: December 12, 2024                    _/s/ Angelo A. Stio III_____

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 12, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

Dated:  December 12, 2024                    /s/ Angelo A. Stio

**ADDENDUM 1**
**TO JOINT PETITION FOR LEAVE TO FILE APPEAL**

<u>**LIST OF PETITIONERS-DEFENDANTS**</u>

| | <u>Case Name and Civil Action No.</u> | <u>Petitioners-Defendants</u> |
|---|---|---|
| 1. | *Atlas Data Privacy Corp., et al v. We Inform, LLC, et al.* Civil Action No. 1:24-cv-4037 | We Inform, LLC |
| 2. | *Atlas Data Privacy Corp. et al. v. Infomatics, LLC, et al.* Civil Action No. 1:24-cv-4041 | Infomatics, LLC |
| 3. | *Atlas Data Privacy Corp., et al v. The People Searchers, LLC, et al.* Civil Action No. 1:24-cv-4045 | The People Searchers, LLC |
| 4. | *Atlas Data Privacy Corp., et al v. DM Group, Inc., et al.* Civil Action No. 1:24-cv-04075 | DM Group, Inc. |
| 5. | *Atlas Data Privacy Corp., et al v. Deluxe Corporation, et al.* Civil Action No. 1:24-cv-4080 | Deluxe Corporation |
| 6. | *Atlas Data Privacy Corp., et al v. Quantarium Alliance, LLC, et al.* Civil Action No. 1:24-cv-4098 | Quantarium Alliance, LLC Quantarium Group, LLC |
| 7. | *Atlas Data Privacy Corp., et al v. Yardi Systems, Inc., et al.* Civil Action No. 1:24-cv-4103 | Yardi Systems, Inc. |
| 8. | *Atlas Data Privacy Corp., et al v. Digital Safety Products, LLC, et al.* Civil Action No. 1:24-cv-4141 | Digital Safety Products, LLC |
| 9. | *Atlas Data Privacy Corp., et al v. Civil Data Research* Civil Action No. 1:24-cv-04143 | Civil Data Research |
| 10. | *Atlas Data Privacy Corp., et al v. Scalable Commerce, LLC* Civil Action No. 1:24-cv-04160 | Scalable Commerce, LLC National Data Analytics, LLC |
| 11. | *Atlas Data Privacy Corp., et al v. Labels & Lists, Inc..* Civil Action No. 1:24-cv-4174 | Labels & Lists, Inc. |

A-1

| | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
|---|---|---|
| 12. | *Atlas Data Privacy Corp., et al v. Innovis Data Solutions Inc.,* Civil Action No. 1:24-cv-4176 | Innovis Data Solutions Inc. |
| 13. | *Atlas Data Privacy Corp., et al v. Accurate Append, Inc.* Civil Action No. 1:24-cv-4178 | Accurate Append, Inc. |
| 14. | *Atlas Data Privacy Corp., et al v. Zillow, Inc., et al.* Civil Action No. 1:24-cv-04256 | Zillow, Inc. Zillow Group, Inc. |
| 15. | *Atlas Data Privacy Corp., et al v. Equimine, Inc., et al.* Civil Action No. 1:24-cv-04261 | Equimine, Inc. |
| 16. | *Atlas Data Privacy Corp., et al v. Melissa Data Corp., et al.* Civil Action No. 1:24-cv-4292 | Melissa Data Corp. |
| 17. | *Atlas Data Privacy Corp., et al v. Restoration of America, et al.* Civil Action No. 1:24-cv-4324 | Restoration of America Voter Reference Foundation, LLC |
| 18. | *Atlas Data Privacy Corp., et al v. i360, LLC, et al.* Civil Action No. 1:24-cv-4345 | i360, LLC |
| 19. | *Atlas Data Privacy Corp., et al v. GoHunt, LLC, et al.* Civil Action No. 1:24-cv-04380 | GoHunt, LLC GoHunt Management Holdings LLC GoHunt Management Holdings II, LLC |
| 20. | *Atlas Data Privacy Corp., et al v. Accuzip, Inc.,* Civil Action No. 1:24-cv-4383 | Accuzip, Inc. |
| 21. | *Atlas Data Privacy Corp., et al v. Synaptix Technology, LLC, et al.* Civil Action No. 1:24-cv-4385 | Synaptix Technology, LLC VoterRecords.com |
| 22. | *Atlas Data Privacy Corp., et al v. Joy Rockwell Enterprises, Inc., et al.* Civil Action No. 1:24-cv-4389 | Joy Rockwell Enterprises, Inc. |
| 23. | *Atlas Data Privacy Corp., et al v. Fortnoff Financial, LLC, et al.* Civil Action No. 1:24-cv-04390 | Fortnoff Financial, LLC |

A-2

|     | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
| --- | --- | --- |
| 24. | *Atlas Data Privacy Corp., et al v. MyHeritage, Ltd., et al.* Civil Action No. 1:24-cv-4392 | MyHeritage, Ltd. |
| 25. | *Atlas Data Privacy Corp., et al v. E-Merges.com, Inc.* Civil Action No. 1:24-cv-4434 | E-Merges.com, Inc. |
| 26. | *Atlas Data Privacy Corp., et al v. Nuwber, Inc., et al.* Civil Action No. 1:24-cv-04609 | Nuwber, Inc. |
| 27. | *Atlas Data Privacy Corp., et al v. RocketReach LLC, et al.* Civil Action No. 1:24-cv-4664 | RocketReach LLC |
| 28. | *Atlas Data Privacy Corp., et al v. Belles Camp Communications, Inc., et al.* Civil Action No. 1:24-cv-04949 | Belles Camp Communications, Inc. |
| 29. | *Atlas Data Privacy Corp., et al v. PropertyRadar, Inc., et al.* Civil Action No. 1:24-cv-5600 | PropertyRadar, Inc. |
| 30. | *Atlas Data Privacy Corp., et al v. The Alesco Group, L.L.C.* Civil Action No. 1:24-cv-5656 | The Alesco Group, L.L.C. Alesco AI, LLC Alesco Marketing Solutions, L.L.C. Stat Resource Group Inc. Response Solutions Group, LLC |
| 31. | *Atlas Data Privacy Corp., et al v. Searchbug, Inc.* Civil Action No. 1:24-cv-05658 | Searchbug, Inc. |
| 32. | *Atlas Data Privacy Corp., et al. v. Amerilist, Inc., et al.* Civil Action No. 1:24-cv-05775 | Amerilist, Inc. |
| 33. | *Atlas Data Privacy Corp., et al. v. US Data Corporation, et al.* Civil Action No. 1:24-cv-7324 | US Data Corporation |
| 34. | *Atlas Data Privacy Corp., et al. v. Smarty, LLC, et al.* Civil Action No. 1:24-cv-8075 | Smarty, LLC |

A-3

| | Case Name and Civil Action No. | Petitioners-Defendants |
|---|---|---|
| 35. | *Atlas Data Privacy Corp., et al. v. Compact Information Systems, LLC, et al.* Civil Action No. 1:24-cv-8451 | Compact Information Systems, LLC Accudata Integrated Marketing, Inc. Alumnifinder ASL Marketing, Inc. College Bound Selection Service Deepsync Labs HomeData Student Research Group |
| 36. | *Atlas Data Privacy Corp., et al. v. Darkowl, LLC, et al.* Civil Action No. 1:24-cv-10600 | Darkowl, LLC |
| 37. | *Atlas Data Privacy Corp., et al. v. Thomson Reuters Corp., et al.* Civil Action No. 1:24-cv-04269 | Thomson Reuters Corporation Thomson Reuters Canada Limited Thomson Reuters Enterprise Centre GmbH West Publishing Corporation[1] |

---

[1] The Complaint in this action originally named four defendants:  Thomson Reuters Corporation, Thomson Reuters Holdings Inc. ("TR Holdings"), Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc. ("TR Applications"). *See* ECF No. 1.  On December 10, 2024, the district court entered a Stipulated Order pursuant to Rule 21 of the Federal Rules of Civil Procedure in which it dismissed TR Holdings and TR Applications without prejudice and substituted Thomson Reuters Enterprise Centre GmbH ("TREC") and West Publishing Corporation ("West") as defendants, stating that TREC and West are subject to all of the orders that it entered in the action, that TREC and West were deemed to have joined the Consolidated Motion to Dismiss, and that the Order denying the Consolidated Motion to Dismiss and the Order certifying that decision for immediate interlocutory appeal were deemed filed in the action.  *See* ECF 62. Of the current defendants, only TREC and West have been served.

A-4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY


| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4037 |
| WE INFORM, LLC, et al. | : | |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4041 |
| INFOMATICS, LLC, et al. | : | |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4045 |
| THE PEOPLE SEARCHERS, LLC, | : | |
| et al. | : | |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4075 |
| DM GROUP, INC., et al. | : | |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4080 |
| DELUXE CORPORATION, et al. | : | |

---

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :              NO. 24-4096
DELVEPOINT, LLC, et al.         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :              NO. 24-4098
QUANTARIUM ALLIANCE, LLC,       :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :              NO. 24-4103
YARDI SYSTEMS, INC., et al.     :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :              NO. 24-4141
DIGITAL SAFETY PRODUCTS,        :
LLC, et al.                     :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :              NO. 24-4143
CIVIL DATA RESEARCH             :
```
_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4160 |
| SCALABLE COMMERCE, LLC,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4174 |
| LABELS & LISTS, INC | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4176 |
| INNOVIS DATA SOLUTIONS INC.,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4178 |
| ACCURATE APPEND, INC.,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4256 |
| ZILLOW, INC., et al. | : | |

-3-

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4261
EQUIMINE, INC., et al.         :
_____

ATLAS DATA PRIVACY             :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4292
MELISSA DATA CORP., et al.     :
_____

ATLAS DATA PRIVACY             :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4324
RESTORATION OF AMERICA,        :
et al.                         :
_____

ATLAS DATA PRIVACY             :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4345
i360, LLC, et al.              :
_____

ATLAS DATA PRIVACY             :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4380
GOHUNT, LLC, et al.            :
_____
```

-4-

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4383
ACCUZIP, INC., et al.           :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,       :
et al.                          :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4389
JOY ROCKWELL ENTERPRISES,       :
INC., et al.                    :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4390
FORTNOFF FINANCIAL, LLC,        :
et al.                          :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4392
MYHERITAGE, LTD., et al.        :
_____
```

-5-

```
ATLAS DATA PRIVACY               :              CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :              NO. 24-4434
E-MERGES.COM, INC.               :
_____

ATLAS DATA PRIVACY               :              CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :              NO. 24-4609
NUWBER, INC., et al.             :
_____

ATLAS DATA PRIVACY               :              CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :              NO. 24-4664
ROCKETREACH LLC, et al.          :
_____

ATLAS DATA PRIVACY               :              CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :              NO. 24-4949
BELLES CAMP COMMUNICATIONS,      :
INC., et al.                     :
_____

ATLAS DATA PRIVACY               :              CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :              NO. 24-5600
PROPERTYRADAR, INC., ET AL.      :
_____
```

-6-

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
         v.                       :
                                  :          NO. 24-5656
THE ALESCO GROUP, L.L.C.          :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
         v.                       :
                                  :          NO. 24-5658
SEARCHBUG, INC.                   :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
         v.                       :
                                  :          NO. 24-5775
AMERILIST, INC., et al.           :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
         v.                       :
                                  :          NO. 24-7324
US DATA CORPORATION, et al.       :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
         v.                       :
                                  :          NO. 24-8075
SMARTY, LLC, et al.               :
_____
```

-7-

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :          NO. 24-8451
COMPACT INFORMATION SYSTEMS,    :
LLC, et al.                     :
```

---

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :          NO. 24-10600
DARKOWL, LLC, et al.            :
```

<u>ORDER</u>

AND NOW, this 26th day of November, 2024, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that the consolidated motion of defendants to dismiss these actions under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Daniel's Law is unconstitutional on its face is DENIED.

BY THE COURT:


/s/  Harvey Bartle III
                                        J.

-8-

JA080

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY


ATLAS DATA PRIVACY                    :              CIVIL ACTION
CORPORATION, et al.                   :
                                      :
              v.                      :
                                      :              NO. 24-4037
WE INFORM, LLC, et al.                :
_____


ATLAS DATA PRIVACY                    :              CIVIL ACTION
CORPORATION, et al.                   :
                                      :
              v.                      :
                                      :              NO. 24-4041
INFOMATICS, LLC, et al.               :
_____


ATLAS DATA PRIVACY                    :              CIVIL ACTION
CORPORATION, et al.                   :
                                      :
              v.                      :
                                      :              NO. 24-4045
THE PEOPLE SEARCHERS, LLC,            :
et al.                                :
_____


ATLAS DATA PRIVACY                    :              CIVIL ACTION
CORPORATION, et al.                   :
                                      :
              v.                      :
                                      :              NO. 24-4075
DM GROUP, INC., et al.                :
_____


ATLAS DATA PRIVACY                    :              CIVIL ACTION
CORPORATION, et al.                   :
                                      :
              v.                      :
                                      :              NO. 24-4080
DELUXE CORPORATION, et al.            :
_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4096 |
| DELVEPOINT, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4098 |
| QUANTARIUM ALLIANCE, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4103 |
| YARDI SYSTEMS, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4141 |
| DIGITAL SAFETY PRODUCTS, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4143 |
| CIVIL DATA RESEARCH | : | |

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4160
SCALABLE COMMERCE, LLC,        :
et al.                         :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4174
LABELS & LISTS, INC            :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4176
INNOVIS DATA SOLUTIONS INC.,   :
et al.                         :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4178
ACCURATE APPEND, INC.,         :
et al.                         :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :            NO. 24-4256
ZILLOW, INC., et al.           :
```

-3-

```
ATLAS DATA PRIVACY                  :              CIVIL ACTION
CORPORATION, et al.                 :
                                    :
           v.                       :
                                    :              NO. 24-4261
EQUIMINE, INC., et al.              :
```

---

```
ATLAS DATA PRIVACY                  :              CIVIL ACTION
CORPORATION, et al.                 :
                                    :
           v.                       :
                                    :              NO. 24-4292
MELISSA DATA CORP., et al.          :
```

---

```
 ATLAS DATA PRIVACY                 :              CIVIL ACTION
 CORPORATION, et al.                :
                                    :
            v.                      :
                                    :              NO. 24-4324
 RESTORATION OF AMERICA,            :
 et al.                             :
```

---

```
ATLAS DATA PRIVACY                  :              CIVIL ACTION
CORPORATION, et al.                 :
                                    :
           v.                       :
                                    :              NO. 24-4345
i360, LLC, et al.                   :
```

---

```
ATLAS DATA PRIVACY                  :              CIVIL ACTION
CORPORATION, et al.                 :
                                    :
           v.                       :
                                    :              NO. 24-4380
GOHUNT, LLC, et al.                 :
```

---

-4-

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :           NO. 24-4383
ACCUZIP, INC., et al.          :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :           NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,       :
et al.                         :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :           NO. 24-4389
JOY ROCKWELL ENTERPRISES,       :
INC., et al.                   :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :           NO. 24-4390
FORTNOFF FINANCIAL, LLC,        :
et al.                         :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :           NO. 24-4392
MYHERITAGE, LTD., et al.        :
```

JA086

```
ATLAS DATA PRIVACY                :              CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :              NO. 24-4434
E-MERGES.COM, INC.                :
```
_____

```
ATLAS DATA PRIVACY                :              CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :              NO. 24-4609
NUWBER, INC., et al.              :
```

```
ATLAS DATA PRIVACY                :              CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :              NO. 24-4664
ROCKETREACH LLC, et al.           :
```

```
ATLAS DATA PRIVACY                :              CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :              NO. 24-4949
BELLES CAMP COMMUNICATIONS,       :
INC., et al.                      :
```

```
ATLAS DATA PRIVACY                :              CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :              NO. 24-5600
PROPERTYRADAR, INC., ET AL.       :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :           NO. 24-5656
THE ALESCO GROUP, L.L.C.       :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :           NO. 24-5658
SEARCHBUG, INC.                :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :           NO. 24-5775
AMERILIST, INC., et al.        :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :           NO. 24-7324
US DATA CORPORATION, et al.    :
_____

ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :           NO. 24-8075
SMARTY, LLC, et al.            :
_____
```

-7-

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :          NO. 24-8451
COMPACT INFORMATION SYSTEMS,    :
LLC, et al.                     :
```

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :          NO. 24-10600
DARKOWL, LLC, et al.            :
```

MEMORANDUM

Bartle, J.                                    November 26, 2024

        The plaintiffs in these 37 civil actions allege
violations of a New Jersey statute known as Daniel's Law.[1]
Before the court is the consolidated motion of defendants to
dismiss on the ground that Daniel's Law is unconstitutional on
its face.  Defendants assert that it abridges their freedom of
speech.

        Daniel's Law provides that judges, prosecutors and
other law enforcement officers as well as their immediate family
members ("covered persons") may request in writing that any
person, business, or association not disclose or make available

---

1.   Daniel's Law as amended is codified as follows: N.J.S.A.
2C:20-31.1, 17:46B-1.1, 19:31-18:1, 46:26A-12, 47:1-17, 47:1A-
1.1, 47:1A-5, 47:1B-1, 47:1B-2, 47:1B-3, 47:1B-4, 56:8-166.1,
56:8-166.3.

their home addresses and unpublished telephone numbers.  It
creates a civil remedy for actual and punitive damages and
injunctive relief for non-compliance not only for covered
persons but also for their assignees.  There are also criminal
penalties.

        Plaintiffs are Atlas Data Privacy Corporation
("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott
Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and
William Sullivan.  The named individual plaintiffs, who are
police officers or correctional officers, allege they are
"covered persons" under Daniel's Law.  Atlas is the assignee of
approximately 19,000 unnamed covered persons who used its
website to notify defendants to cease disclosure of their
personal contact information.  The defendants include real
estate businesses, direct-mailing and marketing companies, data
brokers, and other entities that provide fundraising support to
charities and other non-profits.[2]  According to plaintiffs,
defendants are entities which continued to make available their
home address and unlisted phone numbers in violation of Daniel's
Law.  There is no allegation that this information was
untruthful or that defendants obtained it illegally.

_____

2.   There are also named as defendants ten "Richard Roes" and
ten "ABC Companies" in each complaint.

I.

In or about February 2024 and thereafter, plaintiffs filed these actions in the Superior Court in a number of different counties in New Jersey.  Defendants, pursuant to 28 U.S.C. §§ 1441 and 1446, removed the actions to the United States District Court for the District of New Jersey on the ground that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a).  The individual plaintiffs are citizens of New Jersey while Atlas, a corporation, is a citizen of both Delaware and New Jersey.  All defendants are citizens of states other than New Jersey and Delaware.  There is no dispute that the requisite amounts in controversy have been satisfied.

All of the judges of the District of New Jersey recused themselves.  On April 2, 2024, the Chief Judge of the United States Court of Appeals for the Third Circuit reassigned these and all related actions to the undersigned pursuant to 28 U.S.C. § 292(b).  E.g., Order, Atlas Data Privacy Corp. v. Blackbaud, Inc., Civil Action No. 24-3993 (D.N.J. April 2, 2024) (Doc. No. 13).

This court held several status conferences in these and other reassigned Daniel's Law cases at which defendants made it known that they intended to challenge Daniel's Law on various

-10-

grounds.[3]  Some also maintained that subject matter jurisdiction
was absent.  The court, in an effort to proceed in an orderly
fashion, stayed all these actions except for motions to remand
for lack of subject matter jurisdiction and motions to dismiss
on the ground of facial unconstitutionality.  The court
thereafter remanded 39 Daniel's Law cases for lack of diversity
jurisdiction.  It denied remand in one case, <u>Atlas Data Privacy
Corp. v. MyHeritage Ltd.</u>, Civil Action No. 24-4392, because of
fraudulent joinder of a non-diverse defendant.  Memorandum at
31, <u>Atlas Data Privacy Corp. v. MyHeritage Ltd.</u>, Civil Action
No. 24-4392 (D.N.J. Nov. 20, 2024) (Doc. No. 52).[4]  The
consolidated motion being decided here relates to the actions
for which no challenge to subject matter jurisdiction is
pending.

      The court gave notice of these actions to the Attorney
General of New Jersey, who intervened.  <u>See</u> 28 U.S.C. § 2403(b);
Fed. R. Civ. P. 5.1(b).  With the court's permission, the

---

3.   On March 25, 2024, even before the status conferences,
Delvepoint, LLC, the defendant in one of the cases, had moved to
dismiss.  <u>Atlas Data Privacy Corp. v. Delvepoint, LLC</u>, Civil
Action No. 24-4096 (Doc. No. 3).

4.   In <u>Atlas Data Privacy Corp. v. Thomson Reuters Corp.</u>, Civil
Action No. 24-4269 (D.N.J. filed Mar. 27, 2024), the court
granted remand on the ground that non-diverse defendants Thomson
Reuters Holdings and Thomson Reuters Applications had not proven
fraudulent joinder.  The court has granted these defendants
leave to file a motion for reconsideration on or before December
2, 2024.

National Association of Assistant United States Attorneys, the
New Jersey State Policemen's Benevolent Association, Inc., and
the National Association of Police Organizations filed an amicus
brief. E.g., Brief for the Nat'l Ass'n of Assistant U.S. Att'ys
et al. as Amici Curiae, Atlas Data Privacy Corp. v. Lightbox
Parent, L.P., Civil Action No. 24-4105 (D.N.J. Aug. 1, 2024)
(Doc. No. 47-1).

II.

The complaints recite and the court at the outset
takes judicial notice of the tragic circumstances that led to
the passage of Daniel's Law.  In July 2020, a disgruntled lawyer
who had litigated before United States District Judge Esther
Salas sought to assassinate her at her home in New Jersey.
Esther Salas, My Son Was Killed Because I'm a Federal Judge,
N.Y. Times (Dec. 8, 2020), https://www.nytimes.com/
2020/12/08/opinion/esther-salas-murder-federal-judges.html.
After finding her home address on the Internet, the lawyer
showed up on a Sunday evening armed and dressed as a delivery
driver.  Id.  Daniel Anderl, Judge Salas's twenty-year-old son,
answered the door and was fatally shot by the lawyer.  Id.  Her
husband and Daniel's father was severely wounded.  Id.  The
lawyer then fled.  In response to these crimes, the New Jersey
Legislature passed Daniel's Law in November 2020 and has amended
it thereafter.

-12-

Daniel's Law, as declared by the New Jersey
Legislature, was enacted to serve the following goals:

> This act shall be liberally
> construed in order to accomplish its purpose
> and the public policy of this State, which
> is <u>to enhance the safety and security</u> of
> certain public officials in the justice
> system, including judicial officers, law
> enforcement officers, child protective
> investigators[,] . . . and prosecutors, who
> serve or have served the people of New
> Jersey, and the immediate family members of
> these individuals, <u>to foster the ability</u> of
> these public servants who perform critical
> roles in the justice system <u>to carry out</u>
> <u>their official duties without fear of</u>
> <u>personal reprisal</u> from affected individuals
> related to the performance of their public
> functions.

N.J.S.A. 56:8-166.3 (emphasis added).

The law prohibits any entity when requested from
thereafter disclosing the home address and unpublished telephone
number of a covered person:

> Upon notification pursuant to
> paragraph (2) of this subsection, and not
> later than 10 business days following
> receipt thereof, a person, business, or
> association shall not disclose or re-
> disclose on the Internet or otherwise make
> available, the home address or unpublished
> home telephone number of any covered
> person . . . .

<u>Id.</u> at 56:8-166.1(a)(1).  The notice must be in writing and
state that the person seeking non-disclosure is a person
authorized to do so.  <u>Id.</u> at 56.8-166.1(2).  A "covered person"
is defined as "an active, formerly active, or retired judicial

-13-

officer, law enforcement officer, or child protective

investigator . . ., or prosecutor and any immediate family

member residing in the same household as such [individual]."

Id. at 56:8-166.1(d).

"Disclose" means "to solicit, sell, manufacture, give,

provide, lend, trade, mail, deliver, transfer, post, publish,

distribute, circulate, disseminate, present, exhibit, advertise,

or offer" and includes "making available or viewable within a

searchable list or database, regardless of whether a search of

such list or database is actually performed."  Id.

The prohibition on disclosure is triggered, as noted

above, when a covered person transmits to an entity written

notice requesting non-disclosure.  The entity must comply with

the request no later than 10 business days after receipt.  Id.

If it does not, it is "liable to the covered person or the

covered person's assignee, who may bring a civil action in the

Superior Court."  Id. at 56:8-166.1(b) (emphasis added).  Under

Daniel's Law, an "[a]ssignee' means a person or entity to whom

or which an authorized person has assigned, in writing, a

covered person's right to bring a civil action for violation of

subsection a. of this section."[5]  Id. at 56:8-166.1(d).

_____

5.    Covered persons may also request through the New Jersey
Office of Information Privacy that public agencies redact or
cease to disclose home addresses.  Public agencies shall redact
such information no later than 30 days after the request has

-14-

Non-compliance carries a monetary penalty and the award of appropriate equitable relief.  The court shall award:

> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> (2) punitive damages upon proof of willful or reckless disregard of the law;
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> (4) any other preliminary and equitable relief as the court determines to be appropriate.

Id. at 56:8-166.1(c).  In addition, Daniel's Law provides for criminal liability.[6]

---

been approved by the Office of Information Privacy.  N.J.S.A. 47:1B-2.

6.   Daniel's Law provides:

Upon notification pursuant to subsection c. of this section, and not later than 10 business days after receipt thereof, a person shall not knowingly, with purpose to expose another to harassment or risk of harm to life or property, or in reckless disregard of the probability of such exposure, post, repost, publish, or republish on the Internet, or otherwise make available, the home address or unpublished home telephone number of any covered person, except in compliance with any court order, law enforcement investigation, or request by a government agency or person duly acting on behalf of the agency.

N.J.S.A. 2C:20-31.1(b).

It also provides that: "[a] reckless violation of subsection b. is a crime of the fourth degree.  A purposeful

-15-

In limited circumstances, Daniel's Law exempts certain
governmental and other entities from the prohibition against the
disclosure of a home address—but not the home telephone number—
of a covered person.  Id. at 47:1B-3.  For example, a county
recording officer is not required to redact the home address of
a covered person from property records which are publicly
available.  Id. at 47:1B-3(a)(2).  Similarly, a government
agency may disclose the home address of a covered person to a
third-party contractor but only for the purposes of carrying out
its contract with the agency.  Id. at 47:1B-3(a)(5).

                                III.

        Defendants, pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure, move to dismiss the plaintiffs'
complaints on the ground that Daniel's Law is unconstitutional
on its face.  As stated in Neitzke v. Williams, "Rule 12(b)(6)
authorizes a court to dismiss a claim on the basis of a
dispositive issue of law."  490 U.S. 319, 326 (1989).  The court
must accept as true all well-pleaded facts in the complaints.
Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 195 (2024).
The court may also consider exhibits attached to the complaints
and take judicial notice of matters of public record.  Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

---

violation of subsection b. is a crime of the third degree."  Id.
at 2C:20-31.1(d).

                              -16-

                             JA097

1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright &
Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (2d ed.
1990)).

The eight individual plaintiffs, two of whom are
correctional officers and six of whom are police officers,
allege that they were threatened with violence as a result of
his or her public service.[7]  For present purposes, these
allegations must be accepted as true.  After Daniel's Law was

_____

7.   Officer Jane Doe-1 is a law enforcement officer who was
surveilled along with her young child at her home by a major
criminal organization that she was investigating.

Officer Jane Doe-2 is a correctional officer who discovered
a note left behind by an inmate in the correctional facility's
law library that contained her full name and home address.

Detective Edwin Maldonado, a law enforcement officer, moved
after receiving death threats from the criminal organization
Mara Salvatrucha-13 ("MS-13") at his home.  When MS-13 could not
locate him at his new address, they targeted his mother and
attempted to burn down her building.

Sergeant Scott Maloney and Officer Justyna Maloney are both
law enforcement officers who received death threats and demands
for ransom by phone after Officer Maloney's encounter with a
civilian was filmed and posted online.  Two individuals were
arrested after they were spotted by a neighbor circling the
Maloneys' house, armed and wearing ski masks.

Detective Patrick Colligan, during his 32 years in law
enforcement, has received numerous threats targeted at him and
his family.  He has a surveillance camera and alarm system and
trained his family how to respond to an attack on his home.

Officer Peter Andreyev, a law enforcement officer, has
received numerous death threats and threats of violence targeted
at himself and his family members.

Officer William Sullivan, a correctional officer, has
likewise received death threats and threats of violence directed
at himself and his family.

enacted, each individual plaintiff sent defendants written
notices requesting that defendants cease disclosing or re-
disclosing his or her home address and unlisted telephone
number.

Atlas owns and operates an online platform for covered
persons to identify data brokers and send written notices.  To
use the service, covered persons must sign up for an account and
set up an email address with Atlas.  They can then use the
platform to identify which entities are disclosing their
personal information and send written notices to those entities
using their Atlas email account.  Approximately 19,000 covered
persons signed up with Atlas and used its platform to send
written notices to defendants.

In exchange for using the platform, these covered
persons agreed to Atlas's terms of service.  Those terms of
service state that, upon receipt of written notice from Atlas, a
covered person using Atlas's platform is "deemed . . . to have
irrevocably assigned to [Atlas] all of [his or her] rights to
bring a claim (and seek damages, other legal remedies, and fees,
costs, and litigation expenses) for violations of [his or her]
rights under" Daniel's Law.  The terms of service further
provide that "[Atlas] will have the exclusive right to bring
such civil enforcement actions" after assignments take place.
At that point, these covered persons have assigned absolutely

-18-

JA099

their claims under Daniel's Law to Atlas.  Under their agreement
with Atlas, Atlas will remit 65% of any recovery to the covered
persons and retain 35% for itself.

Atlas and the individual plaintiffs claim that
defendants never responded to the written notices and never
redacted the personal information of the individual plaintiffs
or of the 19,000 unnamed covered persons who have assigned their
claims to Atlas.

IV.

The First Amendment to the Constitution, on which
defendants rely, states in relevant part: "Congress shall make
no law . . . abridging the freedom of speech . . . ."  This
constitutional prohibition also applies to the laws of the
states through the due process clause of the Fourteenth
Amendment.  Manhattan Cmty. Access Corp. v. Halleck, 587 U.S.
802, 808 (2019).  To succeed on a facial challenge in a First
Amendment case, the party making the challenge must establish
that "the law's unconstitutional applications substantially
outweigh its constitutional ones."  Moody v. NetChoice, LLC, 144
S. Ct. 2383, 2397 (2024).

The court will quickly dispose of the plaintiffs'
first argument that Daniel's Law is regulating only data and
therefore is not restricting speech.  If plaintiffs are correct,
there is no First Amendment issue to be resolved.  The Supreme

-19-

JA100

Court has described speech as expressive activity intended and reasonably understood as communicative.  Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294 (1984).  If, for example, defendants simply published statistics compiled by the Census Bureau, the information would probably be characterized as data.  That is not what is happening here.  Instead, the home addresses and unlisted phone numbers being disseminated are tied to specific persons.  In other words, the defendants are telling the world that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000.

    If Daniel's Law limits speech, plaintiffs assert that the law simply restricts commercial speech which is subject to a lesser standard of judicial scrutiny and is afforded less protection under the First Amendment than other forms of speech. Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 562-63 (1980).  The Supreme Court has defined commercial speech as "expression related solely to the economic interests of the speaker and its audience," that is expression which serves the economic interests of both the speaker and consumer.  Id. at 561 (emphasis added).  The Court has also described commercial speech as "speech that does no more than propose a commercial transaction."  United States v. United Foods, Inc., 533 U.S. 405, 409 (2001).  Our Court of Appeals has observed that commercial speech is generally found in

-20-

advertising for the sale of goods and services.  U.S.
Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914,
933 (3d Cir. 1990).

　　　Commercial speech may be restricted when the message
is either inaccurate or misleading or when the message promotes
unlawful activity.  Cent. Hudson, 447 U.S. at 566.  Otherwise it
may be limited only where the government's interest in
regulating such speech is substantial, the government's
regulation directly advances that interest, and the regulation
is no more extensive than necessary.  Id. at 571-72.  This level
of review of commercial speech is generally called intermediate
scrutiny.  Greater Phila. Chamber of Com. v. City of Phila., 949
F.3d 116, 137-38 (3d Cir. 2020).

　　　While Daniel's Law includes to "sell" and to
"advertise" within the definition of "disclose," they are merely
two verbs among many that are enumerated.  The definition also
encompasses to "give, . . . post, . . . disseminate, [and]
exhibit."  In addition, "disclose" in Daniel's Law means to make
"available or viewable within a searchable list or database."
N.J.S.A. 56:8-166.1(d).  The Supreme Court has explained that
commercial speech must relate solely to the economic interests
of its speaker and its audience.  Daniel's Law allows covered
persons to prevent the dissemination of certain personal
information regardless of the means or reasons for the

dissemination.  Its stated purpose in limiting expression is to
enhance the safety and security of judges, prosecutors, and law
enforcement officers and to foster their ability to carry out
their duties without fear of reprisal.  The expression in issue
here is not about the economic interests of the plaintiffs, the
defendants, or the public, let alone solely about their economic
interests.  The speech certainly does not propose a commercial
transaction.  Daniel's Law, in this court's view, does not
concern commercial speech.

    The court must decide whether Daniel's Law is content-
based or content-neutral on its face since the level of judicial
scrutiny will depend on this distinction.  See Reed v. Town of
Gilbert, 576 U.S. 155, 166 (2015).  The Supreme Court has
explained that "government regulation of speech is content based
if a law applies to particular speech because of the topic
discussed or the idea or message expressed."  Id. at 163.
Speech is content-based when it is regulated by subject matter,
when there are restrictions on a particular viewpoint, or when
there is a prohibition of a particular topic.  Id. at 169.  In
contrast, a law is content-neutral when it is "justified without
reference to the content of the regulated speech."  Bartnicki v.
Vopper, 532 U.S. 514, 526 (2001) (quoting Ward v. Rock Against
Racism, 491 U.S. 781, 791 (1989)).

-22-

Daniel's Law authorizes covered persons to request
non-disclosure of their home addresses and unpublished phone
numbers.  It clearly regulates particular subject matter.
Accordingly, Daniel's Law is content-based.

The Supreme Court's more recent decision in City of
Austin v. Reagan Nat'l Advertising of Austin, LLC, 596 U.S. 61
(2022), cited by plaintiffs, does not mandate a contrary result.
There, the Court upheld the constitutionality of a city
ordinance regulating on-premises signs differently than off-
premises signs.  The ordinance dealt with such matters as their
size, illumination and location.  The Court ruled that the
ordinance was "agnostic as to content" and thus was content
neutral so as to be subject to intermediate and not strict
scrutiny.  The facts in City of Austin contrast markedly from
the situation here.  Id. at 69-71.

As Daniel's Law limits content-based speech, the
defendants maintain that it is subject to strict scrutiny.
Under that standard, the law would be "presumptively
unconstitutional and may be justified only if the government
proves that [it is] narrowly tailored to serve compelling state
interests."  Reed, 576 U.S. at 163.

Plaintiffs urge that a somewhat different analysis
should be applied in deciding the constitutionality of Daniel's
Law because Daniel's Law is a privacy statute.  Plaintiffs

-23-

describe it as creating a right of action for judges,
prosecutors and other law enforcement officers to redress the
invasion of their privacy.  It provides that they may notify
entities, large and small, to refrain from disclosing their home
addresses and unlisted phone numbers upon 10 days written
notice.  If an entity fails to adhere to the request, a covered
person or his or her assignee may sue for actual damages but not
less than $1,000 in liquidated damages as well as for injunctive
relief.  Plaintiffs cite Daniel's Law as part of the long
history of common law torts and statutes whose purpose is to
afford redress to persons whose privacy is invaded from
disclosure of personal information, albeit truthful, that is not
of public interest.  See, e.g., Samuel D. Warren & Louis D.
Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890);
William L. Prosser, Privacy, 48 Cal. L. Rev. 383 (1960).

        Our Court of Appeals recognized in 2000 that a
significant range of people including public officials,
performers and ordinary folks regard home addresses as private
information.  The court understood this reality even while
referencing the wide availability of telephone directories at
the time.  Our Court of Appeals also wrote that the Freedom of
Information Act exempts home addresses from disclosure as it
would be a "clearly unwarranted invasion of privacy." Paul P.
v. Farmer, 227 F.3d 98, 101 (3d Cir. 2000); 5 U.S.C.

-24-

§ 552(b)(6).  If anything, the sentiment that such information is private has intensified as most people today have unlisted numbers and the presence of telephone directories that include addresses is virtually a thing of the past.

The defendants counter that Daniel's Law is not a privacy law but rather a law to provide for the safety and security of covered persons.  The court rejects this narrow reading.  Privacy has generally been defined as the right to be let alone.  Warren & Brandeis, The Right to Privacy, supra, at 195 (quoting Cooley on Torts 29 (2d ed. 1888)).  The New Jersey Legislature has concluded that covered persons should have the right to be let alone insofar as their home addresses and unpublished phone numbers are concerned.  The reason the Legislature has protected this information is not only to enhance the safety and security of covered persons but also to safeguard them from the fear of reprisal for doing their jobs. Daniel's Law is analogous to the long-standing common law tort for invasion of privacy for disclosure of the intimate details of a person's private life.  There the law allows for damages for disclosure of such information in order to compensate for causing embarrassment and humiliation.  Romaine v. Kallinger, 537 A. 2d 284, 292 (N.J. 1988).  Here, Daniel's Law furnishes a remedy for disclosing certain private information and exposing

-25-

covered persons to fear of reprisal and to personal danger.
Whatever else it may be, Daniel's Law is a privacy statute.

The Supreme Court has recognized the tension that
exists between privacy law and the right of freedom of speech
and the press under the First Amendment.  It has decided a
number of cases where it has had to resolve this tension.  The
cases that have been cited focus on state statutes which block
the dissemination of the identity of rape victims and of
juvenile offenders even when the information was legally
obtained.  Some involved criminal statutes while others
concerned statutes providing for civil redress for persons whose
privacy has been invaded.  See, e.g., The Florida Star v.
B.J.F., 491 U.S. 524 (1989); Smith v. Daily Mail Publ'g Co., 443
U.S. 97 (1979); Oklahoma Publ'g Co. v. Oklahoma Cnty Dist. Ct.,
430 U.S. 308 (1977); Cox Broad. Corp. v. Cohn, 420 U.S. 469
(1975).  In all of these cases the Supreme Court ruled that the
First Amendment carried the day over the right to privacy.  See
also Bowley v. City of Uniontown Police Dept., 404 F.3d 783 (3d
Cir. 2005).  Nonetheless, the Court has continually stressed
that it was not announcing a blanket rule that free speech must
always prevail and that publication of truthful and lawfully
obtained information can never be blocked or punished.  The
Florida Star, 491 U.S. at 532.  It has emphasized that each case

-26-

JA107

must be decided on its particular facts.  Id. at 533.  It

reiterated in The Florida Star:

> Our holding today is limited.  We do not
> hold that truthful publication is
> automatically constitutionally protected, or
> that there is no zone of personal privacy
> within which the State may protect the
> individual from intrusion by the press, or
> even that a State may never punish
> publication of the name of a victim of a
> sexual offense.

Id. at 541.

As noted above, defendants assert this court should

apply strict scrutiny to Daniel's Law, a standard which the

Supreme Court has applied in Reed and other cases.  The words

"strict scrutiny" and the strict scrutiny standard of review,

however, do not appear in the above cited Supreme Court

decisions involving the right to privacy.  Instead, the Supreme

Court has outlined three specific factors that a court must

consider in balancing the right of privacy against the right of

free speech.  In The Florida Star, which involved a civil

statute imposing damages for the publication of the name of a

rape victim, the Court established that the first inquiry is

whether the information is lawfully obtained and is of public

significance.[8]  Id. at 536.  A court must then determine whether

_____

8.   In these pending actions, it is not contested that
defendants obtained the covered persons' home addresses and
unlisted phone numbers lawfully.  Accordingly, the court need
not consider this issue.

-27-

the law in question serves "a need to further a state interest of the highest order."  Id. at 537 (quoting Daily Mail, 443 U.S. at 103).  Finally, the court must decide whether the statute serves "the significant interests" which the state purports to advance and is not underinclusive.  Id. at 540.  Since Daniel's Law is a privacy law, this is the proper analysis to be applied in the pending cases.

First, the court concludes that the home addresses and unpublished phone numbers are not matters of public significance.  The narrow limitation under Daniel's Law constitutes but a tiny part of the life story of covered persons and is not information that is necessary or pertinent for public oversight.  Daniel's Law does not inhibit in any meaningful way the public's knowledge of public officials or its ability to hold them accountable for their performance and behavior.  In contrast to the limited scope of Daniel's Law, the restricted speech in the cited Supreme Court cases concerned criminal activity and its prosecution.  The public clearly has a vital interest in such information while the same cannot be said of the speech governed by Daniel's Law.

The defendants raise the specter of a number of hypotheticals where the home address or the unlisted phone number of a covered person may be newsworthy and thus of public significance.  If any of these hypotheticals ever comes to pass,

the defendants' remedy is to challenge Daniel's law as
unconstitutional as applied.  See United States v. Hansen, 599
U.S. 762, 784-85 (2023).

      Second, the court must determine whether Daniel's Law
serves a need to further a state interest of the highest order.
The New Jersey Legislature declared in Daniel's Law itself that
its purpose was to enhance the safety and security of judges,
prosecutors, and other law enforcement officers so that they are
able to carry out their official duties without fear of personal
reprisal.  The court need not tarry by reciting in detail the
support for the well-known fact, amply documented by the record
here, that in recent years judges, prosecutors, police,
correctional officers, and others in law enforcement have been
the subject of an ever increasing number of threats and even
assassinations.  Some of these threats and assassinations, as
alleged in the complaints and of which the court takes judicial
notice, have been facilitated by malefactors obtaining the home
address or unlisted phone number of their targets.  Indeed, the
immediate motivation for the passage of Daniel's Law was the
tragedy that occurred when an individual with grievances against
Judge Salas obtained her home address from the Internet,
proceeded to her home with the intent to kill her, and killed
her son and wounded her husband.  None of the parties appears to
contest that Daniel's Law, in aiming to protect covered persons

-29-

from fear, threats, injury and death, serves a need to further a state interest of the highest order.

Finally, the defendants assert that Daniel's Law fails because it is underinclusive.  By invoking underinclusiveness, they mean that New Jersey is not really pursuing or the law is not advancing its compelling state interest in protecting judges, prosecutors, and other law enforcement officers from threats and assassinations.  See Williams-Yulee v. Florida Bar, 575 U.S. 433, 448-49 (2015).  Defendants reference that Daniel's Law has a number of exemptions allowing for disclosure of home addresses.  The law, for example, does not block access to home addresses which appear on property records or on voter registration lists.  The short answer is that this type of information is generally more difficult to extract from public records than information found on the Internet.  The Supreme Court has emphasized that the right of privacy in compiled or computerized information does not evaporate simply because the information may be found in other places.  It explained that there is "a vast difference between public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information."  U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 764 (1989).  The fact that the home

-30-

addresses and unlisted phone numbers of individual covered
persons may be discovered elsewhere in various scattered
locations does not make Daniel's Law underinclusive.

    The defendants also fault the law because it treats
private and business entities more strictly than public
agencies.  The law does not limit the use of information by
governmental agencies in the same way it does private entities.
In some instances, the availability of home addresses and even
phone numbers is necessary for the government and society to
function.  It also allows the State more time to remove
information from public access.  This is understandable
considering the numerous state agencies, counties, and
municipalities which may hold such information.  This reality
does not make Daniel's Law underinclusive.  See Fraternal Order
of Police v. City of Phila., 812 F.2d 105, 118 (3d Cir. 1987).

    The distinctions made in Daniel's Law are sound—not
arbitrary or discriminatory.  All non-governmental entities are
treated the same.  The New Jersey Legislature has had to grapple
with a very complex and important issue in trying to protect
covered persons who seek to uphold the rule of law and who by
the very nature of their jobs are in the public eye.  The
Supreme Court has dictated that each case must be decided on its
own facts.  It has never ruled on a case like the ones now
before this court.  The law is not unconstitutional simply

because the Legislature may not have come up with a complete
answer to the problem of the safety, security, and fear of
reprisal of covered persons.  It acted in response to the
attempted assassination of Judge Salas, the murder of her son,
and the wounding of her husband, all of which resulted after an
assailant obtained her home address through the Internet.  The
special although not total focus of Daniel's Law is to prevent
the use of the Internet as the source of intelligence to
facilitate other such tragedies.  The Legislature cannot be
faulted for its approach based on a very real set of facts,
which unfortunately are not unique.  The perfect is not the
enemy of the good.

        The Supreme Court in Williams-Yulee, supra, did
recognize that underinclusiveness can be a red flag in
determining whether a law limiting speech advances a state
interest.  In that case, the Court upheld against an
underinclusive First Amendment challenge a regulation of the
Florida Bar prohibiting a judicial candidate from personally
soliciting money for her election.  Williams-Yulee, 575 U.S. at
455-56.  This narrowly drawn regulation did not prevent the
candidate from establishing a committee of lawyers to raise
money for her campaign and did not ban her from sending thank-
you notes to her contributors.  Nor did it require an elected

-32-

judge to recuse in any case in which a lawyer-contributor
appeared.  The Court observed:

> A State need not address all aspects of a
> problem in one fell swoop; policymakers may
> focus on their most pressing concerns.  We
> have accordingly upheld laws – even under
> strict scrutiny – that conceivably could
> have restricted even greater amounts of
> speech in service of their stated interests.

Id. at 449.  The present situation is no different.  Daniel's
Law is not underinclusive because it may not address "all
aspects of the problem in one fell swoop."  Rather, it does
materially promote the state's interest of the highest order in
protecting judges, prosecutors and other law enforcement
officers from harm.

     The defendants challenge other aspects of Daniel's
Law.  They criticize the law's sweep in not limiting notice of
non-disclosure to situations where there are "true threats."  By
then, any notice not to disclose a home address and unlisted
telephone number is probably too late.  That would be analogous
to closing the barn door after the horse has left.  The
Legislature was not unreasonable in determining that the law to
be effective must allow covered persons to request non-
disclosure preemptively.  Defendants also argue that the
definition of "disclose" is too broad.  The law reads as it does
to advance the state's significant interest in protecting the

lives and well-being of covered persons.  This argument is not
persuasive.

Defendants further suggest that a protective order
would be a sufficient remedy.  It is questionable that the entry
of a protective order would be effective after the information
is released.  The court disagrees that this legislative scheme
is invalid.

Defendants take issue with the assignment provision of
Daniel's Law.  The Legislature made a rational decision in
allowing covered persons to assign their claims.  In its view,
it will make the enforcement more effective.  It is not hard to
imagine that many covered persons may find it too difficult, too
cumbersome, or too expensive to hire counsel or to proceed
against dozens of defendants on their own without an assignee.

The court has considered the various other challenges
defendants raise to the form of the law.  They are all without
merit.  Defendants are simply disagreeing with the Legislature's
policy choices.  Reasonable people of course may have different
views about those choices.  Simply because the law could have
been written differently does not make it unconstitutional.

V.

The defendants in addition assert that Daniel's Law is
unconstitutional on its face because it is a strict liability
statute, that is because it provides for actual or liquidated

-34-

damages for non-compliance without regard to fault.  It is the
fallback position of the defendants that plaintiffs must
establish that the defendants had the specific intent to violate
the requirements of Daniel's Law.  Plaintiffs and the New Jersey
Attorney General counter that the standard of liability is
negligence.  They take the position that plaintiffs must prove
that defendants acted unreasonably in failing to take down the
requested home addresses and unlisted phone numbers.

        Liability without fault is known both to the civil and
criminal law.  See, e.g., Smith v. California, 361 U.S. 147, 150
(1989).  The Supreme Court, however, has carved out an exception
against strict liability where a law restricts the freedom of
speech.  The Court has held unconstitutional an ordinance which
provided for strict criminal liability against booksellers who
had an obscene or indecent writing or book in their places of
business.  Id. at 155.  Likewise, the Court in The Florida Star
ruled invalid under the First Amendment a civil privacy statute
which provided for a negligence per se standard of culpability.
491 U.S. at 539-40, 541 n.9.

        Daniel's Law provides a covered person or the person's
assignee with a civil remedy.  Relief is only available after a
covered person takes the initiative to transmit a written notice
of non-disclosure to an entity.  The covered person must also
state he or she is a person authorized to request non-

disclosure.  The entity has 10 business days thereafter not to

disclose or not to make available the home address and

unpublished phone telephone number of the covered person.

N.J.S.A. 2C:20-21.1(6).  For failure to comply, the court shall

award to a covered person or his or her assignee: (1) actual

damages but not less than liquidated damages at the rate of

$1,000 for each violation; (2) punitive damages upon proof of

willful or reckless disregard of the law; and (3) preliminary

and equitable relief.  N.J.S.A. 56:8-166.1(c).

 The standard for determining culpability under

Daniel's Law for actual or liquidated damages is of course a

matter of state law.  See Erie R.R. Co. v. Tompkins, 304 U.S.

64, 78 (1938).  To the extent that the state law itself does not

on its face set forth the standard, this court must look to its

construction by the New Jersey Supreme Court.  If that court has

not had occasion to address the issue, this court must predict

how it would rule.  Packard v. Provident Nat'l Bank, 994 F.2d

1039, 1046 (3d Cir. 1993).

 In deciding what standard applies, the court must keep

in mind relevant principles of statutory construction applied in

New Jersey.  To this end, statutes must be construed to conform

to the Constitution if the statute is reasonably susceptible to

such a construction.  State v. Carter, 255 A.3d 1139, 1153 (N.J.

2021); State v. Burkert, 174 A.3d 987, 998 (N.J. 2017).  Courts

-36-

must also avoid an interpretation of a statute which leads to absurd results.  <u>N.J. Republican State Comm. v. Murphy</u>, 236 A.3d 898, 908 (N.J. 2020).

 Daniel's Law does not state explicitly what standard of liability applies for actual or liquidated damages.  However, it does require that the offending conduct amount to "willful or reckless disregard of the law" in order for the award of punitive damages.  It would be nonsensical and effect an absurd result for the court to read into Daniel's Law a standard of civil liability for actual or liquidated damages which requires the same degree of culpability as or a higher degree of culpability than the standard of civil liability enunciated in the statute for punitive damages.  Thus, liability for actual or liquidated damages does not demand a showing of specific intent or of willful or reckless conduct when recovery of punitive damages may occur only with proof of willful or reckless conduct.

 That leaves the question whether the standard for actual and liquidated damages is either liability without fault or negligence.  If Daniel's Law imposes strict liability, it likely runs afoul, as a privacy statute, of the above cited precedents of the United States Supreme Court.  The Court has invalidated strict liability statutes that restrict speech.  <u>See, e.g.</u>, <u>The Florida Star</u>, 491 U.S. at 541.  Based on New

-37-

Jersey precedents, this court must read the Daniel's Law to
avoid this outcome if it is reasonably susceptible to a
constitutional construction.

To ascribe a strict liability standard to Daniel's Law
not only would likely render the law unconstitutional but also
could lead to absurd results.  Under such a standard, a noticed
entity would be liable even if it would be unreasonable or
impossible under the circumstances to meet the statutory 10 day
take-down deadline.  Damages under this scenario would have to
be awarded if a hurricane or other natural disaster had taken
place which totally impeded the ability of the noticed entity to
comply in a timely manner.  The same result would be forthcoming
if a fire had destroyed a mailed notice shortly after receipt
and the direction for non-disclosure was lost through no one's
fault before it could be implemented.  The noticed entity would
also be on the hook if its computer system failed after having
received thousands of notices at one time, and it was unable to
take down all the information within the allotted period.

Daniel's Law is reasonably susceptible to a
construction with a negligence standard of liability.  It is a
privacy statute analogous to the common law tort of invasion of
privacy of the intimate details of a person's life.  The New
Jersey Supreme Court has explained that recovery for this tort
requires proof of "the unreasonable publication of private

-38-

facts." Romaine, 537 A.2d at 291-92. This is a negligence

test. There is no reason to think that the New Jersey Supreme

Court would not apply the same test here as it did in Romaine.[9]

Daniel's Law must be read as imposing liability only if a

defendant unreasonably disclosed or made available the home

addresses and unlisted telephone numbers of covered persons

after the statutory deadline had expired.

In summary, the court concludes that Daniel's Law does

not mandate a specific intent standard of liability or a

standard of liability without fault for actual or liquidated

damages. The inclusion of a negligence standard of liability

for actual or liquidated damages is a reasonable construction of

Daniel's Law, avoids absurd results, is consistent with

analogous New Jersey privacy law, and saves the law from

constitutional repugnancy.

This court predicts that the Supreme Court of New

Jersey would construe Daniel's Law as requiring a covered person

or assignee to establish an entity's negligence in order to

---

9.    The New Jersey Model Civil Jury Charges classify the
various privacy torts under the rubric "Intentional Torts." New
Jersey Courts, Model Civil Jury Charges System §§ 3.10-3.14,
http:www.uscourts.gov/courts/civil/model-civil-jury-charges.
This classification does not have the imprimatur of the New
Jersey Supreme Court and cannot supersede Romaine. See
Graphnet, Inc. v. Retarus, Inc., 269 A.2d 413, 423 (N.J. 2022).

obtain an award of actual or liquidated damages under N.J.S.A.
56:8-166.1(c)(1).

VI.

The United States Supreme Court has declared that
courts should decide cases on their particular facts and
circumstances when they involve the interaction of privacy and
the right of free speech with the caveat that any privacy
statute restricting speech is likely unconstitutional if it
imposes liability without fault.  At this stage of the pending
cases, the court must accept as true the well-pleaded facts and
may take judicial notice as appropriate of other facts.  After
applying the legal analysis enumerated by the Supreme Court to
the particular facts and circumstances presented here, Daniel's
Law with its negligence standard of liability for actual or
liquidated damages is constitutional on its face.  The speech
that is restricted is not of public significance, the law
imposing the restriction serves to further a need of the highest
order of the State of New Jersey, and the law serves the
significant interest of the State and is not fatally
underinclusive.

The consolidated motion of the defendants to dismiss these actions on the ground that Daniel's Law is facially unconstitutional will be denied.

                              BY THE COURT:


                              /s/  Harvey Bartle III
                                                    J.

# EXHIBIT C

```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEW JERSEY


ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :          NO. 24-4037
WE INFORM, LLC, et al.         :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :          NO. 24-4041
INFOMATICS, LLC, et al.        :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :          NO. 24-4045
THE PEOPLE SEARCHERS, LLC,     :
et al.                         :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :          NO. 24-4075
DM GROUP, INC., et al.         :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :          NO. 24-4080
DELUXE CORPORATION, et al.     :
_____
```

JA124

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4096
DELVEPOINT, LLC, et al.         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4098
QUANTARIUM ALLIANCE, LLC,       :
et al.                          :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4103
YARDI SYSTEMS, INC., et al.     :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4141
DIGITAL SAFETY PRODUCTS,        :
LLC, et al.                     :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4143
CIVIL DATA RESEARCH             :
_____
```

-2-

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4160 |
| SCALABLE COMMERCE, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4174 |
| LABELS & LISTS, INC | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4176 |
| INNOVIS DATA SOLUTIONS INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4178 |
| ACCURATE APPEND, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 24-4256 |
| ZILLOW, INC., et al. | : | |

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :           NO. 24-4261
EQUIMINE, INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :           NO. 24-4292
MELISSA DATA CORP., et al.        :
```
_____

```
 ATLAS DATA PRIVACY               :           CIVIL ACTION
 CORPORATION, et al.              :
                                  :
        v.                        :
                                  :           NO. 24-4324
 RESTORATION OF AMERICA,          :
 et al.                           :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :           NO. 24-4345
i360, LLC, et al.                 :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :           NO. 24-4380
GOHUNT, LLC, et al.               :
```
_____

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :            NO. 24-4383
ACCUZIP, INC., et al.        :
_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :            NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,    :
et al.                       :
_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :            NO. 24-4389
JOY ROCKWELL ENTERPRISES,    :
INC., et al.                 :
_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :            NO. 24-4390
FORTNOFF FINANCIAL, LLC,     :
et al.                       :
_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :            NO. 24-4392
MYHERITAGE, LTD., et al.     :
_____
```

```
ATLAS DATA PRIVACY            :              CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :              NO. 24-4434
E-MERGES.COM, INC.           :
_____

ATLAS DATA PRIVACY            :              CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :              NO. 24-4609
NUWBER, INC., et al.         :


ATLAS DATA PRIVACY            :              CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :              NO. 24-4664
ROCKETREACH LLC, et al.      :


ATLAS DATA PRIVACY            :              CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :              NO. 24-4949
BELLES CAMP COMMUNICATIONS,   :
INC., et al.                 :


ATLAS DATA PRIVACY            :              CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :              NO. 24-5600
PROPERTYRADAR, INC., ET AL.   :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :        NO. 24-5656
THE ALESCO GROUP, L.L.C.          :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :        NO. 24-5658
SEARCHBUG, INC.                   :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :        NO. 24-5775
AMERILIST, INC., et al.           :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :        NO. 24-7324
US DATA CORPORATION, et al.       :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :        NO. 24-8075
SMARTY, LLC, et al.               :
```

-7-

JA130

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
        v.                    :
                              :        NO. 24-8451
COMPACT INFORMATION SYSTEMS,  :
LLC, et al.                   :
```

---

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
        v.                    :
                              :        NO. 24-10600
DARKOWL, LLC, et al.          :
```

<u>ORDER</u>

AND NOW, this 2nd day of December, 2024, it is hereby ORDERED, pursuant to 28 U.S.C. § 1292(b), that it is the opinion of the court that its Order dated November 26, 2024 involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

BY THE COURT:

*Harvey Bartle III*
                                                        J.

-8-

Atlas Data Privacy Corporation et al. v. We Inform, LLC
(D.N.J. No. 1:24-cv-04037)


Atlas Data Privacy Corporation et al. v. Infomatics, LLC
(D.N.J. No. 1:24-cv-04041)


Atlas Data Privacy Corporation et al. v. The People Searchers, LLC
(D.N.J. No. 1:24-cv-04045)


Atlas Data Privacy Corporation et al. v. DM Group, Inc.
(D.N.J. No. 1:24-cv-04075)


Atlas Data Privacy Corporation et al. v. Deluxe Corporation
(D.N.J. No. 1:24-cv-04080)


Atlas Data Privacy Corporation et al. v. Quantarium Alliance, LLC, and
Quantarium Group, LLC
(D.N.J. No. 1:24-cv-04098)


Atlas Data Privacy Corporation et al. v. Yardi Systems, Inc.
(D.N.J. No. 1:24-cv-04103)


Atlas Data Privacy Corporation et al. v. Digital Safety Products, LLC
(D.N.J. No. 1:24-cv-04141)


Atlas Data Privacy Corporation et al. v. Civil Data Research, LLC
(D.N.J. No. 1:24-cv-04143)


Atlas Data Privacy Corporation et al. v. Scalable Commerce, LLC, and National
Data Analytics, LLC
(D.N.J. No. 1:24-cv-04160)


Atlas Data Privacy Corporation et al. v. Labels & Lists, Inc.
(D.N.J. No. 1:24-cv-04174)


Atlas Data Privacy Corporation et al. v. Innovis Data Solutions, Inc.
(D.N.J. No. 1:24-cv-04176)


Atlas Data Privacy Corporation et al. v. Accurate Append, Inc.
(D.N.J. No. 1:24-cv-04178)


Atlas Data Privacy Corporation et al. v. Zillow, Inc., and Zillow Group, Inc.
(D.N.J. No. 1:24-cv-04256)


Atlas Data Privacy Corporation et al. v. Equimine, Inc

*24-8047 Case Caption*          *2*          *December 17, 2024 2:05 PM*

(D.N.J. No. 1:24-cv-04261)


Atlas Data Privacy Corporation et al. v. Thomson Reuters Corporation, Thomson
Reuters Holdings Inc., Thomson Reuters Canada Limited, Thomson Reuters
Applications Inc., Thomson Reuters Enterprise Centre GmbH, and West
Publishing Corporation
(D.N.J. No. 1:24-cv-04269)


Atlas Data Privacy Corporation et al. v. Melissa Data Corp.
(D.N.J. No. 1:24-cv-04292)


Atlas Data Privacy Corporation et al. v. Restoration of America and Voter
Reference Foundation LLC
(D.N.J. No. 1:24-cv-04324)


Atlas Data Privacy Corporation et al. v. i360, LLC
(D.N.J. No. 1:24-cv-04345)


Atlas Data Privacy Corporation et al. v. GoHunt, LLC, GoHunt Management
Holdings, LLC, and GoHunt Management Holdings II, LLC
(D.N.J. No. 1:24-cv-04380)


Atlas Data Privacy Corporation et al. v. AccuZIP, Inc.
(D.N.J. No. 1:24-cv-04383)


Atlas Data Privacy Corporation et al. v. Synaptix Technology, LLC, and
Voterrecords.com
(D.N.J. No. 1:24-cv-04385)


Atlas Data Privacy Corporation et al. v. Joy Rockwell Enterprises, Inc.
(D.N.J. No. 1:24-cv-04389)


Atlas Data Privacy Corporation et al. v. Fortnoff Financial, LLC
(D.N.J. No. 1:24-cv-04390)


Atlas Data Privacy Corporation et al. v. MyHeritage Ltd. and MyHeritage
(USA), Inc.
(D.N.J. No. 1:24-cv-04392)


Atlas Data Privacy Corporation et al. v. E-Merges.com Inc.
(D.N.J. No. 1:24-cv-04434)


Atlas Data Privacy Corporation et al. v. Nuwber, Inc.
(D.N.J. No. 1:24-cv-04609

Atlas Data Privacy Corporation et al. v. RocketReach LLC
(D.N.J. No. 1:24-cv-04664)


Atlas Data Privacy Corporation et al. v. Belles Camp Communications, Inc.
(D.N.J. No. 1:24-cv-04949)


Atlas Data Privacy Corporation et al. v. PropertyRadar, Inc.
(D.N.J. No. 1:24-cv-05600)


Atlas Data Privacy Corporation et al. v. The Alesco Group, L.L.C., Alesco AI,
LLC, Alesco Marketing Solutions, L.L.C., Stat Resource Group Inc., and
Response Solutions Group, LLC
(D.N.J. No. 1:24-cv-05656)


Atlas Data Privacy Corporation et al. v. Searchbug, Inc.
(D.N.J. No. 1:24-cv-05658)


Atlas Data Privacy Corporation et al. v. Amerilist, Inc.
(D.N.J. No. 1:24-cv-05775)


Atlas Data Privacy Corporation et al. v. US Data Corporation
(D.N.J. No. 1:24-cv-07324)


Atlas Data Privacy Corporation et al. v. Smarty, LLC, and SmartyStreets, LLC
(D.N.J. No. 1:24-cv-08075)


Atlas Data Privacy Corporation et al. v. Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc., Alumnifinder, ASL Marketing, Inc.,
College Bound Selection Service, Deepsync Labs, Homedata, and Student
Research Group
(D.N.J. No. 1:24-cv-08451)


Atlas Data Privacy Corporation et al. v. DarkOwl, LLC
(D.N.J. No. 1:24-cv-10600)


We Inform, LLC; Infomatics, LLC; The People Searchers, LLC; DM Group, Inc.;
Deluxe Corporation;
Quantarium Alliance, LLC; Quantarium Group, LLC; Yardi Systems, Inc.; Digital
Safety Products, LLC;
Civil Data Research; Scalable Commerce, LLC; National Data Analytics, LLC;
Labels & Lists, Inc.;
Innovis Data Solutions Inc.; Accurate Append, Inc.; Zillow, Inc.; Zillow
Group, Inc.; Equimine, Inc.; Melissa Data Corp.
Restoration of America; Voter Reference Foundation, LLC; i360, LLC; GoHunt,
LLC

*24-8047 Case Caption*                    *4*                    *December 17, 2024 2:05 PM*

GoHunt Management Holdings LLC; GoHunt Management Holdings II, LLC; AccuZIP,
Inc.;

Synaptix Technology, LLC; VoterRecords.com; Joy Rockwell Enterprises, Inc.;
Fortnoff Financial, LLC;

MyHeritage, Ltd.; E-Merges.com, Inc.; Nuwber, Inc.; RocketReach LLC; Belles
Camp Communications, Inc.;

PropertyRadar, Inc.; The Alesco Group, L.L.C.; Alesco AI, LLC; Alesco
Marketing Solutions, L.L.C.;

Stat Resource Group Inc.; Response Solutions Group, LLC; Searchbug, Inc.;
Amerilist, Inc.; US Data Corporation;

Smarty, LLC; Compact Information Systems, LLC; Accudata Integrated Marketing,
Inc.; Alumnifinder;

ASL Marketing, Inc.; College Bound Selection Service; Deepsync Labs;
HomeData;

Student Research Group; DarkOwl, LLC; Thomson Reuters Corporation; Thomson
Reuters Canada Limited;

Thomson Reuters Enterprise Centre GmbH; and West Publishing Corporation,

                                        Petitioner

;

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA 19106-1790

Website: www.ca3.uscourts.gov

TELEPHONE

215-597-2995

December 17, 2024

RE:  Petitions for Permission to Appeal
Case Numbers:  24-8046 & 24-8047

**PACER account holders are required to promptly inform the PACER Service Center of any contact information changes.  In order to not delay providing notice to attorneys or pro se public filers, your information, including address, phone number and/or email address, may have been updated in the Third Circuit database.  Changes at the local level will not be reflected at PACER.  Public filers are encouraged to review their information on file with PACER and update if necessary.**

To All Parties:

The Clerk has received two petitions for leave to appeal docketed at **Nos. 24-8046 and 24-8047**.

The two $600 fees paid for these petitions have been refunded.  No fee is due for a petition for permission to appeal.  If a petition is granted, fees will be required for each resultant appeal. See Fed. R. App. P. 5(d).

All inquiries should be directed to your Case Manager in writing or by calling the Clerk's Office at 215-597-2995. This Court's rules, forms, and case information are available on our website at http://www.ca3.uscourts.gov.

**Counsel for Petitioners:**

As counsel for Petitioners you must file:
1. Application for Admission (if applicable);
2. Appearance Form;
3. Disclosure Statement for each Petitioner.

JA136

These forms must be filed within **seven (7) days** from the date of this letter**.**

Should the Court grant a petition for permission to appeal, additional forms will be required.

Any response in opposition must be filed within 10 days after the petition was served**. All responses must be accompanied by an Appearance Form and Disclosure Statement.**

The petitions and any response(s) will be forwarded to the Court for disposition.  The parties will be advised when an order is entered by the Court.  Parties who do not intend to participate in the petition must notify the Court in writing.

Very truly yours,
Patricia S. Dodszuweit, Clerk

By: s/ Pamela
Case Manager
267-299-4943

cc: all counsel

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

ECO-031

**No. 24-8046**

Atlas Data Privacy Corporation et al. v. Delvepoint, LLC
(D.N.J. No. 1:24-cv-04096)

Delvepoint, LLC,

Petitioner

**No. 24-8047**

Atlas Data Privacy Corporation et al. v.
We Inform, LLC
(D.N.J. No. 1:24-cv-04037)

Atlas Data Privacy Corporation et al. v.
Infomatics, LLC
(D.N.J. No. 1:24-cv-04041)

Atlas Data Privacy Corporation et al. v.
The People Searchers, LLC
(D.N.J. No. 1:24-cv-04045)

Atlas Data Privacy Corporation et al. v.
DM Group, Inc.
(D.N.J. No. 1:24-cv-04075)

Atlas Data Privacy Corporation et al. v.
Deluxe Corporation
(D.N.J. No. 1:24-cv-04080)

Atlas Data Privacy Corporation et al. v.
Quantarium Alliance, LLC, and Quantar-
ium Group, LLC
(D.N.J. No. 1:24-cv-04098)

Atlas Data Privacy Corporation et al. v.
Yardi Systems, Inc.
(D.N.J. No. 1:24-cv-04103)

Atlas Data Privacy Corporation et al. v.
Digital Safety Products, LLC
(D.N.J. No. 1:24-cv-04141)

Atlas Data Privacy Corporation et al. v.
Civil Data Research, LLC
(D.N.J. No. 1:24-cv-04143)

Atlas Data Privacy Corporation et al. v.
Scalable Commerce, LLC, and National
Data Analytics, LLC
(D.N.J. No. 1:24-cv-04160)

Atlas Data Privacy Corporation et al. v.
Labels & Lists, Inc.
(D.N.J. No. 1:24-cv-04174)

Atlas Data Privacy Corporation et al. v.
Innovis Data Solutions, Inc.
(D.N.J. No. 1:24-cv-04176)

Atlas Data Privacy Corporation et al. v.
Accurate Append, Inc.
(D.N.J. No. 1:24-cv-04178)

Atlas Data Privacy Corporation et al. v.
Zillow, Inc., and Zillow Group, Inc.
(D.N.J. No. 1:24-cv-04256)

Atlas Data Privacy Corporation et al. v.
Equimine, Inc.
(D.N.J. No. 1:24-cv-04261)

Atlas Data Privacy Corporation et al. v.
Thomson Reuters Corporation, Thomson
Reuters Holdings Inc., Thomson Reuters
Canada Limited, Thomson Reuters Ap-
plications Inc., Thomson Reuters Enter-
prise Centre GmbH, and West Publishing
Corporation
(D.N.J. No. 1:24-cv-04269)

Atlas Data Privacy Corporation et al. v.
Melissa Data Corp.
(D.N.J. No. 1:24-cv-04292)

Atlas Data Privacy Corporation et al. v.
Restoration of America and Voter Refer-
ence Foundation LLC
(D.N.J. No. 1:24-cv-04324)

Atlas Data Privacy Corporation et al. v.
i360, LLC
(D.N.J. No. 1:24-cv-04345)

Atlas Data Privacy Corporation et al. v.
GoHunt, LLC, GoHunt Management
Holdings, LLC, and GoHunt Manage-
ment Holdings II, LLC
(D.N.J. No. 1:24-cv-04380)

Atlas Data Privacy Corporation et al. v.
AccuZIP, Inc.
(D.N.J. No. 1:24-cv-04383)

Atlas Data Privacy Corporation et al. v.
Synaptix Technology, LLC, and
Voterrecords.com
(D.N.J. No. 1:24-cv-04385)

Atlas Data Privacy Corporation et al. v.
Joy Rockwell Enterprises, Inc.
(D.N.J. No. 1:24-cv-04389)

Atlas Data Privacy Corporation et al. v.
Fortnoff Financial, LLC
(D.N.J. No. 1:24-cv-04390)

Atlas Data Privacy Corporation et al. v.
MyHeritage Ltd. and MyHeritage
(USA), Inc.
(D.N.J. No. 1:24-cv-04392)

Atlas Data Privacy Corporation et al. v.
E-Merges.com Inc.
(D.N.J. No. 1:24-cv-04434)

Atlas Data Privacy Corporation et al. v.
Nuwber, Inc.
(D.N.J. No. 1:24-cv-04609)

Atlas Data Privacy Corporation et al. v.
RocketReach LLC
(D.N.J. No. 1:24-cv-04664)

Atlas Data Privacy Corporation et al. v.
Belles Camp Communications, Inc.
(D.N.J. No. 1:24-cv-04949)

Atlas Data Privacy Corporation et al. v.
PropertyRadar, Inc.
(D.N.J. No. 1:24-cv-05600)

Atlas Data Privacy Corporation et al. v. The Alesco Group, L.L.C., Alesco AI, LLC, Alesco Marketing Solutions, L.L.C., Stat Resource Group Inc., and Response Solutions Group, LLC

(D.N.J. No. 1:24-cv-05656)

Atlas Data Privacy Corporation et al. v. Searchbug, Inc.

(D.N.J. No. 1:24-cv-05658)

Atlas Data Privacy Corporation et al. v. Amerilist, Inc.

(D.N.J. No. 1:24-cv-05775)

Atlas Data Privacy Corporation et al. v. US Data Corporation

(D.N.J. No. 1:24-cv-07324)

Atlas Data Privacy Corporation et al. v. Smarty, LLC, and SmartyStreets, LLC

(D.N.J. No. 1:24-cv-08075)

Atlas Data Privacy Corporation et al. v. Compact Information Systems, LLC, Accudata Integrated Marketing, Inc., Alumnifinder, ASL Marketing, Inc., College Bound Selection Service, Deepsync Labs, Homedata, and Student Research Group

(D.N.J. No. 1:24-cv-08451)

Atlas Data Privacy Corporation et al. v. DarkOwl, LLC

(D.N.J. No. 1:24-cv-10600)

We Inform, LLC; Infomatics, LLC; The People Searchers, LLC; DM Group, Inc.; Deluxe Corporation; Quantarium Alliance, LLC; Quantarium Group, LLC; Yardi Systems, Inc.; Digital Safety Products, LLC; Civil Data Research; Scalable Commerce, LLC; National Data Analytics, LLC; Labels & Lists, Inc.; Innovis Data Solutions Inc.; Accurate Append, Inc.; Zillow, Inc.; Zillow Group, Inc.; Equimine, Inc.; Melissa Data Corp.; Restoration of America; Voter Reference Foundation, LLC; i360, LLC; GoHunt, LLC; GoHunt Management Holdings LLC; GoHunt Management Holdings II, LLC; AccuZIP, Inc.; Synaptix Technology, LLC; VoterRecords.com; Joy Rockwell Enterprises, Inc.; Fortnoff Financial, LLC; MyHeritage, Ltd.; E-Merges.com, Inc.; Nuwber, Inc.; RocketReach LLC; Belles Camp Communications, Inc.; PropertyRadar, Inc.; The Alesco Group, L.L.C.; Alesco AI, LLC; Alesco Marketing Solutions, L.L.C.; Stat Resource Group Inc.; Response Solutions Group, LLC; Searchbug, Inc.; Amerilist, Inc.; US Data Corporation; Smarty, LLC; Compact Information Systems, LLC; Accudata Integrated Marketing, Inc.; Alumnifinder; ASL Marketing, Inc.; College Bound Selection Service; Deepsync Labs; HomeData; Student Research Group; DarkOwl, LLC; Thomson Reuters Corporation; Thomson Reuters Canada Limited; Thomson Reuters Enterprise Centre GmbH; and West Publishing Corporation,

Petitioners

**No. 25-8002**

Atlas Data Privacy Corporation et al. v. Spy Dialer, Inc.
(D.N.J. No. 1:24-cv-11023)

Spy Dialer, Inc.,

Petitioner

**No. 25-8003**

Atlas Data Privacy Corporation et al. v. Lighthouse List Company, LLC
(D.N.J. No. 1:24-cv-11443)

Lighthouse List Company, LLC,

Petitioner

Present:  BIBAS, FREEMAN, and CHUNG, <u>Circuit Judges</u>

1.  Petitions for Permission to Appeal under 28 U.S.C. § 1292(b) Filed by

Delvepoint, LLC

We Inform, LLC; Infomatics, LLC; The People Searchers, LLC; DM Group, Inc.; Deluxe Corporation; Quantarium Alliance, LLC; Quantarium Group, LLC; Yardi Systems, Inc.; Digital Safety Products, LLC; Civil Data Research; Scalable Commerce, LLC; National Data Analytics, LLC; Labels & Lists, Inc.; Innovis Data Solutions Inc.; Accurate Append, Inc.; Zillow, Inc.; Zillow Group, Inc.; Equimine, Inc.; Melissa Data Corp.; Restoration of America; Voter Reference Foundation, LLC; i360, LLC; GoHunt, LLC; GoHunt Management Holdings LLC; GoHunt Management Holdings II, LLC; AccuZIP, Inc.; Synaptix Technology, LLC; VoterRecords.com; Joy Rockwell Enterprises, Inc.; Fortnoff Financial, LLC; MyHeritage, Ltd.; E-Merges.com, Inc.; Nuwber, Inc.; RocketReach LLC; Belles Camp Communications, Inc.; PropertyRadar, Inc.; The Alesco Group, L.L.C.; Alesco AI, LLC; Alesco Marketing Solutions, L.L.C.; Stat Resource Group Inc.; Response Solutions Group, LLC; Searchbug, Inc.; Amerilist, Inc.; US Data Corporation; Smarty, LLC; Compact Information Systems, LLC; Accudata Integrated Marketing, Inc.; Alumnifinder; ASL Marketing, Inc.; College Bound Selection Service; Deepsync Labs; HomeData; Student Research Group; DarkOwl, LLC; Thomson Reuters Corporation; Thomson Reuters Canada Limited; Thomson Reuters Enterprise Centre GmbH; and West Publishing Corporation

Spy Dialer, Inc.

Lighthouse List Company, LLC

2. Plaintiffs' Answer in Nos. 24-8046 and 24-8047

3. Petitioners' Motion in No. 24-8047 for Leave to File Reply, with Proposed Reply Attached

4. Plaintiffs' Answer in No. 25-8002

Respectfully,
Clerk

_____ORDER_____

The motion by the petitioners in No. 24-8047 to file a reply is GRANTED, and we have considered the reply attached to their motion.

Delvepoint's petition to appeal in No. 24-8046 is DENIED. All other parties' petitions to appeal are GRANTED.

Within five (5) days, the petitioners must pay the district clerk all required fees. *See* Fed. R. App. P. 5(d)(1). The Clerk will then docket the appeals. *See* Fed. R. App. P. 5(d)(3).

The appeals will be consolidated for all purposes.

The appeals will be EXPEDITED. Briefing will proceed under the following peremptory schedule:

**Appellants' joint opening brief** must be filed by **April 14, 2025**.

**Appellees' joint response brief** must be filed by **May 12, 2025**.

**Appellants' joint reply brief** must be filed by **May 27, 2025**.

The Clerk will calendar the appeals for submission to a merits panel during the week of July 7, 2025.

By the Court,

s/Stephanos Bibas
Circuit Judge

Dated: March 18, 2025
PDB/cc: All Counsel of Record