SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Atlas Data Privacy Corp. v. We Inform, LLC (A-8-25) (091145)**

**Argued March 17, 2026 -- Decided August 12, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

This case comes before the Court on a certified question of law from the Third Circuit, reformulated and accepted by the Court as:  What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?

Plaintiffs are Atlas Data Privacy Corporation (Atlas), which offers an online service that those covered under Daniel's Law can use to send messages to entities in possession of their protected information, as well as individually named police and correctional officers.  Defendants occupy a variety of industries and, according to plaintiffs, include data aggregators and brokers, real estate businesses, and direct-mailing and/or marketing companies.  Plaintiffs assert that defendants, in violation of Daniel's Law, continued to disclose the addresses and/or phone numbers of the individual plaintiffs and/or covered persons who assigned their claims to Atlas after receiving notices to cease disclosure.

Defendants filed motions to dismiss the cases on the ground that Daniel's Law is facially unconstitutional.  The district court denied defendants' motions.  758 F. Supp. 3d 322, 341-42 (D.N.J. 2024).  As relevant here, the court reasoned that N.J.S.A. 56:8-166.1(c)(1) does not explicitly state what standard of liability applies, but (1) a strict liability standard in this context would likely be unconstitutional, and (2) New Jersey law requires statutes to be construed to conform to the Constitution if reasonably susceptible to a constitutional construction.  Id. at 340-41.  The court determined that N.J.S.A. 56:8-166.1(c)(1) is "reasonably susceptible to a construction with a negligence standard of liability" because it creates a cause of action resembling "the common law tort of invasion of privacy of the intimate details of a person's life," which, the court determined, has a negligence standard.  Id. at 341.  The court also reasoned that a strict liability standard could produce "absurd results" by imposing actual damages on an entity even if circumstances like a natural disaster caused it to miss the take-down deadline.  Id. at 340-41.

Defendants appealed, and the Third Circuit petitioned the Court to determine the mental state, if any, that the statute requires.

1

**HELD:** Daniel's Law does not contain a mental state requirement for actual damages liability under N.J.S.A. 56:8-166.1(c)(1).

1. If a statute is susceptible to two reasonable interpretations, one constitutional and one not, the Court assumes that the Legislature would want the statute to be construed in the way that conforms to the Constitution. But rewriting a statute exceeds the scope of judicial authority. In State v. Pomianek, the Court reversed the judgment of the Appellate Division after finding that the appellate court "rewrote" N.J.S.A. 2C:16-1(a)(3) "to impose a state-of-mind requirement" and, in doing so, "reconfigured subsection (a)(3) to read as a mirror image of subsection (a)(1)" of the same statute. 221 N.J. 66, 70, 91 (2015). The Court held that "the presence of mens rea elements in subsections (a)(1) and (a)(2)" of the statute revealed that "[t]he Legislature pointedly decided not to include such an element in subsection (a)(3)." Id. at 90. The Court further determined that the Appellate Division, in rewriting subsection (a)(3), "performed not minor judicial surgery to save a statutory provision, but a judicial transplant," and rendered the statute "redundant." Id. at 91. The Court then struck subsection (a)(3) as unconstitutional. Ibid. (pp. 17-18)

2. The Court reviews the history and relevant provisions of Daniel's Law, enacted in November 2020 in response to the tragic death of Daniel Anderl, the son of United States District Court Judge Esther Salas. Daniel's Law amended several existing provisions of the New Jersey Criminal and Civil Codes and added new statutory sections. The Court reviews in detail the legislative history of the enactment of, and subsequent amendments to, Daniel's Law. (pp. 18-27)

3. N.J.S.A. 56:8-166.1 states that when a person, business, or association violates Section 166.1(a), they "shall be liable," N.J.S.A. 56:8-166.1(b), and the court "shall award . . . actual damages . . . for each violation of [the] act," id. at (c)(1). Neither Section 166.1(c)(1) nor the other subsections in Section 166.1 require a mental state for the award of actual damages under Section 166.1(c)(1). Notably, however, the very next subsection of the statute, Section 166.1(c)(2), expressly includes the mental state requirement of "willful or reckless disregard of the law" for the award of punitive damages. When the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, the Court infers that the omission was intentional. The Legislature included a mental state in Section 166.1(c)(2); the exclusion of a mental state requirement in (c)(1) is thus significant. The requirement of purposeful or reckless conduct in Daniel's Law's criminal provision, N.J.S.A. 2C:20-31.1(b), also shows that the Legislature was deliberate in adding mental state requirements in portions of the statute where it intended to do so. The same is true for the prohibition against government agencies "knowingly" posting private information. See N.J.S.A. 47:1-17. Daniel's Law's plain text reflects that the Legislature intended no mental state requirement for actual damages. (pp. 28-29)

4. The history of Daniel's Law amendments provides further insight into the Legislature's intent. The Legislature included a mental state requirement in the 2020 version of N.J.S.A. 56:8-166.1 regarding actual damages but deleted that language in 2022. That change implies a purposeful alteration in the substance of the law and suggests that the Legislature intended for Daniel's Law to require no specific mental state for the imposition of actual damages. The 2022 amendments also added a 10-day timeframe for compliance with Daniel's Law after notification from an authorized person. Contrary to the Attorney General's argument, nothing in the language of N.J.S.A. 56:8-166.1 indicates that the notice requirement and the compliance window are a proxy for a mental state of negligence. The lack of clear language in Section 166.1 indicating a mental state, in conjunction with the Legislature's removal of the "reasonable person" language from a prior iteration of the statute, suggests a legislative intent to omit a mental state requirement for plaintiffs seeking actual damages. (pp. 29-32)

5. In this case, the district court determined that Daniel's Law "is a privacy statute analogous to the common law tort of" public disclosure of private facts. 758 F. Supp. 3d at 341. The district court noted that "recovery for this tort requires proof of 'the unreasonable publication of private facts'" -- a requirement that the district court called "a negligence test." Ibid. Plaintiffs and the Attorney General agree that that the background principles of common law torts support reading a mental state requirement into Daniel's Law but disagree as the to the mental state that should be read in. The Court reviews the tort of public disclosure of private facts, which is one of four privacy torts. The Court does not agree that recourse to tort law is appropriate here. First, there is no legislative history to support the argument that the Legislature modeled Daniel's Law after the public disclosure of private facts tort; nothing in the amendments to the law or legislative statements suggests any connection to the tort. Second, Daniel's Law's plain language provides no indication that it is codifying the tort of public disclosure of private facts. Daniel's Law's language does not reflect the three elements of that tort, nor does it incorporate any action at common law or use any words invoking any particular common law definition. The Court finds it inappropriate to import tort law standards into Daniel's Law. (pp. 32-40)

6. Noting the argument that it should perform judicial surgery and construe Daniel's Law to avoid constitutional infirmity, the Court explains that the constitutionality of Daniel's Law is not before it. Here, the Court is only answering a specific certified question. Whether Daniel's Law is constitutional -- regardless of what the Court has decided today -- is for the Third Circuit to determine. (pp. 40-41)

**JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion. CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.**

SUPREME COURT OF NEW JERSEY

A-8 September Term 2025

091145

Atlas Data Privacy Corp.; Jane Doe 1; Jane
Doe 2; Edwin Maldonado; Police Officer
Scott Maloney; Justyna Maloney; Patrick
Colligan; Peter Andreyev; William Sullivan,

Plaintiffs-Respondents,

Attorney General of New Jersey,

Intervenor-Respondent,

v.

We Inform, LLC; Infomatics, LLC; The People
Searchers, LLC; DM Group, Inc.; Deluxe Corp.;
Quantarium Alliance, LLC; Quantarium
Group, LLC; Yardi Systems, Inc.; Digital Safety
Products, LLC; Civil Data Research, LLC;
Scalable Commerce, LLC; National Data Analytics,
LLC; Labels & Lists, Inc.; Innovis Data Solutions,
Inc.; Accurate Append, Inc.; Zillow, Inc.;
Zillow Group, Inc.; Equimine, Inc.; Thomson
Reuters Corp.; Thomson Reuters Holdings,
Inc.; Thomson Reuters Canada Limited;
Thomson Reuters Applications, Inc.;
Thomson Reuters Enterprise Centre GmbH;
West Publishing Corp.; Melissa Data Corp.; Restoration
of America; Voter Reference Foundation, LLC;
i360, LLC; GoHunt, LLC; GoHunt Management
Holdings, LLC; GoHunt Management Holdings
II, LLC; AccuZip, Inc.; Synaptix Technology, LLC;
VoterRecords.com; Joy Rockwell Enterprises,
Inc.; Fortnoff Financial, LLC;
E-Merges.com, Inc.; Nuwber, Inc.; RocketReach,

1

LLC; Belles Camp Communications, Inc.;
PropertyRadar, Inc.; The Alesco Group, LLC;
SearchBug, Inc.; Amerilist, Inc.; U.S. Data Corp.;
Smarty, LLC; Compact Information Systems,
LLC; DarkOwl, LLC; Spy Dialer, Inc.; Lighthouse
List Co., LLC; First Direct, Inc.; Greenflight
Venture Corp.,

Defendants-Appellants.

On certification of question of law from the United
States Court of Appeals for the Third Circuit.

| Argued | Decided |
|--------|---------|
| March 17, 2026 | August 12, 2026 |

Michael Berry argued the cause for appellants (Ballard
Spahr, attorneys for appellants Thomson Reuters
Enterprise Centre GmbH and West Publishing
Corporation; Michael Berry, Marcel S. Pratt, and Anna
Kaul a member of the New York and Minnesota bars,
admitted pro hac vice, on the joint briefs).

Troutman Pepper Locke, attorneys for appellants
RocketReach LLC, Deluxe Corp., PropertyRadar Inc.,
DM Group Inc., and Innovis Data Solutions, Inc. (Angelo
A. Stio, III, Melissa A. Chuderewicz, and Stephanie L.
Jonaitis, on the joint briefs).

Quinn Emanuel Urquhart & Sullivan, attorneys for
appellant Yardi Systems, Inc. (Anthony J. Staltari, Derek
L. Shaffer a member of the California, District of
Columbia, and New York bars, admitted pro hac vice,
and Xi ("Tracy") Gao, Viola Trebicka, John Wall
Baumann, and Ella Hallwass members of the California
bar, admitted pro hac vice, on the joint briefs).

Lomurro Munson, attorneys for appellants Digital Safety
Products, LLC, Civil Data Research, LLC, Scalable

2

Commerce, LLC, and National Data Analytics, LLC (Eric H. Lubin, on the joint briefs).

Cooper, attorneys for appellant Labels & Lists, Inc. (Ryan J. Cooper and Renier Pierantoni, on the joint briefs).

Buchanan Ingersoll & Rooney, attorneys for appellants Zillow, Inc. and Zillow Group, Inc. (Samantha L. Southall and Krista A. Rose, on the joint briefs).

Constangy, Brooks, Smith & Prophete, attorneys for appellants Accurate Append, Inc., Restoration of America, Inc., and Voter Reference Foundation, LLC (John E. MacDonald, on the joint briefs).

FBT Gibbons, attorneys for appellant Equimine, Inc. (Frederick W. Alworth, Joshua R. Elias, and Kevin R. Reich, on the joint briefs).

Gordon Rees Scully Mansukhani, attorneys for appellants Quantarium Alliance, LLC and Quantarium Group, LLC, and Nuwber, Inc. (Clair E. Wischusen, on the joint briefs).

Riker Danzig, attorneys for appellant Melissa Data Corp. (Michael P. O'Mullan and Omar Marouf, on the joint briefs).

Law Offices of Jared M. Wichnovitz, attorneys for appellant Greenflight Venture Corp. (Jared M. Wichnovitz, on the joint briefs).

Stinson, attorneys for appellant i360, LLC (Richard J.L. Lomuscio, on the joint briefs).

Greenberg Traurig, attorneys for appellants GoHunt, LLC, GoHunt Management, Holdings, LLC, and GoHunt Management Holdings II, LLC (David E. Sellinger and Aaron Van Nostrand, on the joint briefs).

3

Lewis Brisbois Bisgaard & Smith, attorneys for appellant Synaptix Technology, LLC (Matthew S. AhKao and Brian C. Deeney, on the joint briefs).

Greenspoon Marder, attorneys for appellants AccuZip, Inc., Joy Rockwell Enterprises, Inc., The Alesco Group, LLC, Searchbug, Inc., Amerilist, Inc., U.S. Data Corp., and DarkOwl, LLC (Kelly M. Purcaro and Kory Ann Ferro, on the joint briefs).

Lowenstein Sandler, attorneys for appellant AccuZip, Inc. (Jennifer Fiorica Delgado, on the joint briefs).

Carmagnola & Ritardi, attorneys for appellant E-Merges.com, Inc. (Steven F. Ritardi and Sean P. Joyce, on the joint briefs).

RKW Law Group, attorneys for appellant E-Merges.com, Inc. (H. Mark Stichel a member of the Maryland and District of Columbia bars, admitted pro hac vice, on the joint briefs).

Blank Rome, attorneys for appellant Belles Camp Communications, Inc. (Stephen M. Orlofsky, Philip N. Yannella, and Thomas P. Cialino, on the joint briefs).

Manatt, Phelps & Phillips, attorneys for appellant Smarty, LLC (Kenneth D. Friedman, on the joint briefs).

Raj Ferber, attorneys for appellant DarkOwl, LLC (Kiran Raj a member of the District of Columbia and Georgia bars, admitted pro hac vice, on the joint briefs).

Wood, Smith, Henning & Berman, attorneys for appellants Compact Information Systems, LLC, Accudata Integrated Marketing, Inc., AlumniFinder, ASL Marketing, Inc., College Bound Selection Service, Deepsync Labs, Homedata, and Student Research Group (Jared K. Levy, on the joint briefs).

4

Kaufman Dolowich, attorneys for appellant Spy Dialer, Inc. (Christopher Nucifora and Timothy M. Ortolani, on the joint briefs).

O'Toole Scrivo, attorneys for appellant Lighthouse List Co., LLC (James DiGiulio, on the joint briefs).

Freeman Mathis & Gary, attorneys for appellant First Direct, Inc. (William Wendell Cheney, III, and Andrew W. Sheppard, on the joint briefs).

Eric M. Palmer a member of the Florida bar, admitted pro hac vice, argued the cause for respondents (PEM Law, Boies Schiller Flexner, and Bird Marella Rhow Lincenberg Drooks Nessim, attorneys; Rajiv D. Parikh, Kathleen Barnett Einhorn, Jessica A. Merejo, Eric M. Palmer, Adam Shaw a member of the New York bar, admitted pro hac vice, Mark C. Mao and Julia Bront members of the California bar, admitted pro hac vice, Ekwan E. Rhow, Greg T. Nolan, and Bill L. Clawges members of the California bar, admitted pro hac vice, and Elliot C. Harvey Schatmeier a member of the California and New York bars, admitted pro hac vice, on the briefs).

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for intervenor (Jennifer Davenport, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, and Kashif T. Chand, Assistant Attorney General, of counsel and on the briefs, and Liza B. Fleming, Marie V. Cepeda Mekosh, Kathleen C. Riley, Nikolas D. Pham, and September R. McCarthy, Deputy Attorneys General, on the briefs).

Ezra D. Rosenberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Ezra D. Rosenberg, Liza Weisberg, and Jeanne LoCicero, on the brief).

5

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

This case comes before the Court on a certified question of law from the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-3. The question involves Daniel's Law, which aims to protect certain public officials in the justice system by shielding their home addresses and phone numbers from disclosure.  Specifically, the Third Circuit asks that we review N.J.S.A. 56:8-166.1, which provides that an "authorized person" can send notice to a private entity requesting that it cease disclosing the personal information of a specific person covered under the law.  If recipients of the notice fail to cease disclosure within 10 business days of receiving notice, they "shall be liable" and the "covered person" or the covered person's assignee can sue.  Daniel's Law provides that the trial court "shall award" actual damages of at least $1,000 for each violation of the law.

In a matter before the Third Circuit, defendants, who were sued for allegedly continuing to disclose the personal information of covered persons in violation of Daniel's Law, argued that the statute is facially unconstitutional because it does not contain a mental state requirement for actual damages liability.  Defendants assert that N.J.S.A. 56:8-166.1 is not properly tailored and risks chilling protected speech.  The Third Circuit found that it could not

determine, pursuant to New Jersey law, whether Daniel's Law contains a mental state for actual damages, so it certified two questions to this Court. We reformulated the certified questions into the following question now before the Court: What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?

For the reasons that follow, this Court holds that Daniel's Law does not contain a mental state requirement for actual damages liability under Section 166.1(c)(1).

I.

A.

For context, we briefly summarize the underlying facts and procedural history in this matter. We derive this summary mainly from the complaints that plaintiffs filed, along with other filings in the district court.

This case arises out of 40 individual appeals.[1] Plaintiffs are Atlas Data Privacy Corporation (Atlas), Jane Doe 1, Jane Doe 2, Edwin Maldonado, Scott

---

[1] The district court, in its memorandum opinion, addressed only 37 civil actions. Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 329 (D.N.J. 2024). Following the release of that opinion, the district court issued orders in four other cases, cited "the reasons previously stated" in We Inform, LLC, 758 F. Supp. 3d 322, and approved the orders for immediate appeal. The Third Circuit considered the four appeals that resulted together with the appeal of the district court's opinion in We Inform, LLC. Separately, following the issuance of the district court's 37-case decision, the parties in one of those 37

7

Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.[2] According to plaintiffs, Atlas offers an online service that covered persons can use to send messages to entities in possession of their protected information. Atlas provides its users with the names of "data brokers that may be disclosing [their] personal information" and that it "recommend[s]" that users contact. Atlas then gives users templates for messages requesting that recipients cease disclosing their home address and/or unpublished home telephone number. Users can send these messages through an email service that Atlas operates. According to plaintiffs, Atlas is the assignee of over 19,000 covered persons who used Atlas's platform to send defendants written requests to cease disclosure of their protected information.

The individually named plaintiffs are veteran New Jersey police and correctional officers who allege that they were stalked at their homes or received threats of violence targeted at themselves or their families. Plaintiffs allege that, for at least two of them, individuals who stalked or threatened them discovered their home addresses through online data broker websites.

---

actions stipulated to a dismissal of the matter, and the Third Circuit subsequently entered an order dismissing the related appeal.

[2] Among the 40 appeals before the Third Circuit, some involve only a subset of these individually named plaintiffs.

According to plaintiffs, these individually named plaintiffs are covered persons who did not assign their claims to Atlas.

Plaintiffs filed separate civil actions in Superior Court against individual defendants or small groupings of defendants. Defendants occupy a variety of industries and, according to plaintiffs, include data aggregators and brokers, real estate businesses, and direct-mailing and/or marketing companies. Plaintiffs assert that defendants, in violation of Daniel's Law, continued to disclose the addresses and/or phone numbers of the individual plaintiffs and/or covered persons who assigned their claims to Atlas after receiving notices to cease disclosure. Defendants removed all 40 cases to federal court.

According to the district court, all judges of the District of New Jersey recused themselves from this matter. Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 330 (D.N.J. 2024). The Chief Judge of the Court of Appeals for the Third Circuit designated the Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania to hear the cases. The Attorney General of New Jersey intervened.

Defendants filed motions to dismiss the cases on the ground that Daniel's Law is facially unconstitutional. The district court denied defendants' motions to dismiss, concluding that Daniel's Law is constitutional. Id. at 341-42. The district court first held that Daniel's Law regulates speech

9

and that the law is content-based.  Id. at 333-35.  The court further held that

Daniel's Law is a "privacy statute" and determined that the law is not

unconstitutional under the three-prong test set forth in Florida Star v. B.J.F.,

491 U.S. 524, 536-40 (1989).  Id. at 336-39.

The district court then addressed defendants' claims that Daniel's Law is

unconstitutional on its face because the actual damages provision is a strict

liability statute.  Id. at 339.  The court held that the actual damages provision

of Daniel's Law does not explicitly state what standard of liability applies and

noted a strict liability standard in this context would likely be unconstitutional.

Id. at 340-41.  The district court stated that New Jersey law requires statutes to

be construed to conform to the Constitution if reasonably susceptible to a

constitutional construction.  Ibid.  The district court determined that the actual

damages provision of Daniel's Law is "reasonably susceptible to a

construction with a negligence standard of liability" because it creates a cause

of action resembling "the common law tort of invasion of privacy of the

intimate details of a person's life," which, the court determined, has a

negligence standard.  Id. at 341.  The court concluded that a negligence

standard was reasonable also because, in contrast, a strict liability standard

could produce "absurd results" by imposing actual damages on an entity even

if circumstances like a natural disaster caused it to miss the take-down

10

deadline, and a standard of recklessness or higher would be "nonsensical," given that "willful or reckless disregard" is the standard for punitive damages under the statute. Id. at 340-41. Thus, the district court predicted that this Court would construe Daniel's Law's actual damages provision to contain a negligence standard and held that the law is facially constitutional. Id. at 341-42.

B.

Defendants appealed to the Third Circuit, which heard oral argument. Thereafter, the Third Circuit certified two questions to this Court pursuant to Rule 2:12A-3:

> 1. Does Daniel's Law, N.J. Stat. Ann. § 56:8-166.1 (2024), require a mens rea for any of its elements?
>
> 2. If so, what level of mens rea is required for each element?

The Third Circuit observed that the question before it -- whether Daniel's Law is facially constitutional -- could hinge on whether the law requires a mental state for forms of relief other than punitive damages. The court stated that "it is at least possible that Daniel's Law chills speech that it does not cover, which may make parts of it unconstitutional unless one reads some mens rea into the law." Noting that the actual damages, equitable relief, and attorney's fees and costs provisions of Daniel's Law have no explicit mental state requirement, the

11

Third Circuit stated that some of the statute's language may implicitly call for a mental state.  However, the court could not determine whether those provisions of Daniel's Law implicitly require a mental state for liability because it viewed "competing legal principles" in New Jersey jurisprudence to "point in opposite directions."  On the one hand, the Third Circuit noted, if a statute can be read in two ways -- one constitutional and one not -- "the New Jersey Supreme Court prefers the constitutional reading."  On the other hand, the Third Circuit suggested, this Court recently "disclaim[ed] the power to 'read' into a statute 'a mens rea element that is absent from'" the statute's text. (quoting State v. Pomianek, 221 N.J. 66, 90 (2015)).

Pursuant to Rule 2:12A-2, we reformulated the certified questions into the following question that we accepted:  "What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?"  We granted leave to appear as friend of the court to the American Civil Liberties Union of New Jersey (ACLU).

II.

A.

We summarize the parties' and amicus's arguments only as to the certified question before the Court.

12

Defendants We Inform, LLC et al. argue that the actual damages provision of Daniel's Law calls for strict liability.  Defendants assert that the text of Daniel's Law is clear and contains no mental state requirement for liability to attach.  Defendants submit that the Legislature's intent to impose strict liability is evident in that the Legislature (1) included explicit mental state requirements in other provisions of Daniel's Law not at issue in this case; (2) amended the law; and (3) used the same language in the actual damages provision that it has used in other strict liability statutes, specifically the phrase "shall be liable."  Defendants argue that this Court cannot read a mental state requirement into the actual damages provision of Daniel's Law because the "constitutional avoidance" doctrine, our approach in State v. Comer, 249 N.J. 359 (2022), and the "Marshall[ v. Klebanov, 188 N.J. 23 (2006),] line of cases" do not apply.  Finally, defendants argue that the Legislature, not this Court, must "rewrite Daniel's Law."

B.

Plaintiffs Atlas Data Privacy Corporation et al. argue that the actual damages provision of Daniel's Law does not impose strict liability.  Plaintiffs assert that the actual damages cause of action under Daniel's Law "plainly belongs to 'the category of invasion of privacy claims that are grounded in an allegation that defendant improperly disclosed private facts concerning the

13

plaintiff to a third party.'" (quoting Smith v. Datla, 451 N.J. Super. 82, 102 (App. Div. 2017)). Plaintiffs claim that, as such, the actual damages provision of Daniel's Law "should be interpreted to require proof of the same two fault requirements as common-law disclosure torts:" (1) a "knowing and intentional act of disclosure, re-disclosure, or otherwise making available after the statutory deadline has expired" and (2) "negligent disregard of its duties" under Daniel's Law. (emphasis omitted).[3] Plaintiffs claim that Daniel's Law's text supports this interpretation. They further assert that the law's notification requirement and compliance period reflect the Legislature's intent to "ensure that any individual or entity that can be held liable acted with negligence." Plaintiffs submit that the expressio unius canon and the "shall be liable" language in Daniel's Law do not support defendants' strict liability interpretation.

Intervenor, the Attorney General, submits that N.J.S.A. 56:8-166.1 is best read to require negligence for basic civil liability to attach. The Attorney

---

[3] In plaintiffs' response to the ACLU's amicus brief, they additionally submit that they have "no objection" to this Court concluding that a mental state requirement "above negligence" is required for Daniel's Law to be constitutional and construing the statute to include such a requirement. Plaintiffs assert that, "in principle," this Court could adopt a standard above ordinary negligence but below recklessness by interpreting Daniel's Law to require that a defendant "(1) acted with gross negligence or (2) knows or has reason to know that a disclosure would violate a covered person's rights." (emphasis omitted).

14

General argues that Daniel's Law's text and structure reveal that the Legislature intended to impose liability only on entities that, had they acted with reasonable care, could have stopped -- but did not stop -- sharing the information at issue.  The Attorney General contends that in amending Daniel's Law, the Legislature intended not to "scrap a negligence requirement, but to retain it via notice and an opportunity to comply, thereby to make it easier for regulated entities to understand their obligations."  The Attorney General argues that Daniel's Law is a "modern codification" of the common-law public disclosure of private facts tort because it "fits with, and follows from" background principles of that tort.  According to the Attorney General, because the public disclosure of private facts tort contains a negligence standard, Daniel's Law must as well.  Additionally, the Attorney General asserts that Daniel's Law is properly read to include an implied defense that a defendant's failure to comply was excused or justified.  Finally, the Attorney General submits that, if this Court does not agree that Daniel's Law's actual damages provision contains a negligence standard, interpretive principles "still compel construing the statute to avoid constitutional infirmity."

Amicus curiae ACLU suggests that we hold that Daniel's Law does not include a mental state requirement for basic liability to attach and that we

15

construe the statute with a mental state requirement "higher than negligence"

to avoid constitutional concerns.

III.

A.

A court's ultimate "task in statutory interpretation is to determine and

effectuate the Legislature's intent." Bosland v. Warnock Dodge, Inc., 197 N.J.

543, 553 (2009). To determine that intent, courts "look first to the plain

language of the statute," McGovern v. Rutgers, 211 N.J. 94, 108 (2012)

(quoting Bosland, 197 N.J. at 553), because the "best indicator of [legislative]

intent is the statutory language," DiProspero v. Penn, 183 N.J. 477, 492

(2005). "We ascribe to the statutory words their ordinary meaning and

significance and read them in context with related provisions so as to give

sense to the legislation as a whole." Ibid. (citations omitted).

"If the language is clear, our task is to apply that language to the

situation that confronts us." McGovern, 211 N.J. at 108. "When 'the plain

language of a statute is ambiguous or open to more than one plausible

meaning,' the Court may look to extrinsic evidence such as legislative history

in determining legislative intent." Morristown Assocs. v. Grant Oil Co., 220

N.J. 360, 383 (2015) (quoting State v. Marquez, 202 N.J. 485, 500 (2010)).

And "a change of language in a statute ordinarily implies a purposeful

16

alteration in [the] substance of the law." In re Commitment of W.W., 245 N.J. 438, 449 (2021) (alteration in original) (quoting DiProspero, 183 N.J. at 494).

Additionally, "when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional." State v. Higginbotham, 257 N.J. 260, 285 (2024) (quoting Ryan v. Renny, 203 N.J. 37, 58 (2010)). In Higginbotham, we held that "[b]ecause the Legislature intentionally crafted subsection (c) [of a statute] to be different from subsections (a) and (b) [of the same statute], . . . we cannot heed the State's request that we interpret subsection (c) only to reach [what is] 'enumerated in subsections (a) and (b).'" 257 N.J. at 285. We noted that "'[f]amiliar principle[s] of statutory construction preclude[]' us from importing the language of subsections (a) and (b) into subsection (c) where the Legislature made the conscious choice not to do so." Id. at 287 (second and third alterations in original) (quoting State v. Hoffman, 149 N.J. 564, 579 (1997)).

We have stated that "[i]f a statute 'is susceptible to two reasonable interpretations, one constitutional and one not,' the Court 'assume[s] that the Legislature would want us to construe the statute in a way that conforms to the Constitution.'" State v. Carter, 247 N.J. 488, 513 (2021) (alteration in

17

original) (quoting <u>Pomianek</u>, 221 N.J. at 90-91).  But "[t]o rewrite [a] statute

. . . exceeds the scope of our judicial authority."  <u>Pomianek</u>, 221 N.J. at 92.

In <u>Pomianek</u>, we reviewed the constitutionality of N.J.S.A. 2C:16-1(a)(3), which "authorize[d] a bias-crime conviction" without specifying a mens rea necessary for conviction.  <u>Id.</u> at 69, 83-84.  To "save" the statute, the Appellate Division "rewrote" it "to impose a state-of-mind requirement" and, in doing so, "reconfigured subsection (a)(3) to read as a mirror image of subsection (a)(1)" of the same statute.  <u>Id.</u> at 70, 91.  This Court rejected the Appellate Division's reconfiguration of the law and held that "the presence of mens rea elements in subsections (a)(1) and (a)(2)" of the statute revealed that "[t]he Legislature pointedly decided not to include such an element in subsection (a)(3)."  <u>Id.</u> at 90.  The Court further determined that the Appellate Division, in rewriting subsection (a)(3) to be a "mirror image" of subsection (a)(1), "performed not minor judicial surgery to save a statutory provision, but a judicial transplant," and that the edit rendered the statute "redundant."  <u>Id.</u> at 91.  The Court then struck subsection (a)(3) as unconstitutional.  <u>Ibid.</u>

B.

Here, we interpret the actual damages provision of N.J.S.A. 56:8-166.1, a provision of Daniel's Law.  The Legislature passed Daniel's Law in response to the tragic death of Daniel Anderl, the son of United States District Court

18

Judge Esther Salas.  Daniel was shot at the family's home in July 2020 by a disgruntled lawyer who intended to assassinate Judge Salas and "obtained [her] home address and other personal information off the internet."  State of N.J., Dep't of Cmty. Affs., Judge Esther Salas:  The Voice of Daniel's Law, https://danielslaw.nj.gov/Default.aspx?ReturnUrl=%2f (last visited July 23, 2026).  The law aims "to enhance the safety and security of certain public officials in the justice system" so they can "carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions."  N.J.S.A. 56:8-166.3.

The Legislature enacted Daniel's Law in November 2020.  L. 2020, c. 125.  Daniel's Law amended several existing provisions of the New Jersey Criminal and Civil Codes and added two new statutory sections.  It amended three statutes enacted in 2016 that focused on "certain information regarding law enforcement officers," L. 2015, c. 226 (codified at N.J.S.A. 2C:20-31.1, 47:1-17, 56:8-166.1).  Daniel's Law amended those sections so that, in 2020, they read as follows:  N.J.S.A. 2C:20-31.1 proscribed "knowingly, with purpose to expose another to harassment or risk of harm to life or property, or in reckless disregard of the probability of such exposure, post[ing] or publish[ing] on the Internet . . . the home address or unpublished home telephone number of" individuals belonging to the listed categories and made

19

reckless violations a fourth-degree crime and purposeful violations a third-degree crime; N.J.S.A. 47:1-17 provided that a government agency "shall not knowingly . . . make available the home address or unpublished home telephone number" of the listed categories of people; and N.J.S.A. 56:8-166.1, the statute at issue here, prohibited any "person, business, or association" from making available the same protected information.[4]

As enacted in 2020, Daniel's Law offered two civil remedies for violations.  The first was in N.J.S.A. 56:8-166.1, which Daniel's Law amended to read:[5]

> a.  A person, business, or association shall not disclose on the Internet, or re-disclose or otherwise make available, the home address or unpublished home telephone number of any active, formerly active, or retired judicial officer, as defined by [N.J.S.A. 47:1A-1.1], prosecutor, or law enforcement officer <u>under circumstances in which a reasonable person would believe that providing that information would expose another to harassment or risk of harm to life or property</u>.
>
>     . . . .

---

[4]  In addition, Daniel's Law amended two sections of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1.1 and -5, and created new sections N.J.S.A. 56:8-166.2 ("Request to remove certain information," since repealed), and -166.3 ("Construction of [Daniel's Law]").

[5]  Subsection (a) of N.J.S.A. 56:8-166.1 (2020), as amended by Daniel's Law, initially included a second paragraph.  <u>L.</u> 2020, <u>c.</u> 125, § 3.  That paragraph was deleted months later, <u>L.</u> 2021, <u>c.</u> 24, § 5, and is not relevant to the issue before the Court.

b. A person, business, or association that violates subsection a. of this section shall be liable to the aggrieved person or any other person residing at the home address of the aggrieved person, who may bring a civil action in the Superior Court.

c.  The court <u>may award</u>:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section, "disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer.

[<u>L.</u> 2020, <u>c.</u> 125, § 6 (emphases added).]

Subsection (b) of the statute thus initially permitted the filing of a civil action by "the aggrieved person or any other person residing at the" aggrieved person's home address.  <u>Ibid.</u>  And subsection (c) listed remedies that "[t]he court may award."  <u>Ibid.</u>

Separately, N.J.S.A. 56:8-166.2 (2020), which codified Section 7 of Daniel's Law, also required private entities to cease disclosure or prevent

21

disclosure of personal information within 72 hours of receiving a written request from someone covered by the law. L. 2020, c. 125 § 7. Subsections (a)(1) and (b)(2) detailed this avenue of relief:

> a. (1) Any active, formerly active, or retired judicial officer . . . or prosecutor, whose home address or unpublished telephone number is disclosed on the Internet, or re-disclosed or otherwise made available, by any person, business, or association, or whose immediate family member's name [is disclosed under certain circumstances] . . . may request that the person, business, or association that disclosed, re-disclosed, or otherwise made available that information refrain from that action and remove the information from the Internet or where otherwise made available.
>
> . . . .
>
> b. (2) Upon receipt of a written request to refrain and remove information, the person, business, or association that disclosed, re-disclosed, or otherwise made available the information shall have 72 hours to remove that information from the Internet or where otherwise made available, and shall not disclose, re-disclose, or otherwise make available that information to any other person, business, or association through any medium.
>
> [L. 2020, c. 125 § 7 (emphases added).]

This second route to relief, involving a written request, did not cross-reference L. 2020, c. 125, § 6 or its damages provision. Instead, it allowed affected individuals to seek "injunctive or declaratory relief" upon either the failure of a "person, business, or association" to timely remove information upon request

22

or the later redisclosure of protected information.  L. 2020, c. 125, § 7(c).  And the statute provided that, if granted, the injunctive or declarative relief would be accompanied by "reasonable attorney's fees and other litigation costs reasonably incurred by the judicial officer, prosecutor, or law enforcement officer, as appropriate."  Ibid.

Daniel's Law has been amended several times since its enactment.  As relevant here, the Legislature passed, in early 2022, "[a]n Act concerning disclosure of certain information with respect to certain public officials, creating a new chapter of and supplementing Title 47 of the Revised Statutes, supplementing Title 17 of the Revised Statutes, amending various parts of the statutory law, repealing [N.J.S.A. 56:8-166.2], and making an appropriation."  L. 2021, c. 371 (approved Jan. 12, 2022).

Through that enactment, the Legislature created several new statutes.  Among other provisions, the Legislature enacted N.J.S.A. 47:1B-1, which defined the terms "covered person" and "authorized person" to denote, respectively, those whose addresses and unpublished phone numbers are protected by Daniel's Law and those who may take enforcement action on behalf of those covered by the law.  L. 2021, c. 371, § 1(a).[6]  The same statute

---

[6] Specifically, the amendment defined "covered person" as "an active, formerly active, or retired judicial officer or law enforcement officer . . . or prosecutor and any immediate family member residing in the same household

23

also provided for the "establish[ment] in the Department of Community Affairs an office to be known as the Office of Information Privacy" (OIP) and for the development of a process through which the OIP could review requests by authorized persons for redaction or nondisclosure. Id. at (b) to (e). Notably, these requests had to be approved by the OIP before being sent to the individual or entity from whom redaction was requested. Ibid.; id. at § 8(a)(1).

The 2022 amendment also significantly amended Daniel's Law so that it contained only one relief provision for situations in which private entities disclosed the protected information. The Legislature repealed N.J.S.A. 56:8-166.2 and amended Section 166.1 to read:

> a.  (1) <u>Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or re-disclose on the Internet or otherwise make available, the home address or unpublished home telephone number</u> of any covered person, as defined in subsection d. of this section, who has received approval from the Office of Information Privacy for the redaction or nondisclosure of the covered person's address.

---

as the judicial officer, law enforcement officer, or prosecutor." L. 2021, c. 371, § 1(a). It defined "authorized person" as "a covered person" or persons meeting other specific criteria outlined in the statute. Ibid. Those definitions were also incorporated into the criminal liability provision, N.J.S.A. 2C:20-31.1 (2022), and the civil cause of action, N.J.S.A. 56:8-166.1 (2022). L. 2021, c. 371, §§ 5, 8.

24

(2) An authorized person seeking to prohibit the disclosure of the home address or unpublished home telephone number of any covered person . . . shall provide <u>written notice</u> to the person from whom they are seeking nondisclosure that they are an authorized person and requesting that the person cease the disclosure of the information and remove the protected information from the Internet or where otherwise made available.

. . . .

b. A person, business, or association that violates subsection a. of this section shall be liable to the aggrieved person, who may bring a civil action in the Superior Court.

[<u>L.</u> 2021, <u>c.</u> 371, § 8 (emphases added).]

As in the original version of Daniel's Law, the Legislature provided that the court "may award" "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act," "punitive damages upon proof of willful or reckless disregard of the law," along with fees, costs, and other relief.  <u>Ibid.</u>

Significantly, the 2022 amendments removed the "reasonable person" language that had been present in N.J.S.A. 56:8-166.1 and made written notice -- which had been present in the repealed Section 166.2 -- mandatory for relief. <u>Ibid.</u>  And a time limit was added to Section 166.1; however, instead of only 72 hours for compliance with the written notice, as repealed Section 166.2

25

allowed, Section 166.1 was given an expanded compliance period of 10 business days.  Ibid.

The Sponsors' Statements to the Senate and Assembly bills enacted as L. 2021, c. 371 note that the "[p]revious law . . . did not specify how . . . persons, businesses, or associations [disclosing information] were to know which addresses to redact."  Statement to A. 6171/S. 4219.  They state that the amended statute "combines two sections of law providing for civil relief and, therefore, repeals one of the sections."  Ibid.  Neither the Sponsors' Statements nor any of the Committee Statements to the law specified why the Legislature eliminated the "reasonable person" language of the 2020 statute, nor did they address whether the Legislature intended the new civil relief provision to include a mental state requirement.  Those statements also did not explain the Legislature's reasons for creating the OIP.

One year after the Legislature created the OIP and required OIP approval for nondisclosure and redaction requests filed under N.J.S.A. 56:8-166.1, the Legislature eliminated that approval requirement.  L. 2023, c. 113, § 6. Additionally, in its 2023 amendments, the Legislature provided that when a "person, business, or association" violates N.J.S.A. 56:8-166.1, "[t]he court shall award" "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act," along with punitive

26

damages for willful or reckless conduct, fees and costs, and any other appropriate relief.  Ibid. (emphasis added).

The current text of N.J.S.A. 56:8-166.1 reflects these amendments.  The statute presently provides that,

> a.    (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or re-disclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> . . . .
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c.  The court shall award:
>
>> (1)  actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2)  punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3)  reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4)  any other preliminary and equitable relief as the court determines to be appropriate.
>
> [N.J.S.A. 56:8-166.1.]

27

IV.

Based on the statutory text and legislative history, we hold that Daniel's Law contains no mental state requirement for claims in which the plaintiff seeks actual damages under Section 166.1(c)(1).

A.

We begin, as always, with the plain language of the statute. Section 166.1 states that when a person, business, or association violates Section 166.1(a), they "shall be liable," N.J.S.A. 56:8-166.1(b), and the court "shall award . . . actual damages . . . for each violation of [the] act," id. at (c)(1). Neither Section 166.1(c)(1) nor the other subsections in Section 166.1 require a mental state for the award of actual damages under Section 166.1(c)(1).

Notably, however, the very next subsection of the statute, Section 166.1(c)(2), does contain a mental state requirement. Section 166.1(c)(2) expressly includes the mental state requirement of "willful or reckless disregard of the law" for the award of punitive damages. As we stated recently in Higginbotham, "when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional." 257 N.J. at 285. The Legislature included a mental state in Section 166.1(c)(2); the exclusion of a mental state requirement in (c)(1) is thus a significant omission and reflects

28

legislative intent to require no mental state for the imposition of actual damages.

The requirement of purposeful or reckless conduct in Daniel's Law's criminal provision, N.J.S.A. 2C:20-31.1(b), also shows that the Legislature was deliberate in adding mental state requirements in portions of the statute where it intended to do so. The same is true for the prohibition against government agencies "knowingly" posting private information. See N.J.S.A. 47:1-17. Again, "the presence of mens rea elements" in some subsections of a statute suggests that "[t]he Legislature pointedly decided not to include such an element" in sections where it does not expressly appear. Pomianek, 221 N.J. at 90. Daniel's Law's plain text reflects that the Legislature intended no mental state requirement for actual damages.

The history of Daniel's Law amendments provides further insight into the Legislature's intent. The Legislature included a mental state requirement in the 2020 version of Daniel's Law regarding actual damages -- that "a reasonable person would believe that providing" certain information "would expose another to harassment or risk of harm to life or property"[7] -- but deleted

---

[7] All parties agree that the "reasonable person" language in the original version of Daniel's Law resembles a negligence standard. "Negligence is conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. A person acts negligently when he or she does not take reasonable precautions to prevent causing harm to

29

that language in 2022.  Compare N.J.S.A. 56:8-166.1 (2020), with N.J.S.A. 56:8-166.1 (2022).  That "change of language . . . implies a purposeful alteration in [the] substance of the law," In re Commitment of W.W., 245 N.J. at 449, and suggests that the Legislature intended for Daniel's Law to require no specific mental state for the imposition of actual damages.

The 2022 amendments added the 10-day timeframe for compliance with Daniel's Law after notification from an authorized person.  N.J.S.A. 56:8-166.1 (2022).  The Attorney General argues that Daniel's Law's notice requirement and 10-business-day compliance window effectively impose a negligence requirement.  We disagree.  Nothing in the language of N.J.S.A. 56:8-166.1 -- which, again, contains a mental state in the subsection immediately following the actual damages provision -- indicates that the notice requirement and the compliance window are a proxy for a mental state of negligence.  The legislative history neither explains why the Legislature deleted the statute's reasonable person language nor supports the Attorney General's interpretation of the 10-day notice requirement.  If anything, the Sponsors' Statements to the 2022 bill, which note that the "[p]revious law . . .

---

another."  Pfenninger v. Hunterdon Cent. Reg'l High Sch., 167 N.J. 230, 240 (2001) (quoting Restatement (Second) of Torts § 282 (Am. L. Inst. 1965) and citing id. § 284).  "To determine whether a defendant's conduct is negligent, we consider what a 'prudent man' would have done in the defendant's circumstances."  Ibid. (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)).

30

did not specify how" those disclosing information "were to know which addresses to redact," may suggest that the 2022 amendments, such as the notice requirement, were meant to remedy that issue and that issue alone. See Statement to A. 6171/S. 4219 (L. 2021, c. 371).

The 10-day notice requirement is simply not the same as requiring a mental state of negligence; complying with that time frame is not synonymous with acting with reasonable care. A prospective defendant could plausibly act with reasonable care -- i.e., act non-negligently -- but still fail to cease disclosure within 10 business days of notice; for example, if that defendant received a high volume of requests at one time.[8] The notice requirement says nothing of the mental state that must be established for liability to attach. Instead, the notice requirement in Section 166.1 does just what is intended -- it puts a potential defendant on notice of their obligations under the statute.

Had the Legislature intended to include a negligence standard or require another mental state for the imposition of actual damages, it easily could have included that language in the 2022 iteration of the statute along with the notice requirement and 10-day compliance window. It did not. The lack of clear

---

[8] As Judge Bartle noted, if one reads Daniel's Law to impose strict liability, there are some circumstances where defendants would be held liable even though it could be "impossible" for them to comply with the law, like in the event of a natural disaster. We Inform, LLC, 758 F. Supp. 3d at 341.

31

language in Section 166.1 indicating a mental state, in conjunction with the Legislature's removal of the "reasonable person" language from a prior iteration of the statute, suggests a legislative intent to omit a mental state requirement for plaintiffs seeking actual damages.

B.

In this case, the district court determined that Daniel's Law "is a privacy statute analogous to the common law tort of invasion of privacy of the intimate details of a person's life." Atlas Data Priv. Corp., 758 F. Supp. 3d at 341. In Section 652D of the Second Restatement of Torts, that same tort is called "Publicity Given to Private Life." The district court noted that, under Romaine v. Kallinger, 109 N.J. 282, 291-92 (1988), "recovery for this tort requires proof of 'the unreasonable publication of private facts'" -- a requirement that the district court called "a negligence test."[9] Atlas Data Priv. Corp., 758 F. Supp. 3d at 341 (quoting 109 N.J. at 291-92). The district court stated that "[t]here is no reason to think that the New Jersey Supreme Court would not apply the same test here as it did in Romaine." Ibid.

The Attorney General, in its brief, argued that "Judge Bartle was correct to identify Section 166.1 as a modern codification" of the "longstanding tort"

---

[9] We note that Romaine called the tort "the unreasonable publication of private facts"; it did not modify the elements of the tort. 109 N.J. at 291-92.

32

of public disclosure of private facts.[10] Similarly, plaintiffs assert that the cause of action in Daniel's Law belongs to "the category of invasion of privacy claims that are grounded in an allegation that defendant improperly disclosed private facts concerning the plaintiff to a third party." Although plaintiffs and the Attorney General strongly argue that the background principles of common law torts support reading a mental state requirement into Daniel's Law, they appear to not even agree on what mental state Daniel's Law requires based on their different interpretations of how common law torts should affect this Court's reading. The Attorney General argues for a negligence standard. In contrast, plaintiffs argue that, in addition to negligence, Daniel's Law requires "a knowing and intentional act of disclosure" and submit that they also have no objection to a finding that Daniel's Law contains a "gross negligence" requirement. When asked about mental state at oral argument, plaintiffs noted that their position is "somewhat different" from that of the Attorney General, whom plaintiffs acknowledge "floats some possibilities that [plaintiffs] don't consider."

---

[10] As previously noted, the district court stated that Daniel's Law "is a privacy statute analogous to the common law tort of invasion of privacy of the intimate details of a person's life." Atlas Data Priv. Corp., 758 F. Supp. 3d at 341 (emphasis added). The court did not find that Daniel's Law was a "modern codification" of the tort.

We provide a brief overview of the common law privacy torts before addressing the arguments that these torts should influence our reading of Daniel's Law.

1.

The tort of public disclosure of private facts -- which the Attorney General argues is codified, in modern form, in Daniel's Law -- occurs when it is shown that:  "[(1)] the matters revealed were actually private, [(2)] that dissemination of such facts would be offensive to a reasonable person, and [(3)] that there is no legitimate interest of the public in being apprised of the facts publicized."  G.D. v. Kenny, 205 N.J. 275, 309 (2011).  To succeed in proving that a defendant committed this tort, a plaintiff must "establish that he possessed a reasonable expectation of privacy" in the matters revealed.  Ibid; see also Restatement (Second) of Torts § 652D cmt. b (Am. L. Inst. 1965).  Regarding the tort's "offensive to a reasonable person" element, the Second Restatement of Torts notes that

> [c]omplete privacy does not exist in this world except in a desert . . . .  Thus [a person] must expect the more or less casual observation of his neighbors as to what he does . . . .  It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.
>
> [Restatement (Second) of Torts § 652D cmt. c.]

34

As for the tort's third element, we have held that there is "legitimate public concern" in, for one, facts that are "newsworthy."  Romaine, 109 N.J. at 300-02.  "Extensive contemporaneous publicity . . . is a strong indication that the subject is one that is clearly newsworthy."  Id. at 302.

Public disclosure of private facts is one of four invasion of privacy torts.  See Friedman v. Martinez, 242 N.J. 449, 466 (2020) ("The noted legal scholar Dean William Prosser outlined four separate torts that comprised the right to privacy:  (1) '[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs'; (2) '[p]ublic disclosure of embarrassing private facts'; (3) '[p]ublicity which places the plaintiff in a false light in the public eye'; and (4) '[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness.'" (quoting William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 389 (1960))).  These torts are "tied together by the common name [of privacy], but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'"  Rumbauskas v. Cantor, 138 N.J. 173, 179-80 (1994) (quoting Canessa v. J. I. Kislak, Inc., 97 N.J. Super. 327, 334 (Law Div. 1967)).

The public disclosure tort requires that the complained-of disclosure be of the type that "would be offensive to a reasonable person."  Two of the other privacy torts require a similar assessment in addition to identifying one or

more mental states that the tortfeasor must possess.  See G.D., 205 N.J. at 309 ("The tort of [intrusion upon seclusion] is defined as an intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be highly offensive to a reasonable person.'"  (quoting Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982))); Romaine, 109 N.J. at 294 ("Liability for [the tort of 'false light'] is found when '[o]ne . . . gives publicity to a matter concerning another that places the other before the public in a false light [and] . . . (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  (omissions in original) (quoting Restatement (Second) of Torts § 652E)).  The final privacy tort, appropriation of "the name or likeness of another," does not ask whether the appropriation would be offensive to a reasonable person; instead, to establish a prima facie case for this tort, "it must be shown that defendant acted with a commercial purpose or otherwise sought some benefit from revealing information about plaintiffs."  Bisbee, 186 N.J. Super. at 343 (emphases added).

36

2.

Putting aside the parties' differing views of the mental state standard that should be implied into Daniel's Law from the invasion of privacy disclosure tort, we cannot agree that recourse to tort law is appropriate here.

The common law can play a role in our interpretation of a statute. When statutes use words that invoke the common law, our courts have interpreted those words in accordance with their common law meaning. See Maison v. N.J. Transit Corp., 245 N.J. 270, 290-92 (2021) (holding that the word "negligence" in the Tort Claims Act carries the same meaning as it did at common law). This Court has also held that "statute[s] in derogation of the common law should be strictly construed," and "[d]oubt about the meaning of such statutes should be resolved in favor of 'the effect which makes the least rather than the most change in the common law.'" Marshall, 188 N.J. at 37 (quoting Oswin v. Shaw, 129 N.J. 290, 310 (1992), and applying this principle in determining whether the statutory immunity provisions of N.J.S.A. 2A:62A-16 "immunize a mental health practitioner from potential liability").

Additionally, when statutes codify common law causes of action or defenses, reference to "common law traditions" is "instructive" when construing the laws. Evans-Aristocrat Indus., Inc. v. City of Newark, 75 N.J. 84, 93 (1977). For example, in Evans-Aristocrat Industries, this Court

37

reviewed a statute allowing the Attorney General to sue the Port Authority of New York and New Jersey.  Id. at 86-88.  After concluding that the statute had "strong common law origins," the Court reviewed "common law analogues" of the statute and found that they "nourish[ed]" a certain interpretation.  Id. at 93-95.  Likewise, in Hardwicke v. American Boychoir School, we found that the Legislature passed the Charitable Immunity Act (CIA) to "reinstate[] the common law" doctrine of charitable immunity.  188 N.J. 69, 97-98 (2006).  Because the CIA codified the common law charitable immunity doctrine, the Court considered the "scope of that common law when interpreting the scope of the immunities provided in the statute."  Id. at 98.

The Attorney General argues that given that Daniel's Law is a modern codification of the invasion of privacy disclosure tort, doubts about Daniel's Law's meaning should be resolved to make "the least" change in the common law.  Therefore, the Attorney General contends that we should read Daniel's Law "in harmony" with the tort and conclude that the Legislature intended Daniel's Law to include the tort's negligence standard.  This argument makes several suppositions with no basis in the history of Daniel's Law or the actual substance of the common law tort.

First, there is no legislative history to support the argument that the Legislature modeled Daniel's Law after the public disclosure of private facts

38

tort; nothing in the amendments to the law or legislative statements suggests any connection to the tort.  Unlike the statute at issue in <u>Evans-Aristocrat Industries</u>, there is no evidence of any "strong common law origins" for Daniel's Law that should "nourish" our interpretation here.  <u>See</u> 75 N.J. at 93-95.  Further, unlike the statute addressed in <u>Marshall</u>, there is no evidence that Daniel's Law is in "derogation of" the common law.  188 N.J. at 36-37.

Second, Daniel's Law's plain language provides no indication that it is codifying the tort of public disclosure of private facts.  Daniel's Law's language does not reflect the three elements of a public disclosure of private facts claim -- Daniel's Law does not require plaintiffs to prove that the information is private and that they have a "reasonable expectation of privacy" in the matters disclosed, nor that the disclosure would be "offensive to a reasonable person," nor that the public lacks a legitimate interest in the facts publicized.  <u>See</u> <u>G.D.</u>, 205 N.J. at 309.  Nowhere does the text of Daniel's Law reference or incorporate any action at common law.  And the text does not use words invoking any particular common law definition, unlike the statute we addressed in <u>Maison</u>.  <u>See</u> 245 N.J. at 290-92.

As noted, this Court has called the tort of public disclosure of private facts the "unreasonable publication of private facts" -- language that the Attorney General claims constitutes a negligence standard.  <u>Romaine</u>, 109 N.J.

39

at 297. Plaintiffs further argue that this Court should construe the actual damages provision of Daniel's Law to include what plaintiffs argue are "the same two fault requirements as common-law disclosure torts": knowing and intentional acts of disclosure and negligent disregard of duties under Daniel's Law.

If the Legislature did in fact draft Daniel's Law with these common law principles in mind, it is odd that the Legislature did not think to include a mental state requirement when, according to plaintiffs and the Attorney General, mental state requirements exist in the public disclosure tort. The public disclosure tort -- which the Attorney General claims requires negligence -- existed when the Legislature drafted the amendments to Daniel's Law and includes "reasonable person" language. Tellingly, the original text of N.J.S.A. 56:8-166.1(a) also contained "reasonable person" language that the Legislature later removed. Given that Daniel's Law does not resemble the tort of public disclosure of private facts or any other invasion of privacy tort, we find it inappropriate to import tort law standards into Daniel's Law.

## C.

Lastly, we briefly address the constitutional construction arguments. The Attorney General submits that, even if this Court disagrees that the actual damages provision of Daniel's Law is best read to require a mental state of

negligence, this Court should perform judicial surgery and construe Daniel's Law to avoid constitutional infirmity. The Third Circuit noted in posing its certified questions of law that, pursuant to the jurisprudence of the U.S. Supreme Court, the lack of a mental state requirement has the potential to create constitutional issues in a law restricting speech. But the constitutionality of Daniel's Law is not the issue before this Court. That issue is only before the federal court -- a court to which this case was removed and one that has the benefit of full briefing on the constitutional question. We are only answering a specific certified question. Whether Daniel's Law is constitutional -- regardless of what this Court has decided today -- is for the Third Circuit to determine.

V.

In response to the certified question before this Court, we hold that Daniel's Law contains no mental state requirement for the award of actual damages in Section 166.1(c)(1).


JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion. CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.